ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFF DEGROOT (admitted *pro hac vice*)
jeff.degroot@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendant
HARBOR FREIGHT TOOLS USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY ALBA and ROBERT BLAZINA JR., individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 5:26-CV-01069-BLF

**DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: August 13, 2026
Time: 9:00 a.m.
Judge: Hon. Beth Labson Freeman
Courtroom: Courtroom 1
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113

Complaint Filed: February 3, 2026

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE PENDING ARBITRATION**

PLEASE TAKE NOTICE THAT on August 13, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, United States District Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 1, 5th Floor, San Jose, California 95113, Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight") will, and hereby does, move for an order compelling the claims of Plaintiff Larry Alba ("Alba") to individual binding arbitration and staying this action pending arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-3. Alba agreed to arbitrate his disputes with Harbor Freight by clicking the "Reject All Cookies" button on Harbor Freight's cookie banner on its website, accepting Harbor Freight's July 2025 Terms and Conditions and their arbitration provision (the "Terms"). The parties' agreement to arbitrate (the "Arbitration Agreement") expressly delegates the question of arbitrability to the arbitrator and precludes Alba from proceeding in court.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Isabelle Ord ("Ord Decl.") and Michael Hall ("Hall Decl.") submitted herewith, the pleadings, papers, and records filed in this case, and such other and further evidence and oral argument as may be presented at the time of hearing or otherwise.

Dated: April 3, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

- A. The Harbor Freight Website .......... 2
- B. Alba's Visits to Website and Consent to the Terms .......... 2
- C. The Harbor Freight Terms and Arbitration Agreement .......... 3

III. ISSUES TO BE DECIDED .......... 4

IV. LEGAL STANDARD .......... 4

V. ARGUMENT .......... 5

- A. There is a Valid Agreement to Arbitrate .......... 5
- B. The Terms Delegate Questions of Arbitrability to the Arbitrator .......... 8
- C. Alba Agreed to Individual Arbitration of his Claims. .......... 10
- D. The Action Should Be Stayed Pending Arbitration .......... 10

VI. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 4, 10

*Benson v. Casa De Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020) ........ 4

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 4, 5, 8

*Chabolla v. ClassPass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 5, 6, 7

*Cooper v. Adobe Sys. Inc.*,
2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) ........ 9

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ........ 4, 5

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........ 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 5, 6, 7

*Kseniya Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 7

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 7

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ........ 4

*Morris v. Rent-A-Center, Inc.*,
2020 WL 1631203 (N.D. Cal. Apr. 1, 2020) ........ 9

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ........ 6, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....4, 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....5

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023)....6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)....9

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020)....6

*Salgado v. Carrows Restaurants, Inc.*,
33 Cal. App. 5th 356 (2019)....9, 10

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018)....11

*Sheppard v. Staffmark Inv., LLC*,
2021 WL 690260 (N.D. Cal. Feb. 23, 2021)....10

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....4, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....10

*Tillman v. Tillman*,
825 F.3d 1069 (9th Cir. 2016)....11

**Statutes**

9 U.S.C. § 2....4

9 U.S.C. § 3....4, 10, 11

9 U.S.C. § 4....5

**Other Authorities**

JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b)....1, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Alba agreed to arbitrate "ANY AND ALL DISPUTES" with Harbor Freight when he affirmatively clicked the "Reject All Cookies" button on Harbor Freight's website cookie banner (the "Cookie Banner"), which stated that "by clicking … Reject All Cookies … you acknowledge and agree to our Terms and Conditions of Use." Hall Decl. ¶ 5. Alba accordingly brought his claims in the wrong forum. The gravamen of Alba's lawsuit is that upon visiting Harbor Freight's website, www.harborfreight.com (the "Website"), he selected the "Reject All Cookies" button on the Cookie Banner, but that certain third-party tracking technology continued to collect his information. Compl., *passim.* The Cookie Banner states that "By clicking 'Accept All Cookies,' 'Reject All Cookies,' 'Cookie Settings,' or 'X,' or by continuing to browse our website, you acknowledge and agree to our Terms and Conditions of Use"—which are hyperlinked, bolded, underlined, and set off in bright red. Hall Decl. ¶¶ 4, 5, 6, 7. Alba alleges he viewed the Cookie Banner, clicked the "Reject All Cookies" button in the Cookie Banner, and then continued to browse the Website, *see* Compl. ¶¶ 96-97, manifesting his consent to the Terms.

The Terms contain a broad arbitration provision mandating that "ANY AND ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION." The Terms also incorporate JAMS Consumer Arbitration Rules (i.e., the JAMS "Comprehensive Arbitration Rules & Procedures") (the "JAMS Consumer Arbitration Rules"), which delegate questions of arbitrability to the arbitrator. Ord Decl., Ex. B, at 10. Harbor Freight respectfully requests this Court to compel Alba to individual binding arbitration, and for efficiency and to prevent potentially overlapping discovery or inconsistent decisions, to stay this action pending arbitration.

////

////

////

////

////

## II. STATEMENT OF FACTS

### A. The Harbor Freight Website

Harbor Freight operates the Website, through which users browse and purchase tools and other items. Compl. ¶ 32. Since at least October 31, 2024, the Cookie Banner displayed below appears on each web page on the Website to which a user navigates until the user interacts with the Cookie Banner. Hall Decl. ¶ 9.




*Id.* ¶ 5.

The Cookie Banner states that by clicking on the "Reject All Cookies" button, users "acknowledge[] and agree[]" to the Terms, which are hyperlinked in distinctive red, underlined and bolded text—and next to the "Reject All Cookies" and "Accept All Cookies" buttons. Clicking the red hyperlink brings visitors to the Terms, which include an agreement to arbitrate. *Id.* ¶¶ 5, 7.

This version of the Cookie Banner has been in place since approximately October 31, 2024. If individuals visited the Website before October 31, 2024, and subsequently returned to the Website after October 31, 2024, they have encountered the Cookie Banner displayed above, regardless of prior interactions with the Cookie Banner. *Id.* ¶ 12.

### B. Alba's Visits to Website and Consent to the Terms

Alba alleges he visited the Website "on one or more occasions during the last four years" and was "presented . . . with [the Cookie Banner], which provided the option to select the 'Reject All Cookies' button." *Id.* ¶¶ 94, 96. On April 1, 2026, Plaintiffs' counsel clarified that Alba "visited the [W]ebsite at least once per year between 2020 and 2025, and "does not remember the exact dates or times of his visits," but "believes his most recent visit was in October of 2025." Ord Decl. ¶ 6, Ex. A, at 1. Alba alleges that "[c]onsistent with his typical practice in rejecting or

otherwise declining the placement or use of cookies and tracking technologies, Plaintiff Alba selected and clicked the 'Reject All Cookies' button." *Id.* ¶ 97. Alba claims that "[i]n reliance on these representations and promises [in the Cookie Banner], only then did Plaintiff Alba continue browsing the Website." *Id.* ¶ 98.

### C. **The Harbor Freight Terms and Arbitration Agreement**

When Alba visited the Website in October 2025, he accepted the Terms that became effective on July 28, 2025.[1] *See generally* Hall Decl., Ex. A. The Terms state:

> ANY AND ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION. YOU HEREBY AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend your rights under these Terms, except for matters that may be taken to small claims courts. Your rights will be determined by a neutral arbitrator, NOT a judge or jury. You agree that any dispute arising out of or relating to these Terms, including with respect to the interpretation of any provision of these Terms or other agreements between you and us, or concerning the performance or obligations of you and us, shall be resolved by mandatory and binding arbitration submitted to JAMS.

*Id.* at 9 (emphasis in original).

The Terms also contain a class action waiver:

> Any arbitration, claim or other proceedings by or between you and us shall be conducted on an individual basis and not through any class action, mass action, or on a consolidated or representative basis.

*Id.* at 11.

[1] Unlike Alba, "on November 1, 2024, Plaintiff Blazina Jr. filed a demand for arbitration in San Francisco with JAMS against Defendant," acknowledging the arbitration agreement in the Terms but seeking "a declaration from the arbitrator that his claims were not subject to arbitration because he did not assent to the Terms of Use." Compl., ¶ 18. Blazina's Website visit was in 2023, and pre-dated the October 2024 Cookie Banner and July 2025 Terms. *Id.* ¶ 20. Blazina's arbitration was dismissed for lack of jurisdiction. *Id.*, Compl., Ex. B. Harbor Freight reserves all rights, including the right to promptly compel Blazina's claims to arbitration based on the outcome of Blazina's prior arbitration and information that may be disclosed during the course of the lawsuit.

## III. ISSUES TO BE DECIDED

A. Has Alba agreed to the Terms, including their arbitration provision?

B. Should this action be stayed pending arbitration of Alba's claims?

## IV. LEGAL STANDARD

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)*; see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) ("[B]enefits of private dispute resolution [include] lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)). If a court compels arbitration in a dispute filed in federal court, the FAA requires that the Court stay the litigation pending arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024).

The FAA is mandatory and does not allow courts to delve into policy considerations regarding arbitration. It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Benson v. Casa De Capri Enters., LLC*, 980 F.3d 1328, 1330 (9th Cir. 2020) ("Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (internal quotation marks omitted).

In deciding a motion to compel arbitration, the court must limit its review to two issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that

district courts shall direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Regarding the second element, where, as here, the parties have delegated threshold arbitrability questions to the arbitrator, the court must honor that agreement and allow the arbitrator to decide arbitrability, including the enforceability and scope of the arbitration agreement. *Brennan*, 796 F.3d at 1130.

## V. ARGUMENT

### A. There is a Valid Agreement to Arbitrate

Alba agreed to Harbor Freight's Terms, including their arbitration provision, by selecting the "Reject All Cookies" button on the Cookie Banner during his Website visit(s) in or after October 2025. The Cookie Banner is a "sign-in wrap" agreement, and Alba's selection of the "Reject All Cookies" button in the Cookie Banner evidenced his unmistakable intent to accept the Terms and their arbitration provision.

Courts apply ordinary contract formation principles under the applicable state law to determine whether parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014). Here, the Terms contain a California choice-of-law provision. *See* Hall Decl., Ex. A, at 9 ("These Terms and Conditions will be governed by and construed in accordance with the laws of the State of California, USA, without giving effect to any principles of conflicts of laws."). "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024) (citation omitted). "In the world of internet contracts . . . there are sign-in wrap agreements . . . [through] which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1161 (9th Cir. 2025). "Like all online contracts, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

that unambiguously manifests his or her assent to those terms." *Id.* at 1154-55 (citation omitted).

Here, the Cookie Banner comfortably satisfies the dual test for enforceability.

***The Terms are Conspicuous:*** To analyze whether a website provides reasonably conspicuous notice of an agreement, courts "look[] to 'the conspicuousness and placement of the Terms of Use hyperlink, other notices given to users of the terms of use, and the website's general design' in determining 'whether a reasonably prudent user would have inquiry notice of a[n] [online] agreement.'" *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). "To be conspicuous, notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Keebaugh*, 100 F.4th at 1013-14 (internal quotations omitted). Courts find the notice is conspicuous where screens "interjected notice of the terms and conditions directly above or below the relevant action item." *ClassPass*, 129 F.4th at 1157; *see also Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (compelling arbitration where terms-of-use hyperlink appeared "directly below" the "sign-up button").

Here, the link to the Terms in the Cookie Banner is conspicuous. "Terms and Conditions of Use" is in underlined, bolded red text against a white background at the bottom of the Cookie Banner. Hall Decl. ¶¶ 5, 8.




*Id.* ¶ 5.

In *Morrison v. Yippee Entertainment, Inc.*, the Ninth Circuit found a similarly formatted terms link was sufficiently conspicuous to put the plaintiff on notice that they were agreeing to the terms. *See* 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025). The court emphasized the appearance of the terms link and noted that "the hyperlink appeared in bright blue font against a

clean white background that stood out from the surrounding text to indicate it was clickable." *Id.* The same result should follow here. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025) (Davila, J.) (finding cookie banner displayed reasonably conspicuous notice of agreement when the cookie banner "clearly inform[ed] users in plain language that continued use of the website constitutes acceptance, and though not required, users are notified that they can consent to the policy by clicking a large box with 'ACCEPT' written in all caps").

Moreover, as part of determining whether a website provides reasonably conspicuous notice of its terms, courts can look to the "context of the transaction." *Keebaugh*, 100 F.4th at 1019. "The nature of an agreement may anticipate some sort of continuing relationship . . . that would require some terms and conditions[.]" *ClassPass Inc.*, 129 F.4th at 1155 (citation omitted). Here, Alba concedes a continuing relationship with Harbor Freight. "Alba visited the website at least once per year between 2020 and 2025." Ord Decl., Ex. A, at 1. He made these visits "consistent with an ordinary Website user's visits" and "to seek information about Harbor Freight's tool and hardware products." Compl. ¶¶ 94, 95. He also wishes to continue browsing the Website. *Id.* ¶ 102. Alba's October 2025 visit to the Website was only one visit in a consistent pattern of visits over the last four years, as part of his ongoing relationship with Harbor Freight. *Id.*; Ord Decl., Ex. B.

***Alba manifested assent to the Terms by clicking a button on the Cookie Banner:*** "The second step of the inquiry-notice internet contract formation test asks us to consider whether any action taken by the internet user—such as clicking a button or checking a box—'unambiguously manifest[ed] his or her assent' to proposed contractual terms." *Kseniya Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025) (quoting *Keebaugh*, 100 F.4th at 1018). "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Berman v. Freedom Financial Network, LLC,* 30 F.4th 849, 858 (9th Cir. 2022).

Here, the Cookie Banner explains the user's options and the significance of interacting with the Cookie Banner. It states that "[b]y clicking 'Accept All Cookies,' 'Reject All Cookies,' 'Cookie Settings,' or 'X,' or by continuing to browse our website, you acknowledge and agree to our Terms and Conditions of Use." Hall Decl. ¶¶ 5, 6. Immediately next to this sentence are the

red hyperlinks to the Terms. *Id.* ¶ 5. The Cookie Banner leaves no ambiguity that the specified actions, including Alba's selection of the "Reject All Cookies" button on the Cookie Banner, will result in agreement to the Terms. Compl. ¶ 97. Alba admits that he viewed the Cookie Banner before browsing the Website, and then selected and clicked "Reject All Cookies," as is his typical practice, thereby conceding acceptance of the Terms. *Id.* ¶¶ 97, 101.

The addition of the word "Cookies" to the "Reject All Cookies" button makes clear that in selecting that button, the user is electing to reject these cookies, but not the Terms. Hall Decl. ¶ 6. Unlike a "Reject All" button where a user could (unconvincingly) argue that he intended to reject both these cookies and the Terms, the "Reject All Cookies" button signals it applies only to cookies. And, the Cookie Banner expressly states that clicking this button is an acceptance of the Terms. Accordingly, by reviewing the Cookie Banner and selecting the "Reject All Cookies" button, Alba agreed to the Terms.

Even if Alba did not select the "Reject All Cookies" button (he admits he did), the Cookie Banner states that "by . . . continuing to browse our website, you acknowledge and agree to our Terms and Conditions of Use." Hall Decl. ¶ 5. Because Alba pleads that after interacting with the Cookie Banner, he "continue[d] browsing the Website." Compl. ¶ 98., he manifested his assent to the Terms through this second action.

**B. <u>The Terms Delegate Questions of Arbitrability to the Arbitrator</u>**

If there is agreement to arbitrate, the second inquiry is whether the Arbitration Agreement encompasses this dispute. The answer is yes, but the Court need not reach the question because the parties delegated arbitrability questions to the arbitrator. Accordingly, if there is a valid agreement to arbitrate, as there is here, the Court must compel arbitration and leave further questions of arbitrability to the arbitrator.

"[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). The parties are free to delegate any "gateway issues" over the validity and enforceability of arbitration provisions. *Brennan*, 796 F.3d at 1130. "Incorporation of arbitration rules, such as the JAMS rules, constitutes clear and unmistakable

evidence that contracting parties agreed to arbitrate arbitrability." *Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (Freeman, J.). "Virtually every circuit to have considered the issue has determined that incorporation of [an arbitrator's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (discussing American Arbitration Association rules). In *Cooper v. Adobe Sys. Inc.*, this Court recognized that "[t]he incorporation of JAMS rules (and specifically Rule 11(b)), means that a dispute over the scope—or even formation, for that matter—of the arbitration agreement is to be decided by the arbitrator." *Cooper*, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019).

Harbor Freight's Arbitration Agreement incorporates the "JAMS Consumer Arbitration Rules" (i.e., the JAMS "Comprehensive Arbitration Rules & Procedures"), Hall Decl., Ex. A, at 10, which explicitly state that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." Ord Decl., Ex. B, at 10.

Regardless, the Terms' broad language requires Plaintiff to arbitrate all his disputes with Harbor Freight. Alba agreed to arbitrate "ANY AND ALL DISPUTES BETWEEN [himself] AND [Harbor Freight]" and "TO GIVE UP [his] RIGHT TO GO TO COURT to assert or defend [his] rights under the[] Terms." Hall Decl., Ex. A, at 10 (emphasis in original). Further, any ambiguity in the scope of a contract (there is none here) must also be construed in favor of arbitration. *See, e.g.*, *Mercury Constr. Corp*., 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Morris v. Rent-A-Center, Inc.,* 2020 WL 1631203, at *3 (N.D. Cal. Apr. 1, 2020) (same).

That Alba's claim arose before his consent to the Terms is of no moment. Under California law, "an arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement." *Salgado v. Carrows Restaurants, Inc.*, 33 Cal. App. 5th 356, 361 (2019). In *Salgado*, the California Court of Appeal addressed an arbitration

agreement that said ""Both the Company and I agree that ***any claim***, dispute, and/or controversy that I may have against the Company . . . or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration . . . ." *Id.* The court held that language encompassed the dispute, which arose before the plaintiff signed the arbitration agreement. Accordingly, to the extent any of Alba's claims arose before he agreed to the Terms, the Arbitration Agreement applies retroactively.

### C. Alba Agreed to Individual Arbitration of his Claims

Class action waivers, including class arbitration waivers, are valid and enforceable. *AT&T Mobility LLC*, 563 U.S. at 344, 347 n.6 ("Requiring the availability of classwide arbitration" in the face of an express disclaimer against class arbitration "interferes" with the FAA's "principal purpose," which is to "ensure that private arbitration agreements are enforced according to their terms"); *Sheppard v. Staffmark Inv., LLC*, 2021 WL 690260, at *7 (N.D. Cal. Feb. 23, 2021) (Freeman, J.) ("Class action waivers are enforceable under the FAA and California state law.") (citations omitted). "[C]ourts and arbitrators must give effect to the [parties'] contractual rights and expectations." *Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks omitted).

Here, the Terms contain a class action waiver that states "[a]ny arbitration, claim or other proceedings by or between you and us shall be conducted on an individual basis and not through any class action, mass action, or on a consolidated or representative basis." Hall Decl., Ex. A, at 11. The Terms clarify that Alba "acknowledge[s] and agree[s] that this agreement specifically prohibits you from commencing arbitration proceedings as a representative of others." *Id.* Because Alba agreed not to pursue a class action, if Alba proceeds to arbitration, he must do so only on an individual basis.

### D. The Action Should Be Stayed Pending Arbitration

Harbor Freight seeks a stay of this action pending arbitration of Alba's claims. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Section 3 provides that a court "*shall* on application of one of the parties stay

the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration," so long as the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3 (emphasis added); *see also Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (Section 3 of the FAA is a mandate "that district courts must stay pending proceedings on issues subject to arbitration until such arbitration has been had").

Here, a stay of the entire action is appropriate because the claims of both Alba and Blazina are based on the same core set of facts concerning the function of the Cookie Banner. Parallel proceedings would be inefficient, result in overlapping discovery and motion practice, and could result in inconsistent rulings, prejudicing Harbor Freight. *See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (Freeman, J.) (compelling arbitration for some plaintiffs but staying all proceedings pending completion of arbitration).

## VI. CONCLUSION

For the foregoing reasons, Harbor Freight respectfully requests that the Court compel Alba's claims to individual binding arbitration and stay this action pending the outcome of the arbitration.

Dated: April 3, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*