ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400f
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFF DEGROOT (admitted *pro hac vice*)
jeff.degroot@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendant
HARBOR FREIGHT TOOLS USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY ALBA and ROBERT BLAZINA JR., individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 5:26-CV-01069-BLF

**DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. Beth Labson Freeman
Courtroom: Courtroom 1
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113
Date: August 13, 2026
Time: 9:00 a.m.

Complaint Filed: February 3, 2026

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on August 13, 2026 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, United States District Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 1, 5th Floor, San Jose, California 95113, Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight") will, and hereby does, move to dismiss the Complaint of Plaintiffs Larry Alba ("Alba") and Robert Blazina Jr. ("Blazina") (collectively, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Declaration of Matthew C. Danaher ("Danaher Decl."), all pleadings and papers on file in this matter, and such other and further evidence and argument as may be presented at the time of the hearing or otherwise.

Harbor Freight moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs fail to allege an actual and concrete injury-in-fact sufficient to confer Article III standing. Harbor Freight moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to plead: (1) an invasion of privacy or intrusion upon seclusion claim; (2) violations of the California Invasion of Privacy Act's ("CIPA") wiretapping provision, or pen register provision, Cal. Penal Code § 638.51(a), and, for Blazina, CIPA claims that are not time-barred; (3) fraud, deceit, and/or misrepresentation; (4) unjust enrichment; or (5) public injunctive relief. As to Alba, Harbor Freight brings this Motion expressly reserving all rights, without waiver of its Motion to Compel Arbitration, and solely in the event that Alba's claims are determined not to be arbitrable. For each and all of these reasons, Harbor Freight's Motion should be granted.

Dated: April 3, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....................1

II. STATEMENT OF FACTS ....................2

A. The Harbor Freight Website ....................2

B. Plaintiffs' Interactions with the Website....................2

C. Blazina's Arbitration Against Harbor Freight ....................3

D. Plaintiff Alba....................3

III. ISSUES TO BE DECIDED ....................3

IV. LEGAL STANDARDS ....................3

A. Rule 12(b)(1): Standing ....................3

B. Rule 12(b)(6): Failure to State a Claim....................4

C. Rule 9(b): Pleading Standard for Fraud-Based Claims....................4

V. PLAINTIFFS LACK ARTICLE IIII STANDING– NO INJURY-IN-FACT....................4

A. No Collection or Disclosure of Plaintiffs' Personal Information ....................5

B. None of the Allegedly Collected Information is Actionable ....................5

C. Plaintiffs Fail to Allege Their Information Diminished in Value....................8

VI. PLAINTIFFS FAIL TO PLEAD ANY VIABLE CLAIM ....................9

A. Plaintiffs Fail to Plead with Particularity Under Rule 9(b)....................9

B. Plaintiffs' Claims Also Fail Under Rule 8 ....................10

i. Invasion of Privacy and Intrusion Upon Seclusion Claims ....................11

ii. CIPA Wiretapping and Pen Register Claims ....................11

iii. Unjust Enrichment Claim ....................12

VII. CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT....................12

i. Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy ....12

ii. The Disclosure of "Private Communications" is Not Highly Offensive ....13

iii. Plaintiffs Fail to Allege an Intentional Invasion of Privacy ....13

iv. The Cookie Banner's Functionality is Not Dispositive ....13

VIII. BLAZINA'S CIPA CLAIMS ARE TIME-BARRED ....14

IX. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL ....16

A. The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap ....16

i. Plaintiffs cannot state a claim under section 631(a)'s first three clauses ....17

ii. Plaintiffs fail to allege aiding and abetting liability under the fourth clause ....17

B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply ....19

i. The Statute's Plain Language Excludes Website Tracking Technology ....19

ii. The Statute's Legislative History Excludes Website Tracking Technology ....20

iii. Plaintiffs Plead These Tools Generally Capture Contents ....21

X. CLAIM 5: PLAINTIFFS FAIL TO PLEAD FRAUD DAMAGES ....21

XI. CLAIM 6: PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS ....22

A. This Equitable Claim is Foreclosed by *Sonner v. Premier Nutrition Corp.* ....22

B. Plaintiffs Fail to Allege Harbor Freight Retained Any Benefit ....23

XII. PLAINTIFFS' REQUEST FOR PUBLIC INJUNCTIVE RELIEF FAILS ....23

XIII. CONCLUSION ....24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................23

*B.K. v. Desert Care Network.*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024)....................18

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023)....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 11

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) ....................10

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) (Pitts, J.)....................23

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*,
2025 WL 716341 (9th Cir. Mar. 6, 2025)....................4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................11

*D'Antonio v. Smith & Wesson Inc.*,
2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ....................12

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. 2024) ....................11

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................4

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) (Mag. Tse, J.)....................10, 16

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................8

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................18

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................5, 8, 9

*Feliz v. Cnty. of Orange*,
308 Cal. Rptr. 3d 731 (Cal. Ct. App. 2023), *reh'g denied* (June 14, 2023),
*review denied* (Aug. 30, 2023) ....................14

*First Options of Chicago v. Kaplan*,
514 U.S. 938 (1995) ....................1, 15

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................8, 21

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................12, 17

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................13

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ....................8

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ....................22

*Grigorian v. Citibank, N.A.*,
2024 WL 2106944 (C.D. Cal. Apr. 17, 2024) ....................24

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................12, 13

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................11

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................12, 14

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ....................5

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ....................21

*Henry Schein v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019)....................15

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ....................24

*Howsam v. Dean Witter Reynolds*,
537 U.S. 79 (2002)....................15

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................21, 22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................13

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ....................4

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................9

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................5

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................16, 17

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................4

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017) ....................24

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023)....................5

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................7

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .....21

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .....4

*Neil through Cyprian v. Park*,
833 F. App'x 689 (9th Cir. 2021) .....15

*Oil, Chem., & Atomic Workers Int'l Union (AFL-CIO), Loc. 5-857, Lab. Organizations v. Conoco, Inc.*,
241 F.3d 1299 (10th Cir. 2001) .....15

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) (Corley, J.) .....16

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) (Freeman, J.) .....23

*Robichaud v. Speedy PC Software*,
2013 WL 818503 (N.D. Cal. Mar. 5, 2013) .....9

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .....7

*Rodriguez v. IMDB.com, Inc.*,
2026 WL 886927 (Cal.Super. Mar. 24, 2026) .....21

*Rodriguez v. Ink America International Group, LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) .....20

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*,
467 P.3d 1033 (Cal. 2020) .....15, 16

*Schallert v. Palo Alto Networks, Inc.*,
2026 WL 754028 (Cal.Super. Mar. 06, 2026) .....20

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .....8, 12

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) (Wise, J.) .....16

*Shulman v. Group W Productions, Inc.*,
955 P.2d 469 (Cal. 1998) .....12, 13

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) (Freeman, J.) .....22

*Smith v. Maryland*,
442 U.S. 735 (1979)....................19

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025)....................18

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)....................18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)....................22, 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016)....................5

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)....................8

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023)....................17

*Tavernetti v. Superior Ct.*,
583 P.2d 737 (Cal. 1978)....................16

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)....................4

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006)....................19

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)....................9, 10

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)....................14, 22

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016)....................8

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)....................4

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)....................10, 12

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025)....................19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11

**Statutes**

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 638.50(b) .......... 12, 21

Cal. Penal Code § 638.51 .......... 3, 19, 20, 21

Cal. Penal Code § 638.52 .......... 20

Cal. Penal Code § 638.52(c) .......... 20

Cal. Penal Code § 638.52(d)(1) .......... 19

Cal. Penal Code § 638.52(d)(3) .......... 19

**Other Authorities**

Fed. R. Civ. P. 8 .......... 1, 10

Fed. R. Civ. P. 9(b) .......... 1, 4, 9, 10

Fed. R. Civ. P. 12(b)(1) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 4, 11

2015 California Assembly Bill No. 929, California 2015-2016 Regular Session .......... 19, 20

Senate Committee on Public Safety Analysis of California Assembly Bill 929,
California 2015-2016 Regular Session (June 16, 2015) .......... 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit is another attempt to conjure liability out of commonplace website tracking technologies and a malfunctioning cookie banner on Harbor Freight's website, www.harborfreight.com (the "Website"). The crux of Plaintiffs' Complaint is that, upon visiting the Website, they were presented with a cookie banner that allowed them to "Reject All Cookies" except those necessary for the Website's functionality, but certain cookies were allegedly not disabled and transmitted data to third parties. *See id.* ¶¶ 36, 96-97, 105-06. Absent from Plaintiffs' Complaint is any allegation that Harbor Freight ***intended*** this malfunction—or that it actually caused Plaintiffs' private information to be collected or disclosed to third parties. Plaintiffs' sprawling Complaint should be dismissed for multiple, independent reasons:

*First*, Plaintiffs fail to allege they suffered an actual injury-in-fact sufficient to confer Article III standing because they do not allege any of their personal information was actually collected or disclosed or that they were injured by any alleged disclosure.

*Second,* Plaintiffs' claims fail under Rule 9(b) because the entire Complaint sounds in fraud. From the outset, Plaintiffs assert Harbor Freight's representations that consumers could reject cookies were "false," and these fraud allegations infect every claim. Plaintiffs also fail to plead the "who, what, when, where, and how" of the alleged misconduct, as required under Rule 9(b).

*Third,* the Complaint also fails under Rule 8 because Plaintiffs fail to plausibly allege any of their own information was actually collected or disclosed.

*Fourth*, Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail to allege the requisite intentional or "highly offensive" conduct.

*Fifth*, Blazina's CIPA claims are time-barred. Plaintiffs' CIPA claims also fail because they do not allege Harbor Freight or any third party intended to commit an unlawful "wiretap" and Plaintiffs expressly plead themselves out of their "pen register" claim by alleging the cookies generally capture "some" data elements that can be "contents" of communications.

*Sixth*, Plaintiffs' claim for fraud fails because Plaintiffs do not allege resulting damages.

*Seventh*, Plaintiffs' unjust enrichment claim fails because they cannot plead lack of an

adequate remedy at law and have not identified any benefit conferred on Harbor Freight or expense they incurred.

*Eighth*, Plaintiffs' purported claim for public injunctive relief fails because Plaintiffs do not actually plead such a claim or pray for relief for the general public.

For each and all of these reasons, the Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. The Harbor Freight Website

Harbor Freight operates tool stores and the Website through which users browse and purchase tools. Compl. ¶ 32. The Website uses first and third-party cookies. *See id.* ¶ 33. The Website cookie banner (the "Cookie Banner") immediately displays (*see id.* ¶¶ 1, 36) and "remains displayed until users make a selection on the banner." *Id.* ¶ 15. The Cookie Banner informs users that the Website "uses cookies to enhance user experience and to analyze traffic on our website," and Harbor Freight "share[s] information about your use of our site with our social media, advertising and analytics partners." *Id.* ¶¶ 1, 5, 36. The Cookie Banner has a "Reject All Cookies" button and clicking this button "only permit[s] cookies during your visit necessary for the functioning of the website." *Id.* ¶ 36. The Cookie Banner also has an "Accept All Cookies" button and a "Cookie Settings" hyperlink through which users can adjust cookies settings. *Id.*; *see also id.* ¶ 35. "As of November 1, 2024, [the Cookie Banner] contains a link to the [Harbor Freight Terms of Use]." Compl., Ex. A ¶ 5 n.2; Ex. B ¶ 20.

### B. Plaintiffs' Interactions with the Website

Alba alleges only that he visited the Website "on one or more occasions during the last four years." Compl. ¶ 94. Blazina alleges that he visited the Website "in or around November 2023" and "has not visited the Website again since December 2023." *Id.* ¶ 103, Ex. B ¶ 20. Plaintiffs allegedly visited the Website "to seek information about Harbor Freight's tool and hardware products." *Id.* ¶¶ 94, 103. Plaintiffs allegedly selected "Reject All Cookies, but claim that Harbor Freight "nonetheless caused" third-party tracking technology, such as cookies, "to be placed on [Plaintiffs'] device[s]." *See id.* ¶¶ 97-100, 107-109. Plaintiffs' "private" communications with the Website were allegedly intercepted by and disclosed to the third parties without consent.

**C. Blazina's Arbitration Against Harbor Freight**

On November 1, 2024, Blazina initiated an individual JAMS arbitration against Harbor Freight, seeking "a declaration from the arbitrator that his claims were ***not*** subject to arbitration because he did not assent to the Terms of Use." Compl. ¶ 18, Ex. A ¶ 1 (emphasis added). As here, Blazina alleged tracking by third-party cookies without consent after he selected the "Reject All Cookies" button. Compl., Ex. A ¶¶ 4-7, 20-22, 24. On July 17, 2025, the Arbitrator dismissed the arbitration, finding that he lacked jurisdiction to decide whether the parties agreed to delegate to the Arbitrator the threshold issue of arbitrability. *See id.*, Ex. B., ¶¶ 33, 34. In the arbitration, Blazina alleged he visited the Website "in 2023." Compl. ¶ 20, Ex. B ¶ 8. He alleged that he learned "of Defendant's privacy violations from his counsel" "on or around April 17, 2024" and notified Harbor Freight "on or about June 27, 2024." Compl. ¶¶ 15, 16, 18, Ex. A ¶ 5 n.1.

**D. Plaintiff Alba**

This Court should compel arbitration of Alba's claims for the reasons in Harbor Freight's Motion to Compel Arbitration. *See* ECF No. 22. Harbor Freight brings this Motion as to Alba without waiver of its right to compel arbitration, and only if Alba's claims are not arbitrable.[1]

## III. ISSUES TO BE DECIDED

A. Have Plaintiffs failed to plead an injury-in-fact to establish Article III standing?

B. Are Blazina's CIPA claims time-barred?

C. Have Plaintiffs stated claims for: (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631(a); (4) use of a pen register in violation of CIPA § 638.51; (5) common law fraud, deceit, and/or misrepresentation; and/or (6) unjust enrichment?

D. Have Plaintiffs stated a claim for public injunctive relief?

## IV. LEGAL STANDARDS

**A. Rule 12(b)(1): Standing**

[1] Harbor Freight also reserves the right to promptly and without waiver of any rights compel Blazina's claims to arbitration based on the outcome of Blazina's prior arbitration and information that may be disclosed during the course of the lawsuit.

A complaint should be dismissed where the court lacks subject matter jurisdiction because the plaintiff lacks Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, 2025 WL 716341, at *5 (9th Cir. Mar. 6, 2025) (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### C. Rule 9(b): Pleading Standard for Fraud-Based Claims

Claims sounding in fraud are subject to Fed. R. Civ. P. 9(b). A plaintiff must "state with particularity the circumstances constituting fraud or mistake," including the "who, what, when, where, and how" of the alleged misconduct, and explain what is false or misleading about the purportedly fraudulent statement, and why it is false. *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). For common law fraud, the heightened pleading standard applies to all elements of the claim. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019).

## V. PLAINTIFFS LACK ARTICLE IIII STANDING– NO INJURY-IN-FACT

Neither of Plaintiffs' theories of alleged harm—(i) a privacy interest in their information,

or (ii) diminishment of the value of their information—is a cognizable injury-in-fact. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339).

### A. <u>No Collection or Disclosure of Plaintiffs' Personal Information</u>

Plaintiffs fail to allege that they disclosed, and Harbor Freight collected, any of their private information, and thus, that injury in fact occurred. "[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). "To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (finding no standing when plaintiff failed to specify personal information disclosed). Plaintiffs fail to do so.

While the Complaint alleges certain data elements are "Private Communications" that *may* be disclosed through cookies by Website users, *see, e.g.*, Compl. ¶¶ 4, 30, 38-45, 123, 125, 134-38, 153, 156, it does not allege that ***Plaintiffs*** entered any personal information on the Website or took any action other than "visit[ing] the Website to seek information about Harbor Freight's tool and hardware products." *Id.* ¶¶ 94, 103. As there was no alleged collection of private information, Plaintiffs do not allege the disclosure of private information. *See e.g., Mikulsky v. Noom, Inc.* 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (dismissing claims for lack of standing because failure to specify personal information precluded determination of whether it "is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Accordingly, Plaintiffs have failed to sufficiently allege an injury in fact and their claims are subject to dismissal.

### B. <u>None of the Allegedly Collected Information is Actionable</u>

Even if Plaintiffs provided "Private Communications" to the Website, as they allege, this is not actionable because Plaintiffs lack a legally protectable interest. Plaintiffs contend the Website transmitted "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" to third parties. *See e.g.*, Compl. ¶¶ 4, 32. This is not collection or tracking of sensitive or private information and cannot result in any actual harm to Plaintiffs.

Indeed, in *Popa v. Microsoft Corp.,* the Ninth Circuit recently ruled that a website capturing similar information as the one allegedly captured in this case did not result in the kind of highly offensive interferences or disclosures actionable at common law. *See Popa*, 153 F.4th 784, 791 (9th Cir. 2025). The Ninth Circuit made clear that "a court [must] assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system" and Article III standing is not conferred whenever a "privacy statute[]" is violated. *Id.* at 784, 791, 794. In *Popa*, a website allegedly captured data about site visits, "organiz[ing] the information it captures into over 30 different categories," such as "device" information, "type of browser," "operating system," "mouse movement" and "screen swipes," "text inputted by the user," and "how far down a webpage a user scrolls." *Id.* at 786. But tracking such user interactions does not result in "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Id.* at 791. There was no "embarrassing, invasive, or otherwise private information collected," as required to establish a cognizable injury. *Id.*

Further, in *Maghoney v. Dotdash Meredith, Inc.,* there was no privacy interest in the plaintiff's "health-related searches typed into the Website" "related to symptoms, contraction, and the treatment of chlamydia" (among other information), or "page navigation history, and metadata associated with his site visit, including his [IP] address and device identifiers." 2026 WL 497402, at *2, 8 (S.D. Cal. Feb. 23, 2026). The court reasoned that "it is unclear how [p]laintiff became aware of the sharing of this information" since he did not "allege anyone

directly contacted him related to his searches" or "that his searches were made publicly visible." *Id.* at *5. The plaintiff failed to allege that "his searches were directly linked to his name or other personally identifiable information." *Id.* "At most, the data was associated with an IP address and other metadata . . . which does not automatically qualify as personally identifiable information." *Id.* Similarly, in *Khamooshi v. Politico LLC*, the plaintiffs lacked a privacy interest in their "IP addresses, browser and device data, and 'other identifying information'" and thus lacked a concrete injury. *See* 2025 WL 2822879, at *4 (N.D. Cal. Oct. 2, 2025) (dismissing CIPA and other privacy claims).

The rationale of these cases applies equally here. Most of the information Plaintiffs allege was collected is simply metadata, for which "internet users have no right to privacy . . . ." *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA claims for lack of standing when website allegedly used "tracking beacons" to collect "[IP] address," "browser name [and] version," "geolocation data, email address, mobile ad IDs," "social media identities, . . . [and] cookies" because these data elements were simply constituted "metadata" for which "users have no right to privacy"); *Khamooshi*, 2025 WL 2822879, at *2 (finding "browsing activity, geolocation data, device type, browser type, and 'device fingerprints' . . . insufficient to establish a concrete privacy injury" given the information is not "embarrassing, invasive, or otherwise private information."); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *1, *4-5 (N.D. Cal. Aug. 6, 2025) (same for "'browser and device data' and 'other identifying information' alongside IP addresses" that defendant allegedly shared with TikTok). As such, Plaintiffs lack a protected privacy interest in this basic information.

Plaintiffs also cannot establish standing through collection and disclosure of "user input data" because they have not alleged any information they input to the Website, or how it is subject to a legally protected privacy interest. Plaintiffs "do[] not allege anyone directly contacted [them] related to [their] searches," do not allege "that [their] searches were made publicly visible," "do[] not allege that any of [their] searches were directly linked to [their] name[s] or other personally identifiable information." *Maghoney*, 2026 WL 497402, at *5. At most, Plaintiffs vaguely allege they "visited the Website to seek information about Harbor Freight's tool and hardware products"

in a manner "consistent with an ordinary Website user's visits," but fail to allege what "an ordinary Website user's visit[]" would even entail. Compl. ¶¶ 94-95, 103-04. These bare-bones allegations do not save Plaintiffs from failure to "identif[y] [any] embarrassing, invasive, or otherwise private information collected." *Popa*, 153 F.4th at 791. Although Harbor Freight recognizes some courts have found standing in similar cases, *see, e.g.*, *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6-7 (N.D. Cal. July 14, 2025); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026), Plaintiffs' dearth of allegations regarding the collection or disclosure of their own information precludes any argument that the alleged harm would be actionable at common law.

### C. Plaintiffs Fail to Allege Their Information Diminished in Value

Plaintiffs' conclusory allegations that their private and personally identifiable information was diminished do not survive dismissal. To plead injury-in-fact, Plaintiffs must adequately allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). That a plaintiff's information may have value for a defendant "cannot serve to establish that plaintiff has personally lost money or property" to support standing. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). "[S]imply because a plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' that does not mean that the plaintiff has 'lost money or property as a result.'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Indeed, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information.").

Here, the Complaint makes only generalized allegations about the alleged value of certain data. *See* Compl. ¶¶ 88-92. The Complaint summarily alleges "Plaintiffs and Class members have

also suffered harm in the form of diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 178. Plaintiffs do not plausibly allege that their own information has value, "that they personally lost the opportunity to sell their information," or "that the value of their information was somehow diminished after it was collected by [a third party.]" *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32. "Plaintiffs do not allege that their web browsing behavior was disclosed, or that [Harbor Freight's] actions diminished their opportunity to get paid for" the "numerous" unidentified "empirical studies" to which Plaintiffs cite. *See Khamooshi*, 2025 WL 2822879, at *4; Compl. ¶ 92. As Plaintiffs have not demonstrated the alleged "conduct resulted in some concrete and particularized harm, they have not articulated a cognizable basis for standing pursuant to Article III." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 932. The Court's analysis can and should end here, and dismissal should be granted.

## VI. <u>PLAINTIFFS FAIL TO PLEAD ANY VIABLE CLAIM</u>

### A. <u>Plaintiffs Fail to Plead with Particularity Under Rule 9(b)</u>

Rule 9(b)'s heightened pleading standard applies whenever a complaint is, as here, "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). "Even when fraud is not a necessary element of the claim, a plaintiff may still allege that the defendant's conduct was fraudulent." *Robichaud v. Speedy PC Software*, 2013 WL 818503, at *9 (N.D. Cal. Mar. 5, 2013). When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the heightened pleading requirements of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003).

Here, the Complaint is framed by and premised on allegedly fraudulent conduct. From the outset, Plaintiffs assert that "Defendant affirmatively represented that users could browse the Website without being tracked, followed, or targeted by third-party data brokers and advertisers. Those representations were false." Compl. ¶ 2. These types of allegations are interspersed throughout the Complaint. *Id.* ¶¶ 6, 38, 39, 93, 102, 111. Plaintiffs allege "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of [their] claim[s]."

*Vess*, 317 F.3d at 1103. Another court in this district found that Rule 9(b) applies to a similar complaint. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (Mag. Tse, J.) (finding the "alleged deception [in the cookie banner] . . . form[ed] the backbone for all of [p]laintiffs' claims" in another case of Plaintiffs' counsel and applying a heightened pleading standard).

Plaintiffs fail to satisfy Rule 9(b) because their "[a]verments of fraud" are not "accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. First, Alba fails to allege ***when*** he visited the Website, simply reciting that he visited "on one or more occasions during the last four years." Compl. ¶ 94. The timing is critical because the Cookie Banner evolved over time. *See* Compl., Ex. B ¶ 20 (describing multiple versions). Without Alba pleading the specifics of when he visited the Website, Harbor Freight cannot determine how the Website was "using any cookies placed on users' devices on those specific dates." *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025); *see also supra* Section II.C (discussing Blazina). Second, Plaintiffs both fail to allege any specific actions (aside from selecting "Reject All Cookies") on the Website, the information they entered (critical to their CIPA claims), or any other information about their alleged visits. Third, Plaintiffs allege the ability to "opt out" of certain cookies were "known exclusively to, and actively concealed by Defendant . . . at the time they were made. Defendant knew, or *should have known*, how the Website functioned . . . and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics . . . or otherwise, and knew, or *should have known*, that the Website's programming allowed the third-party cookies to be placed . . . ." Compl. ¶ 176 (emphasis added). Plaintiffs do not allege any specific facts to show that Harbor Freight *knew* that the alleged statements were false. The allegations suggest only that Harbor Freight *should have known*. As pleaded, Plaintiffs' claims fail to satisfy Rule 9(b). *See de Ayora*, 2025 WL 3707561, at *9; *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016).

### B. <u>Plaintiffs' Claims Also Fail Under Rule 8</u>

Plaintiffs do not allege that any of ***their own*** information was actually collected or disclosed

during their alleged Website visits. To survive dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff cannot state a claim premised in online privacy when their complaint is bereft of any allegations regarding how their own information may have been impacted. *See Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. 2024) (affirming dismissal of CIPA claim when the "allegations about [the plaintiff's] own interactions with the [] website [we]re sparse" and failed to "allege that she herself actually made any communications that could have been intercepted"). Here, the Complaint devotes dozens of pages to third-party tracking technologies in the abstract, but contains virtually no factual allegations about Plaintiffs' own experiences. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing CIPA claims and noting "[w]hile [p]laintiffs provide an example of a search by a hypothetical patient, they fail to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta."). This pleading deficiency defeats each claim.

*i.* *<u>Invasion of Privacy and Intrusion Upon Seclusion Claims</u>*

Plaintiffs cannot allege an egregious or highly offensive privacy violation when they fail to allege that their information was collected or disclosed. Generally alleging that the Website used "Private Communications" to third parties is insufficient. *See Cousin*, 681 F. Supp. 3d 1117, 1127 (dismissing privacy claims because only "generally allege[d]" that various data elements "were disclosed to Meta on Sharp's public website" and "d[id] not allege ***they*** provided this information.") (emphasis added); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *6 (E.D. Cal. June 9, 2025) (same).

*ii.* *<u>CIPA Wiretapping and Pen Register Claims</u>*

Plaintiffs cannot allege a Section 631(a) wiretapping claim unless they allege the third parties "read[], or attempt[ed] to read, or to learn the contents" of their communications. Cal. Penal Code § 631(a). Plaintiffs must allege the interception of "the substance, purport or meaning of [the] communication" rather than merely "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*,

750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs do not allege the "contents" of ***their*** communications were intercepted because they do not allege ***they*** ever inputted data on the Website. *See* Compl. ¶¶ 97-98, 105-06 (alleging only browsing). Similarly, Plaintiffs must allege the "record[ing] or decod[ing]" of "dialing, routing, addressing, or signaling information" to state a pen register claim. Cal. Penal Code § 638.50(b). But again, Plaintiffs fail to allege that they shared any of ***their*** information that could plausibly fall under the pen register statute. Multiple courts in this district have dismissed identical CIPA claims by Plaintiffs' counsel on these grounds. *See MyFitnessPal*, 2026 WL 216334, at *6; *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025); *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *4 (N.D. Cal. Feb. 17, 2026).

*iii.* <u>*Unjust Enrichment Claim*</u>

Without alleging what information was actually collected, Plaintiffs cannot identify any benefit conferred or any expense incurred. Allegations about what cookies generally "can" do or what data "may" be collected are insufficient. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) ("Plaintiffs have not pleaded any description of the 'personal information' that [d]efendants allegedly used. Without such facts, [p]laintiffs' assertion that [d]efendants garnered 'substantial profits' from the information is purely conclusory.").

## VII. <u>CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT</u>

Plaintiffs fail to state intrusion upon seclusion or invasion of privacy claims. Courts consider these claims together. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts first ask whether the complaint alleges the defendant "'***intentionally intrude[d]***, physically or otherwise, upon the solitude or seclusion of another." *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 490 (Cal. 1998) (emphasis added). Second, courts determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added).

*i.* <u>*Plaintiffs' Allegations Preclude a Reasonable Expectation of Privacy*</u>

As set forth above, *supra* Section VI.B, Plaintiffs do not allege they provided any of their information (including personal information) on the Website or that Harbor Freight collected any private information about them. Thus, there can be no violation.

*ii. The Disclosure of "Private Communications" is Not Highly Offensive*

The information would not be "highly offensive" if intercepted. The Complaint alleges disclosure of "Private Communications," which includes "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device and user information, referring URLs, session information, user identifiers, and/or geolocation data." Compl. ¶ 32. Disclosure of these data elements is ***not*** "highly offensive." *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *Hammerling*, 615 F. Supp. 3d at 1089 (same for geolocation information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device identification number, geolocation information). "Even disclosure of very personal information"—which is ***not*** present here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

*iii. Plaintiffs Fail to Allege an Intentional Invasion of Privacy*

The Complaint does not (and cannot) allege intentional conduct. Instead, Plaintiffs allege cookies were placed due to defects in the "Reject All Cookies" button rather than by intentional conduct. *See* Compl. ¶ 40 ("Defendant failed to prevent cookies from being transmitted . . ."). These claims fail because they rely on an alleged error. *See Shulman*, 955 P.2d at 490 (noting defendant must have "intentionally intrude[d]"); Judicial Council of California Civil Jury Instruction (CACI) No. 1800; Intrusion into Private Affairs (2025 edition) ("[t]o establish that [defendant] violated [plaintiff's] right to privacy … [plaintiff] must prove all of the following: . . . That [defendant] ***intentionally intruded***.)" (emphasis added).

*iv. The Cookie Banner's Functionality is Not Dispositive*

Plaintiffs may rely on decisions in similar cookie banner lawsuits that have not dismissed these claims at the pleading stage to argue that the Cookie Banner misrepresentation is "a kind of 'plus' factor that is significant in making a privacy intrusion especially offensive." *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025). Harbor Freight respectfully disagrees. An intrusion or invasion must be so "serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Heeger*, 509 F. Supp. 3d at 1193. Even if there was an inadvertent misconfiguration, Plaintiffs still fail to allege any intrusion as to ***their own*** information. Plaintiffs fail to satisfy either prong of the combined inquiry, and each claim fails.

## VIII. BLAZINA'S CIPA CLAIMS ARE TIME-BARRED

"CIPA is subject to a one-year statute of limitations." *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023). In his arbitration, Blazina testified that he visited the Website "in 2023" and "has not visited the Website again since December 2023." Compl., Ex. B ¶¶ 2, 8, 20. In the Complaint, Blazina specified that his site visit was November 2023. Compl. ¶ 103. Thus, Blazina's CIPA claims arose in 2023—***over two years*** before this lawsuit was filed on February 3, 2026, and are time barred.

Blazina cannot save these claims through the delayed discovery rule. The Complaint contends that the statutory period commenced "on or around April 17, 2024, when [Blazina] learned of Defendant's privacy violations from his counsel." Compl. ¶ 15. But, the statute of limitations would then have expired on April 17, 2025, nearly one year before Blazina commenced this action. *See* Compl. ¶ 15.

Blazina also cannot equitably toll the limitations period during his arbitration, which commenced on November 1, 2024 and concluded on July 17, 2025. Compl., Exs. A, B. Equitable tolling is not automatic and only "applies occasionally and in special situations to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Feliz v. Cnty. of Orange*, 308 Cal. Rptr. 3d 731, 741 (Cal. Ct. App. 2023), *reh'g denied* (June 14, 2023) (cleaned up), *review denied* (Aug. 30, 2023). "In California, equitable tolling applies when a plaintiff can show "three elements: [(1)] timely notice to the defendant, [(2)] lack

of prejudice to the defendant, and [(3)] reasonable and good faith conduct by the plaintiff." *Neil through Cyprian v. Park*, 833 F. App'x 689, 690 (9th Cir. 2021).

First, Harbor Freight was prejudiced by Blazina's arbitration. Harbor Freight was required to appear, pay fees, conduct conferences with the Arbitrator, and brief arbitrability, only for the Arbitrator to confirm that he lacked jurisdiction. Compl., Ex. B ¶¶ 29, 33-34. The entire process was wasteful, unnecessary, and burdensome to Harbor Freight. If Blazina thought he was not subject to an arbitration agreement, then the proper venue to challenge arbitrability is a court. *See* Compl., Ex. B ¶ 13 ("It is normally for the courts, not the arbitrator, to determine the question of jurisdiction and arbitrability unless the parties delegated threshold arbitrability questions to the arbitrator 'clearly and unmistakably.'") (quoting *Henry Schein v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019)); *First Options of Chicago v. Kaplan*, 514 U.S. 938, 942 (1995); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide"); *Oil, Chem., & Atomic Workers Int'l Union (AFL-CIO), Loc. 5-857, Lab. Organizations v. Conoco, Inc.*, 241 F.3d 1299, 1304 (10th Cir. 2001) ("In light of the courts' authority to decide whether a dispute is arbitrable, the Supreme Court has indicated that an arbitration should not proceed until a court has resolved the threshold question of whether the dispute is arbitrable."). Instead, Blazina burdened Harbor Freight with an eight-month arbitration while arguing his claims were not arbitrable, which could have been avoided had Blazina timely commenced this lawsuit.

Second, Blazina's conduct was objectively unreasonable and in bad faith because he brought an arbitration to contest arbitration, this was never ruled on, and the matter was dismissed for lack of jurisdiction. Compl., Ex. B. Whether the plaintiff's conduct is "reasonable and [in] good faith" is a two-pronged inquiry: "[a] plaintiff's conduct . . . be objectively reasonable and subjectively in good faith. *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 467 P.3d 1033, 1043 (Cal. 2020). "An analysis of reasonableness focuses not on a party's intentions or the motives . . . but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances. *Id.* at 1044. The subjective good faith prong is "that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, [] being faithful

to one's duty or obligation." *Id.* As Blazina lacked objective reasonableness in prosecuting the arbitration, the time Blazina voluntarily spent in arbitration cannot toll the statute of limitations.

Then Blazina waited ***over six months*** after the arbitration was dismissed to file this lawsuit. *See* Compl. ¶ 20; *see generally* Compl., Ex. B. Even under his delayed discovery argument the statute of limitations began running when Blazina "discovered" his claims on April 17, 2024. Inexplicably, six months and fifteen days passed before Blazina filed the arbitration. Under Blazina's equitable tolling theory, the statutory period resumed on July 17, 2025, when the arbitration was dismissed. Compl., Ex. B. Yet Blazina inexplicably waited another six months and twenty-five days before he filed this action. Together, this amounts to 399 days when Blazina knew of but failed to file this lawsuit. At the very latest, Blazina's CIPA claims expired on December 31, 2025, 34 days before he filed this action. Courts in this district have scrutinized—and dismissed CIPA claims—in other cases under the same circumstances. *See Shah v. Politico LLC*, 2026 WL 323269, at *7 (N.D. Cal. Feb. 6, 2026) (Wise, J.) (dismissing CIPA claims when "[m]ore than six months" had passed); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 WL 3268404, at *6 (N.D. Cal. Nov. 24, 2025) (Corley, J.) (nine and a half months); *de Ayora*, 2025 WL 3707561, at *5 (N.D. Cal. Dec. 22, 2025) (eight months). Blazina's unreasonable delays confirm that his CIPA claims are time-barred, and must be dismissed.

## IX. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL

### A. The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap

Plaintiffs fail to state a wiretapping claim under Section 631(a) of CIPA. Section 631(a) prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F.

Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiffs fail to plead a violation of any of the four clauses.

*i.* *<u>No Direct Liability Under Section 631(a)'s First Three Clauses</u>*

***Clause 1*****:** The "overwhelming weight of authority" limits the first clause of Section 631(a) to its plain text—i.e., "telegraph[s] or telephone wire[s]." Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135 (holding the first clause is inapplicable to wiretapping via the Internet, including wiretapping on a smartphone's mobile web browser). It is inconsequential that Plaintiffs (vaguely) allege they visited the Website on a "device." *See, e.g.*, Compl. ¶¶ 99, 108. This does not bring the communications within the first clause, and there is no basis for liability. *See Mastel*, 549 F. Supp. 3d at 1135 (rejecting argument that a "tool or device" exclusive to iPhones qualifies as a "telephone instrument" under the first clause).

***Clause 2*****:** Harbor Freight cannot be liable under the second clause because Plaintiffs allege Harbor Freight "owns and operates" the Website. Compl. ¶ 32. Harbor Freight is therefore a party to the communications. "[I]t is established that a party to the communication cannot be liable for recording its own conversations under § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023). Also, for the reasons outlined in Section VI.B, Plaintiffs fail to allege their visits to the Website involved the interception of the "contents" of their communications, as required under the second clause.

***Clause 3*****:** Section 631(a)'s third clause is derivative of the first two and necessarily fails. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 827 ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because [p]laintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").

*ii.* *<u>No Aiding and Abetting Liability Under the Fourth Clause</u>*

The fourth clause of 631(a) applies when a defendant "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Harbor Freight respectfully asks this Court to follow the other courts that, for aiding and abetting liability, require a website operator to have "both knowledge of the conduct that will violate the statute ***and a***

***purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis added).

***Harbor Freight had no intent to unlawfully wiretap*****:** To the extent Plaintiffs allege Harbor Freight intended to violate Section 631(a), their allegations are insufficient. In *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged an aiding and abetting theory because defendant embedded a third-party's chat software onto its website. *See* 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024). The court held that simply alleging a website operator knowingly implemented certain software was insufficient to establish aiding and abetting under clause four. *Id.* at *6*; see also Smith v. YETI Coolers, LLC*, 2025 WL 877127, *1 (N.D. Cal. Mar. 14, 2025) (dismissing and finding allegations of knowledge of third party software on the website to "collect[] consumers' sensitive information" were "insufficient to support a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute.").

Plaintiffs allege that Harbor Freight willfully aided and abetted Third Parties "[b]y configuring the Website in [a] manner" that it "caused Plaintiffs' [] browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications . . . to the Third Parties without Plaintiffs' and Class members' consent." Compl. ¶ 153. However, Plaintiffs also allege that Harbor Freight used the Cookie Banner to disclose cookies and provide options to customize the Website experience. *See* Compl. ¶ 1. Plaintiffs' allegations confirm Harbor Freight did *not* intend to aid the surreptitious collection of communications. At best, the Complaint suggests that the alleged failure of the "Reject All Cookies" button was a good faith mistake.

***The "Third Parties" had no intent to unlawfully wiretap*****:** Plaintiffs failed to plead that the "Third Parties" have the predicate liability necessary for aiding and abetting. As set forth above, the first clause of section 631(a) fails when applied to internet communications. There is no underlying violation of the second clause because the "Third Parties" lack the requisite intent.

Alleging a website operator allows third-party cookies to operate on its website does not mean those third parties intended to commit an unlawful wiretap. *See, e.g.*, *B.K. v. Desert Care Network.*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta

"intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). On the other hand, in *Wilson v. Google LLC*, a court denied a motion to dismiss where the complaint alleged the defendant "***intentionally encourage[d]***' website operators to use its tools in a way that circumvents users' privacy settings." 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025) (emphasis added). The Complaint here lacks allegations that Harbor Freight affirmatively encouraged any third party to circumvent Cookie Banner preferences; rather Plaintiffs simply allege the Cookie Banner did not operate as intended. Plaintiffs fail to state a claim for aiding and abetting liability under the fourth clause.

**B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply**

Pen registers track every outbound number that a telephone dials and trap and trace devices record every inbound number that a telephone receives by using electronic impulses to reveal the telephone number. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). Plaintiffs allege that the third-party "cookies and the corresponding software code" are "pen registers" because those cookies captured "the IP address and user-agent information" from Plaintiffs' computers. Compl. ¶ 166-67. This theory fails.

*i. The Statute's Plain Language Excludes Website Tracking Technology*

In 2015, the California Legislature enacted Section 638.51 and its accompanying statutes through A.B. 929 to allow California law enforcement agencies to install pen register or trap and trace devices like their federal counterparts without running afoul of state law. *See* RJN, Danaher Decl., Ex. A, Stats. 2015, Ch. 204, Sec. 2 ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code") ("A.B. 929"). The plain language limits the application to telephones. Among other requirements, a court order authorizing the use of a pen register or trap and trace device must specify the identity of the person "in whose name . . . the ***telephone line*** to which the pen register or trap and trace device is to be attached," and the number and location of the "***telephone line***" to which the pen register or trap and trace device would be attached. Cal. Penal

Code § 638.52(d)(1), (3) (emphasis added). Section 638.52, also enacted as part of A.B. 929, provides that information acquired by a pen register or trap and trace device may only disclose location information "to the extent that the location may be determined from the ***telephone number***." Cal. Penal Code § 638.52(c) (emphasis added).

Numerous California courts have held that the online tracking technology alleged here does not fall within Section 638.51. *Schallert v. Palo Alto Networks, Inc.* rejected a broader interpretation, sustaining a demurrer to a pen register claim without leave to amend. *See* 2026 WL 754028, at *3 (Cal. Super. Mar. 06, 2026). The court emphasized that no "binding, California authority" was before the court "holding that [] CIPA applies to websites." *Id.* at *1. Indeed, no such authority exists. CIPA's pen register provisions (i.e., Section 638.51 and its accompanying provisions), "[c]onstrued together . . . limit the scope of a trap and trace device to telephone lines." *Id.* at *2. Similarly, in granting a motion for judgment on the pleadings without leave to amend, the court in *Rodriguez v. Ink America International Group, LLC* found that "CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software." 2025 WL 4034985, at *3, 5 (Cal. Super. Dec. 10, 2025).

*ii.* *<u>The Statute's Legislative History Excludes Website Tracking Technology</u>*

A.B. 929's legislative history underscores that the California legislature did not intend the statutes to apply to websites collecting IP addresses. A.B. 929 does not mention IP addresses or imply they are within the bill. *See* RJN, Danaher Decl., Ex. B, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015). Instead, the Legislative Counsel's Digest states that A.B. 929 "would clarify that any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from the ***telephone number***." RJN, Danaher Decl., Ex. A, at 1 (emphasis added); *see also* Danaher Decl. Ex. B, at 11 ("Pen registers and track and trace devices generally track incoming and outgoing ***telephone calls***.") (emphasis added). The legislative history does not suggest the bill was intended to apply to websites or the collection of IP addresses or "user-agent information." And, given that A.B. 929 was enacted ***in 2015***, the Legislature was aware of

IP addresses or internet communications. Plaintiffs' invocation of CIPA's preamble language, *see* Compl. ¶ 163, does not extend the statutes to websites and the internet.

Though some other courts have held differently regarding Section 638.51's scope, *see, e.g.*, *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Motorola*, 2025 WL 1939957, at *11-13, Harbor Freight respectfully requests this Court to follow those courts that have appropriately employed a narrower interpretation absent relevant binding authority.

*iii.* *Plaintiffs Plead These Tools Generally Capture Contents*

Plaintiffs' generalized wiretapping allegations defeat their specific pen register claim. A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents*** of a communication." Cal. Penal Code § 638.50(b) (emphasis added). Plaintiffs' wiretapping claims fail because they don't allege intentional conduct or that *their* contents of communications were intercepted. Now, by pleading that "some" contents of communications are intercepted, Plaintiffs plead themselves out of a pen register claim. Compl. ¶ 168; *see also Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927, at *3 (Cal.Super. Mar. 24, 2026) ("The pen/trap statute's content exclusion is not incidental; it is what sets a pen/trap apart from a wiretap, and courts have long made that distinction.").

## X. CLAIM 5: PLAINTIFFS FAIL TO PLEAD FRAUD DAMAGES

Plaintiffs fail to allege any fraud damages. Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance ***and resulting damage***." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009) (emphasis added). Plaintiffs' alleged fraud damages boil down to "diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 178. In similar cases, such allegations are insufficient to allege damages. For example, in *Hubbard v. Google LLC*, the plaintiffs alleged that Google collected and used data from YouTube users to generate advertising revenue, that "there is a market for consumers to monetize [p]ersonal [i]nformation," and "published analyses and studies have placed a value in excess of $200 on an individual's [p]ersonal [i]nformation." 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). The

court found that "[p]laintiffs do not allege sufficient facts from which the Court may reasonably infer that Defendants' misappropriation reduced the value of [p]laintiffs' information" and an "explanation as to how does not appear so obvious that the Court may simply infer one." *Id.*; *see also Dollar Tree*, 2025 WL 2939229, at *20 (N.D. Cal. Oct. 16, 2025) (dismissing claim for lack of actual damages in identical lawsuit of Plaintiffs' counsel when "Plaintiffs have not plausibly alleged that they would either sell their data or pay anything to protect their data"); *Griffith v. TikTok, Inc.,* 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury."). Because Plaintiffs do not allege that they paid anything to browse the Website, they fail to allege "resulting damages."

## XI. CLAIM 6: PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

### A. This Equitable Claim is Foreclosed by *Sonner v. Premier Nutrition Corp.*

"A plaintiff cannot state a claim for equitable relief "if the pleading does not demonstrate the inadequacy of a legal remedy." *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2022 WL 17170159, at *12 (N.D. Cal. Nov. 22, 2022) (Freeman, J.); *Hubbard*, 2024 WL 3302066, at *4 (citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020)). The *Hubbard* court held that "Plaintiffs' allegations of harm focus on economic injuries already suffered," "Plaintiffs do seek damages to remedy their harm," and "the legal remedy of damages should serve as an adequate form of retrospective relief for such harm." *Id.* at *4-6 (dismissing "all of [p]laintiffs' requests for equitable relief," including for injunctive relief, restitution, audit and accounting, and disgorgement of profits, and "all of their claims for unjust enrichment."). "[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Id*. at *6. Here, Plaintiffs plead an adequate remedy at law, and, like *Hubbard*, seek damages for alleged injuries. *See* Compl. ¶¶ 129, 139, 160, 171, 182. Plaintiffs "rel[y] on 'the same factual predicates'" under their unjust enrichment claim as alleged under their fraud, deception, and/or misrepresentation claims, for which they allege an adequate legal remedy exists. *Compare*

Compl. ¶ 186 ("Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions.") *with id.* ¶ 174 ("Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could 'Reject All Cookies.'") *and* ¶ 176 ("Defendant also gained financially from, and as a result of, its breach."). Under *Sonner* and its progeny, Plaintiffs' unjust enrichment claim and all requests for equitable relief—including the Prayer for "[a]n order for full restitution," "[a]n order requiring Defendant to disgorge revenues and profits wrongfully obtained," and "[a]n order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint"—are foreclosed. Compl. Prayer ¶¶ E, F, G.

### B. <u>Plaintiffs Fail to Allege Harbor Freight Retained Any Benefit</u>

Generally, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[t]he Ninth Circuit has explained that '[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.'" *Rabin v. Google LLC*, 2023 WL 4053804, at *12 (N.D. Cal. June 15, 2023) (Freeman, J.) (quoting *Astiana*, 783 F.3d 753, 762 (9th Cir. 2015). "To adequately allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the defendant received and unjustly retained benefit at the plaintiff's expense.'" *California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.) For the reasons in Section VI.B, Plaintiffs' failure to allege what information of ***Plaintiffs*** was disclosed to Harbor Freight or any other third party or that Harbor Freight obtained a benefit from it is fatal to this claim.

## XII. <u>PLAINTIFFS' REQUEST FOR PUBLIC INJUNCTIVE RELIEF FAILS</u>

The caption of the Complaint and certain allegations refer to public injunctive relief on behalf of "the general public," but no such claim is actually pleaded, and Plaintiffs do not pray for that relief. Compl. pp. 1 (caption page), 1:1-28 (beginning of allegations), Prayer. Plaintiffs only mention "the general public" in passing. Thereafter, the Complaint mentions "the general public" only four times in a single paragraph in the CIPA wiretapping claim (claim three). *See id.* ¶ 161. These references to "the general public" are not enough. In any event, Plaintiffs' claims

concern only those individuals who encountered the Cookie Banner on the Website, clicked the "Reject All Cookies" button, and then continued browsing the Website. This is not "the general public." *Cf. McGill v. Citibank, N.A.*, 393 P.3d 85, 90 (Cal. 2017) ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021) (finding injunctive relief request for "cable subscribers" would "by definition . . . only benefit a 'group of individuals similarly situated to the plaintiff'").

*Grigorian v. Citibank, N.A.* is illustrative. *See* 2024 WL 2106944 (C.D. Cal. Apr. 17, 2024). In *Grigorian*, the court applied *Hodges* to find that public injunctive relief was not implicated where the putative class included individuals who "(1) applied for and [were] denied a Citi credit card or had a Citi credit card that was subsequently cancelled, and (2) have last names ending in -ian or -yan." *Id.* at *3. The court noted that even if an injunction would have "broad public benefits," the proposed injunctive relief "must do more than incidentally benefit the public." *Id.* at *4. Here, like in *Grigorian*, there is a specific subset of individuals seeking specific relief. *See* Compl. ¶ 112 (defining putative class to include "All persons who browsed the Website in the United States after clicking or selecting the 'Reject All Cookies' button in the popup cookies consent banner"); *see also id.* at ¶¶ 102, 111, 116, 160 (seeking injunctive relief on behalf of Plaintiffs and similarly situated putative class). Accordingly, Plaintiffs' fleeting references to "the general public" fail to state a plausible claim for public injunctive relief, and to the extent such a claim is alleged, it should be dismissed.

## XIII. CONCLUSION

For each and all of these reasons, Harbor Freight requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint.

Dated: April 3, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*