**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARRY ALBA and ROBERT BLAZINA JR., as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>Defendant. | Case No. 5:26-cv-01069-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hon. Beth Labson Freeman<br><br>Hearing Date: August 13, 2026<br>Hearing Time: 9:00 a.m.<br>Hearing Location: San Jose, Crtrm 1, 5th Fl. |

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 1

A. Harbor Freight Falsey Told Plaintiffs and Other Users That They Could "Reject All" Cookies on the Website....... 1

B. Defendant Intentionally Designed the Website and the Website's Cookie Banner. ....... 3

C. Defendant Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendant and the Third Parties Profited. ....... 4

D. Plaintiff Blazina's Related Arbitration Proceedings. ....... 4

III. ARGUMENT ....... 5

A. Plaintiffs Have Article III Standing for Their Claims. ....... 5

1. Plaintiffs allege that their information was collected. ....... 5

2. Plaintiffs have a legally protectable interest. ....... 6

B. Rule 9(b) Applies Only to Plaintiffs' Fraud Claims. ....... 9

C. Plaintiff Blazina's CIPA Claims are Timely. ....... 10

1. Plaintiff Blazina's arbitration provided timely notice of the claim. ....... 13

2. Defendant has not suffered prejudice and Plaintiff acted in good faith. ....... 13

3. The time between the end of the arbitration and the filing of this suit has no bearing on the timeliness question ....... 15

D. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion. ....... 15

1. Plaintiffs had a reasonable expectation of privacy given Defendant's representation that they could "Reject All Cookies" and Defendant's violation of Plaintiffs' Privacy was highly offensive. ....... 16

2. Plaintiffs' adequately plead that their information was wrongfully collected and that Defendants' conduct was not mere error. ....... 17

E. Plaintiffs Have Adequately Pleaded CIPA Claims. ....... 18

1. Plaintiffs properly allege a violation of CIPA Section 631(a). ....... 19

2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51. ....... 21

F. Plaintiffs' Have Adequately Pleaded Damages with Respect to Their Fraud Claims. ....... 24

G. Plaintiffs' Unjust Enrichment Claim is Properly Pled. ....24

H. Plaintiffs Request Leave to Amend If Necessary. ....25

IV. CONCLUSION ....25

## TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)...................... 24

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014)........................................................................................... 10

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953 (C.D. Cal. Aug. 22, 2024) ........... 21

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*,
No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023)....... 10

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) ............................................................. 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ............................................................................. 23

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ....................... 9

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) .................................................................................... 24

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993).............................................................................................. 12

*Cody v. Ring LLC*,
No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)..................... 18

*D'Antonio v. Smith & Wesson Inc.*,
No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257 (N.D. Cal. Feb. 17, 2026)................. 17, 22

*Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020)...................................................................................... passim

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992)............................................................................................ 25

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........................................................................... 11

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017).............................................................................................. 6

*Emrich v. Touche Ross & Co.*,
846 F.2d 1190 (9th Cir. 1988)........................................................................................... 12

*Fanucci v. Allstate Ins. Co.*,
638 F. Supp. 2d 1125 (N.D. Cal. 2009) ........................................................................... 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 10

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 8

*Gabrielli v. Haleon*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. August 29, 2025)..... 9, 16, 22

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .......... passim

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 22

*Greist v. Lendus, LLC*,
No. 24-cv-02411-AMO, 2025 U.S. Dist. LEXIS 108374 (N.D. Cal. June 6, 2025) .......... 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15

*Harper v. Charter Communs., LLC*,
No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747 (E.D. Cal. Feb. 12, 2021).... 12, 13

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018).......... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (Cal. 1994).......... 16, 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) .......... 16

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024).......... 24

*In re Facebook Consumer Priv.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 24

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) .......... 6

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 22

*In re Orchid Child Prods. LLC*,
Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024 Bankr. LEXIS 962
(Bankr. C.D. Cal. Apr. 22, 2024).......... 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 7

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ........ 19

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 24, 25

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........ 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 U.S. Dist. LEXIS 120002, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 5

*Kohler v. Flava Enters.*,
No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) ........ 10

*Lantzy v. Centex Homes*,
31 Cal. 4th 363 (2003) ........ 12, 14

*Lasko v. Caliber Home Loans*,
No. 20-17181, 2022 U.S. App. LEXIS 6215 (9th Cir. Mar. 10, 2022) ........ 10

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
194 P.3d 1026 (Cal. 2008) ........ 12, 13

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (2023) ........ 7

*Miller v. National Broadcasting Co.*,
187 Cal.App.3d 1463, 232 Cal. Rptr. 668, 678 (1986) ........ 16

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........ 21, 22

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 22

*Nguyen v. Stephens Institute*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........ 17

*Ortiz v. Deckers Outdoor Corp.*,
No. 25-cv-09631-RFL, 2026 U.S. Dist. LEXIS 100845 (N.D. Cal. May 6, 2026) ........ 8, 9

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ........ 7, 16

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) ........ 7, 8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 18

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........ 18

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 15

*Rodriguez v. Google*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 24

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*,
700 F. Supp. 3d 928 (S.D. Cal. 2023) .......... 24

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 25

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) .......... 24

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) .......... 21, 22

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .......... 8, 9, 16

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .......... 6

*Smith v. Yeti Coolers, LLC*,
No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) .......... 19, 20

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 24, 25

*Taus v. Loftus*,
40 Cal. 4th 683, 54 Cal. Rptr. 3d 775, 151 P.3d 1185 (2007) .......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6, 23

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 8

*Vishal Shah v. Politico LLC*,
No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) .......... 5, 7, 16

*Wilson v. Google*,
No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025) .......... 21

**Statutes**

Cal. Penal Code § 631(a) .......... 18

Cal. Penal Code § 638.50(b) .......... 21

Cal. Penal Code § 638.51 .......... 18, 21

Cal. Penal Code § 638.51(a) .......... 21

Cal. Penal Code § 638.51(b) ........ 22

**Other Authorities**

Restatement (Second) of Torts, § 652D cmt. C, illus. 11 ........ 8

**Rules**

Fed. R. Civ. P. 9(b) ........ 10, 11, 12

## I. INTRODUCTION

As companies develop increasingly invasive and integrated means of extracting and aggregating data from consumers' internet activity, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendant Harbor Freight Tools, USA, Inc. ("Defendant" or "Harbor Freight") promised to visitors of its website was an outright lie. When Plaintiffs accessed Defendant's website, they were presented with a cookie consent banner that promised users the opportunity to "Reject All Cookies"—small text files that, when attached to a user's browser or device, enable third parties to track the user and collect their personal and privacy communications in real time.




Selecting "Reject All," however, meant nothing. Instead, Defendant intentionally programed its website to unlawfully allow third parties to place non-essential third-party tracking cookies on the devices of Plaintiffs and every other visitor to its website before and after Plaintiffs and many users explicitly "Reject[ed] All Cookies." As a result, Defendant enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their explicit consent. Class Action Compl., ECF No. 1 ("Compl.") ¶¶ 3–4.

Plaintiffs bring the instant action to hold Defendant accountable for this highly offensive invasion of their privacy and to stop it from engaging in this unlawful conduct. Defendant now moves to dismiss, claiming that Plaintiff Blazina's CIPA claims are time barred, and that Plaintiffs have not adequatley alleged their claims. *See, generally*, ECF No. 23 ("Mot."). Each argument lacks merit.

## II. FACTUAL BACKGROUND

### A. Harbor Freight Falsey Told Plaintiffs and Other Users That They Could "Reject All" Cookies on the Website.

Like many companies, Defendant designed its website, www.harborfreight.com (the "Website"), with resources and programming scripts from third parties that enable those parties to

place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. Compl. ¶ 2. Defendant, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers. *Id*.

When consumers visit the Website, Defendant displays to them a popup cookie consent banner. *Id*. ¶ 1. Defendant's cookie banner states that the Website uses cookies but expressly gives users the option to control whether they are tracked and how their personal data is used. *Id*.

The cookie consent banner states "This website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also share information about your use of our site with our social media, advertising and analytics partners. Selecting "Reject All Cookies" would only permit cookies during your visit necessary for the functioning of the website." *Id*. The banner then purported to provide users the opportunity to "Reject All Cookies." *Id*.




The representation that users could "Reject All Cookies" was false. Instead, even when users clicked "Reject All Cookies," Defendant nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id*. ¶¶ 39–45. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for the purposes alleged in the Complaint and as described below. *Id*. ¶¶ 43–87.

Even after users elect to "Reject All Cookies," Defendant surreptitiously enabled an enormous number of third parties—including Meta Platforms, Inc. (Facebook), Google LLC (Google Analytics), and Microsoft Corp. (Microsoft Bing,), and many more (collectively, the "Third Parties")—to place and/or transmit tracking cookies on the Website. *Id*. ¶ 3.

The cookies Defendant wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite Defendant's express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors,

device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id*. ¶¶ 4, 30–35, 40.

In particular, after Plaintiffs clicked "Reject All Cookies," they browsed the Website in reliance on the promises and representations Defendant made in the cookie banner. *Id*. ¶¶ 98, 107. Despite Plaintiffs' clear declination of cookies, Defendant continued to permit the placement of cookies and the transmission of Plaintiffs' data to the Third Parties. *Id*. ¶¶ 99–100, 108–09. This allowed them to track and collect Plaintiffs' Private Communications and data as they browsed the Website. *Id*.; *see also id*. ¶¶ 46–87 (describing user data and communications transmitted by the third party cookies Defendant permitted to be placed when users browsed the Website).

### B. Defendant Intentionally Designed the Website and the Website's Cookie Banner.

Defendant voluntarily—i.e. intentionally—integrated third-party resources from the Third Parties into the Website's programming. *Id*. ¶ 26. Defendant knowingly chose to install or integrate the Website with resources from the Third Parties that, among other things, use cookies. *Id*. ¶ 33. Thus, when Plaintiffs and other Class members visited the Website, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to Defendant and the Third Parties. *Id*. Defendant intentionally incorporated into the Website the software code that caused placement of the cookies. *Id*. Defendant controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id*. During the time period in which Plaintiffs accessed the Website—which, again, Defendant developed, maintains, and controls—it permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id*.

The Website allows visitors to learn about Defendant's products and purchase merchandise. *Id*. ¶ 32. As users interact with the Website (e.g., by entering data into forms, clicking on links, and making selections), they send Private Communications to Defendant. *Id*. The third-party cookies stored on and/or loaded from users' devices are then transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect users' Private Communications. *Id*. ¶ 30. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶ 29.

**C. Defendant Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendant and the Third Parties Profited.**

Defendant uses and integrates the third-party resources on the Website pursuant to agreements between Defendant and the Third Parties. *Id.* ¶ 26. Defendant intentionally designed the Website with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Website, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id.* ¶ 31.

Third-party cookies have several purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and marketing campaign effectiveness); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id.* ¶ 33. Ultimately, third-party cookies boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id.*

**D. Plaintiff Blazina's Related Arbitration Proceedings.**

Plaintiff Blazina was unaware that, even after he "Reject[ed] All Cookies" on the Website, that Defendant caused third party cookies to be sent to his browsers, stored on his devices, and transmitted to the Third Parties along with his private user data until on or around April 17, 2024. *Id.* ¶ 15. On or about June 27, 2024, Plaintiff Blazina notified Defendant of the allegations contained in the Complaint and that he intended to pursue his claims on behalf of himself and those similarly situated. *Id.* ¶ 16. Because the Website's Terms of Use contain an arbitration agreement that purports to require all Website visitors to arbitrate their disputes with Defendant, on November 1, 2024, Plaintiff Blazina filed a demand for arbitration seeking a declaration that his claims were not subject to arbitration because he did not assent to the Terms of Use. *Id.* ¶¶ 17–18. On July 17, 2025, the arbitrator issued an order finding that "Claimant Blazina did not agree with Respondent's TOU and a contract was not formed. Therefore, the Arbitrator does not have jurisdiction to decide the Parties' "cookies" dispute under the arbitration clause in the TOU . . . ." *Id.* ¶ 20. The arbitration was then closed on August 29, 2025. *Id.* ¶ 21.

## III. ARGUMENT

### A. Plaintiffs Have Article III Standing for Their Claims.

#### 1. Plaintiffs allege that their information was collected.

Defendant first argues that Plaintiffs lack standing because they have not alleged that their communications were collected by the third Parties. Mot. at 4–5. This, however, misstates the pleadings. Plaintiffs clearly allege that they visited the Website (Compl. ¶¶ 94, 103), that they browsed the Website (¶¶ 94, 98, 100,, 103, 107, 109), that it transmitted an extensive array of information and Private Communications to the Third Parties (¶¶ 4, 30, 43–92), that this data is not anonymized (Compl. ¶¶ 29, 30, 43–44, 57, 60, 67, 69, 82, 85), and that Plaintiffs were unaware of Defendant's practices (Compl. ¶¶ 101, 110). That the Complaint explains how the Website operates as to all users (including Plaintiffs) does not detract from Plaintiffs' specific allegations, it adds to them.

Defendant cites to Judge Wise's decision *Kishnani v. Royal Caribbean Cruises Ltd*. to support its argument, but ignores that Judge Wise denied a challenge to standing in a case with allegations substantially similar to those in the Complaint here. *See Vishal Shah v. Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *8 (N.D. Cal. Feb. 6, 2026). There, Judge Wise reasoned that

> Defendant cites to a recent decision from this Court in *Kishnani v. Royal Caribbean Cruises Ltd.*, where the undersigned found plaintiff's bare allegations that defendant collected his "'data' and 'information'" insufficient to demonstrate injury-in-fact. No. 25-CV-01473-NW, 2025 U.S. Dist. LEXIS 120002, 2025 WL 1745726, at *2 (N.D. Cal. June 24, 2025) (internal citations and quotations omitted). Politico's attempts to liken this case to *Kishnani* are unavailing. Despite superficial similarities, this case is distinguishable because Shah has: (1) identified the specific personal information disclosed that implicates a protectable privacy interest and (2) alleged an invasion of a legally protected right.

*Id*. As the court explained, "Shah alleges that Politico collected his 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data.' Shah sets forth the specific cookies Politico used (furnished by Google and Adobe, among others) and the specific information each cookie collected." *Id.* at *8–9. So too here. The Complaint alleges that Defendant caused the collection of Plaintiffs' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data" and

sets forth the specific cookies used and what information was collected. Compl. ¶¶ 30, 46–87. Acccordingly, Plaintiffs have alleged their information was collected.

**2. Plaintiffs have a legally protectable interest.**

Invasions of privacy have long been recognized at common-law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing. *Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Plaintiffs allege that Defendant invaded their privacy—causing them a concrete injury—when Defendant intentionally permitted the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. Compl. ¶ 125; *see also id.* ¶¶ 3, 30–32, 125, 137, 153, 170, 178. This is a concrete injury sufficient to establish Plaintiffs' Article III standing. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (holding that Facebook's tracking and collection of personal information on an individual's likes, dislikes, interests, and habits, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives, conferred standing). Indeed, the Third Circuit has noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) (cited favorably by the Ninth Circuit in *In re Facebook Inc. Internet Tracking Litig.*). Here, where Defendant presented

Plaintiffs with a mere illusion of control over their information and then allowed the Third Parties to collect that information anyway, standing is manifest. Defendant's argument to the contrary ignores the well-pleaded allegations in the Complaint and demands specificity beyond what is necessary at the pleading stage.

Indeed, Defendant's own Privacy Policy outlines the data captured and transmitted by the cookies Defendant permitted the Third Parties to place on Plaintiffs' and Class members' browsers and devices. Compl. ¶ 34. These allegations are more than sufficient to allege standing. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) (finding sufficient specificity where Plaintiff alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted because "[t]his makes it unlikely that Plaintiffs are simply implicating record information."); *see id.* ("Moreover . . . Plaintiffs have alleged that the collection of information is not anonymized. At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

The cases Defendant cites in support of its argument that Plaintiffs' allegations are insufficiently detailed are off base or factually distinguishable. *See* Mot. at 5. Indeed, in *Pemberton v. Rest. Brands Int'l, Inc.*, which involves substantially similar allegations, Judge Scott Corley succinctly distinguished *Mikulsky v. Noom, Inc*. and *Khamooshi v. Politico*:

> [I]n *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023), the court dismissed the plaintiff's claims for lack of standing because she only alleged disclosure of "personal information" without specifying what that information included, so the court could not conclude she "ha[d] a protectable privacy interest in that information." *Id.* at 864–65. Similarly, in *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025), the court held the plaintiffs lacked standing because they only alleged collection of their IP addresses, in which they lacked a reasonable expectation of privacy. *Id.* at 1179. In contrast to both *Mikulsky* and *Khamooshi*, Plaintiff specifically alleges Defendants allowed "Third Parties to track and collect [his] Private Communications," including his browsing history, visit history, website

> interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data.

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964, at *11 (N.D. Cal. Nov. 24, 2025); *see also Shah*, 2026 U.S. Dist. LEXIS 25740, at *9 (agreeing with and quoting *Pemberton*). Likewise, Judge Pitts, again considering substantially similar allegations, concluded that *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025) is distinguishable in this context:

> Unlike the plaintiff in *Popa*, the kind of injury that Shah and Wiley allegedly suffered is similar to a harm recognized at common law—specifically, the harm made actionable by the common law public-disclosure-of-private-facts tort. That tort prohibits the "disclosure ... of a private fact ... which would be offensive and objectionable to the reasonable person, and ... which is not of legitimate public concern." *Taus v. Loftus*, 40 Cal. 4th 683, 717, 54 Cal. Rptr. 3d 775, 151 P.3d 1185 (2007) The Restatement (Second) of Torts (which *Popa* cited approvingly, see 153 F.4th at 791) explains that misrepresenting how private information will be used can constitute such an invasion of privacy, see Restatement (Second) of Torts, § 652D cmt. C, illus. 11. Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law.

*Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6–7 (N.D. Cal. Jan. 27, 2026). Indeed, challenges to standing in cases with allegations similar to this case are frequently rejected for the reasons described above. *See, generally*, *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *16–17 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer

standing."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) (same); *Shah*, 2026 U.S. Dist. LEXIS 15193, at *7 (because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III.").

**B. Rule 9(b) Applies Only to Plaintiffs' Fraud Claims.**

Plaintiffs' invasion of privacy, intrusion upon seclusion, and CIPA claims do not sound in fraud, so, as Judge Lin recently concluded in a similar setting, "those claims are not subject to Rule 9(b)." *Ortiz v. Deckers Outdoor Corp*., No. 25-cv-09631-RFL, 2026 U.S. Dist. LEXIS 100845, at *2–3 (N.D. Cal. May 6, 2026) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). In *Ortiz*, the court reasoned that, as here, "the non-fraud claims do not 'rely entirely' on those misrepresentations. 'Instead, the other claims focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them.'" *Id*. (quoting *Shah*, 2026 U.S. Dist. LEXIS 15193, 2026 WL 216334, at *8 n.3).

Even if this Court believes that these claims must meet Rule 9(b), they do so. Plaintiffs' allegations with respect to each of their causes of action satisfy Rule 9(b)'s heightened pleading requirements. As Judge Tigar held when evaluating materially identical allegations under 9(b)'s standard; "[t]he complaint states that the 'who' is [Defendant]; the 'what' are misrepresentations by [Defendant] through the popup banner offering users the option to ["decline all" cookies]; the 'when' is the . . . occasion[s] that [Plaintiff] visited [Defendant's] website . . .; the 'where' is on [Defendant's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Gabrielli v. Haleon*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *36 (N.D. Cal. August 29, 2025) (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now.").

"Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist.

LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022). Accordingly, Defendant's claim that Plaintiffs do not plead Defendant's knowledge with the requisite specificity has no basis in law. Plaintiffs allege that Defendant acted intentionally and with knowledge (Compl. ¶¶ 25–26, 33–35, 176), this is sufficient. And though Defendant argues that the complaint alleges only that Defendant "should have known" of the conduct alleged in the Complaint, the very allegation on which Defendant relies to make this claim alleges that Defendant had knowledge of the conduct. Mot. at 10 (citing Compl. ¶ 176 "known exclusively to, and actively concealed by Defendant . . . at the time they were made. Defendant *knew*, or should have known, how the Website functioned . . . and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics . . . or otherwise, and *knew*, or should have known, that the Website's programming allowed the third-party cookies to be placed . . . ." (emphasis added)).

Defendant points to Exhibit B to the Complaint in which the arbitrator in the Blazina arbitration references a single change made to the Website's cookie banner to argue that Plaintiff Alba's allegations lack the requisite specificity under Rule 9(b). To be clear, the Complaint contains two separate screenshots of the banner which Plaintiff Alba alleges he saw and the specific statement on which he relied. Compl. ¶¶ 1, 36, 96. And even if Plaintiff Alba had seen the changed banner, that banner is substantially similar in its representations as the one in the Complaint. *See* Def.'s Mot. to Compel. Arb., ECF No. 22, at 2. In any event, should the Court require greater specificity, such a deficiency could easily be fixed through amendment.

**C. Plaintiff Blazina's CIPA Claims are Timely.**

Defendant incorrectly assert that Plaintiffs claims are time barred. This argument is wrong for several reasons.

The statute of limitations is an affirmative defense. *See Lasko v. Caliber Home Loans*, No. 20-17181, 2022 U.S. App. LEXIS 6215, at *1 (9th Cir. Mar. 10, 2022). Plaintiffs are "not required to plead around anticipated affirmative defenses, including the statute of limitations." *Kohler v. Flava Enters*., No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). As such, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v.*

*Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Defendant's burden is high: "[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Id.*, But "[i]f, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *Id.* (internal citation omitted).

Here, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)). Plaintiff Blazina alleged that he does not know how the Website is programmed and that determining whether Defendant is placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. Compl. ¶ 111. Plaintiff Blazina did not become aware of the violation until April 17, 2024, when Plaintiff Blazina learned of Defendant's privacy violations from his counsel. Compl. ¶ 15. Thus, Plaintiff Blazina's claims were tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all).

Separately, fraudulent concealment tolls a plaintiff's claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1070 (C.D. Cal. March 12, 2021) (internal quotation marks and citation omitted). Plaintiff Blazina demonstrates these requirements: he alleges that Defendant affirmatively misrepresented to Website visitors that users can "Reject All Cookies." *See, e.g.,* Compl. ¶ 39 ("Defendant's representations, however, were false."). Because of Defendant's affirmative misrepresentations, and Plaintiff Blazina's lack of technical expertise, Plaintiff Blazina acted diligently in bringing this action after learning of Defendant's privacy violations on the Website. *Id*. Indeed, Plaintiff's invocation of the fraudulent concealment doctrine is

stronger than it was in *Doe v. Fullstory* because Plaintiffs have "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could truly "Reject All Cookes." *See Fullstory*, 712 F. Supp. 3d at 1256. As such, Defendant's fraudulent concealment tolled the statute of limitations for Plaintiff Blazina.

Next, Defendant incorrectly argues that Plaintiff Blazina was required to file his suit immediately following the closing of the Arbitration to avoid CIPA's one-year statute of limitations. Mot. at 14. Rather, the limitations period was equitably tolled during the pendency of the arbitration proceeding, Critically, Defendant simply ignores, that "the effect of equitable tolling is that the limitations period *stops running* during the tolling event, and *begins to run again* only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370–71 (2003) (emphasis added). Here, Plaintiff Blazina filed his arbitration with 167 days remaining on the statute of limitations for his CIPA claims. He filed this action 158 days after JAMS closed the arbitration on August 29, 2025. Thus, so long as the arbitration proceeding meets the three elements required for tolling, Plaintiff Blazina's CIPA claims are timely.

California law determines whether the limitations period for Plaintiff Blazina's CIPA claim was tolled. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (noting "we borrow our rules for equitable tolling of the period from the forum state, California" and that tolling rules are "liberally applied"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) (explaining "[w]here a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions," and thus "[t]he district court was required to consider and apply the California equitable tolling doctrine"). The doctrine is designed to preserve fairness and prevent "technical forfeitures" of a claim "when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). Tolling applies when three elements are met: (1) plaintiff provides timely notice of the claim to defendant; (2) the defendant suffers no prejudice from the delay; and (3) the plaintiff's conduct during the tolled period was reasonable and in good faith. *Id.* at 1033.

Equitable tolling is typically appropriate, where, as here, "an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald*, 194 P.3d at 1031. That encompasses circumstances "where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id.* at 1032. As relevant here, courts routinely hold that an arbitration proceeding tolls any relevant statute of limitations. *E.g., Fanucci v. Allstate Ins. Co*., 638 F. Supp. 2d 1125, 1137–38 (N.D. Cal. 2009) ("Even if completion of the arbitration were not deemed mandatory for purposes of automatic tolling under *McDonald*, the Court would still find tolling appropriate. . ."); *Harper v. Charter Communs., LLC*, No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747, at *15 (E.D. Cal. Feb. 12, 2021) (tolling statute of limitations period during pendency of an arbitration that addressed threshold issues); *see also In re Orchid Child Prods. LLC*, Nos. 2:20-bk-21080-RK, 2:21-ap-01212-RK, 2024 Bankr. LEXIS 962, at *9 (Bankr. C.D. Cal. Apr. 22, 2024) ("[E]quitable tolling may apply to arbitration proceedings" and collecting such cases). This is because "the filing of the first proceeding that gives rise to tolling" here, arbitration, "preserves the defendants' significant 'interest in being promptly appraised of the claims against them in order that they may gather and preserve evidence" while also "afford[ing] grievants the opportunity to pursue informal [out-of-court] remedies, a process we have repeatedly encouraged." *McDonald*, 194 P.3d at 1032.

**1. Plaintiff Blazina's arbitration provided timely notice of the claim.**

Defendant does not contend that it was not timely notified of Plaintiff Blazina's Claims. Nor could it. On June 27, 2024, he notified Defendant of the same claims alleged in the Complaint. Compl. ¶ 16. On November 1, 2024, he filed a demand for arbitration. *Id.* ¶ 18. As the California Supreme Court explained in *McDonald*, courts "should liberally apply tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute" because that is the primary purpose of such limitations periods. 194 P.3d at 1033.

**2. Defendant has not suffered prejudice and Plaintiff acted in good faith.**

"Under the second elements, courts' 'core focus' is whether application of equitable tolling would prevent the defendant from defending a claim on the merits." *Harper*, 2021 U.S. Dist. LEXIS 28747, at *14. As noted above, Plaintiff Blazina put Defendant on notice of the exact claims he now

pursues in this litigation, so nothing has prevented it from defending itself against the claim. *See id.* ("Harper's claims in his demand for arbitration were the same as his claims filed in court . . . Harper indicated his intention to pursue his claims on behalf of a class, the court does not 'see how tolling [the] statute of limitations would undermine the [defendant's] ability to defend[.]'"); *see also Greist v. Lendus, LLC*, No. 24-cv-02411-AMO, 2025 U.S. Dist. LEXIS 108374, at *22 (N.D. Cal. June 6, 2025) (defendant "has been aware of the scope and nature of these claims even prior to the initiation of the lawsuit").

Defendant claims that it was prejudiced by the arbitration. Mot. at 14. That Defendant is claiming prejudice from litigating in its preferred forum is laughable. It's also irrelevant. The question is whether Defendant's ability to defend itself from Plaintiff Blazina's CIPA claims was impaired. Defendant does not address this, however, because it has no good argument for prejudice. Instead, Defendant has chosen to focus on the arbitration, which successfully disposed of the threshold issue of whether Plaintiff Blazina's claims are subject to arbitration (they are not). *See* Compl. Ex. B.

In addressing whether Plaintiff's conduct during the tolled period was reasonable and in good faith, Defendant continues to focus on the arbitration. Defendant blatantly mischaracterizes the ruling in the arbitration by stating that the arbitrability issue was "never ruled on" because the arbitrator concluded he did not have jurisdiction. Mot. at 15. This is simply untrue, as evidenced by the ruling attached to the Complaint. Compl. Ex. B ¶ 16 ("The Arbitrator concludes that by their conduct and their oral and written representations to the Arbitrator, the Parties have agreed that the Arbitrator should determine the arbitrability issue set forth in the Demand."); ¶ 24 ("Accordingly, the Arbitrator finds that Claimant Blazina did not agree with Respondent's TOU and a contract was not formed. Therefore, the Arbitrator does not have jurisdiction to decide the Parties' "cookies" dispute under the arbitration clause in the TOU as a result of Blazina's 2023 visits to Website."). Again, Plaintiff litigated the arbitrability issue in *Defendant's preferred forum* (and won). Defendant casts this as unfair (they chose to have an arbitration provision), improper (the arbitrator found that the parties agreed to arbitrate arbitrability), and insensible (Plaintiff resolved a threshold issue in eight months with one round of briefing rather than navigate years of motion practice, stays, and appeals litigating the issue in Court). Indeed, Plaintiff's conduct saved the parties time and resources, which is hardly a

reason to deny equitable tolling.

**3. The time between the end of the arbitration and the filing of this suit has no bearing on the timeliness question.**

Defendant's argument that Plaintiff Blazina's claims are not timely focuses almost exclusively on whether the delay between the end of the arbitration and the filing of this suit was reasonable. But, because the "limitations period stop[ped] running during" the arbitration, *Lantzy*, 31 Cal. 4th at 370, plaintiff still had time to file suit before the limitations period would run—with no further tolling required. Since he brought his claim within the properly calculated limitations period, it does not matter whether the "delay" between the first action and the second was "reasonable" any more than the question of why any plaintiff might wait until only two months before the expiration of a statute of limitations to file suit. The question of reasonableness applies only to a time period where the statute of limitations is being tolled, i.e., when it is not running, not to a period when it is running. Pursuing the arbitration was reasonable. Accordingly, Plaintiff Blazina's CIPA claims are timely.

**D. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion.**

Claims for common law invasion of privacy and intrusion upon seclusion require: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, which is (2) "highly offensive." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009). The conduct alleged here is textbook invasion of privacy: Defendant promised Plaintiffs that they could "Reject All Cookies" but then immediately caused cookies to be placed on their devices and browsers that enabled third-parties to collect broad swaths of data that users like Plaintiffs asked to keep private. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

**1. Plaintiffs had a reasonable expectation of privacy given Defendant's representation that they could "Reject All Cookies" and Defendant's violation of Plaintiffs' Privacy was highly offensive.**

Plaintiffs had a reasonable expectation of privacy in their Private Communications on the Website because Defendant *promised* them that their browsing activity and Private Communications would remain private if they elected to "Reject All Cookies." *In re Facebook Internet Tracking Litig.*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy can arise if users decline consent to tracking, if a defendant makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (plaintiffs "plausibly alleged a reasonable expectation of privacy because Google allegedly collected potentially sensitive data while users might not expect that Google was tracking them").

Defendant does not appear to contest that Plaintiffs had a reasonable expectation of privacy. This is not surprising. Defendant explicitly promised privacy to Plaintiffs, which is sufficient to create a reasonable expectation of privacy. Compl. ¶ 36; *see Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *15 (holding that a defendant affirmatively stating that it would not collect data created a reasonable expectation of privacy); *Shah*, 2026 U.S. Dist. LEXIS 15193, at *14 (same).

Likewise, Plaintiffs have shown that Defendant's intrusion was highly offensive. "Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted); *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (Cal. 1994) ("in determining the '"offensiveness'" of an invasion of a privacy interest, common law courts consider, among other things: 'the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'" (citing *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1483–84, 232 Cal. Rptr. 668, 678 (1986)).

Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be

resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994). Indeed, several courts in this district have considered allegations substantially similar to Plaintiffs' and concluded either that the matter is not appropriate for resolution at the pleadings, or that plaintiffs have pleaded a highly offensive invasion of privacy. *See Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *12 (same); *Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with *Motorola*); *Shah*, 2026 U.S. Dist. LEXIS 15193, at *16 (holding that plaintiffs pleaded a highly offensive privacy invasion where they "allege that a broader set of data was collected and disseminated, including 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data'"); *D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257, at *10 (N.D. Cal. Feb. 17, 2026) ("Given that plaintiffs have alleged an intrusion undertaken through deceptive conduct, plaintiffs have pleaded facts sufficient to preclude the Court from concluding, as a matter of law, that Smith & Wesson's invasion was not 'highly offensive.'").

Here, Plaintiffs have alleged an invasion of privacy that, considering the context of the intrusion—a false promise of privacy—is highly offensive. Defendant claims that the false representation in its cookie banner should not act as a "plus factor" in this analysis. Mot. at 14. But that is contrary to binding precedent. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted); *see also Hill*, 7 Cal. 4th at 26. The jury is entitled to consider all the circumstances around Defendant's conduct, including the fact that it lied about not tracking visitors, to determine whether its invasion of privacy was highly offensive.

#### 2. Plaintiffs adequately plead that their information was wrongfully collected and that Defendants' conduct was not mere error.

As discussed in Section A, *supra*, Plaintiffs have adequately pleaded that their information was wrongfully collected as a result of Defendant's unlawful conduct. Defendant's argument to the

contrary relies on outright ignoring the well-pleaded allegations of the complaint.

Likewise, Defendant's claim that Plaintiffs rely on an alleged error misstates the pleadings. Despite Defendant's repeated characterizations, Plaintiffs do not allege that Defendant's conduct was mere error. Instead, Plaintiffs allege that Defendant's promises in the popup banner were false and that Defendant, intentionally caused cookies to be stored on Plaintiff's and Class members' browsers and devices, which enabled the Third Parties and Defendant to track and collect Plaintiffs' and Class members' private communications. Compl. ¶¶ 38–39, 138, 176. In essence, Defendant's argument is an impermissible request for the Court to draw an inference in Defendant's favor, notwithstanding Plaintiffs' allegations to the contrary. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (This Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"); *Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *25 (rejecting substantially similar argument as "an inherently factual contention that cannot properly be resolved on a motion to dismiss" (quotation marks and citation omitted)). At best, what Defendant argues is an affirmative defense. But Defendant points to no undisputed facts that could establish such a defense, making its argument improper for a motion to dismiss. *See, e.g., Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) (an affirmative defense cannot be raised in a motion to dismiss when based on disputed facts).

### E. Plaintiffs Have Adequately Pleaded CIPA Claims.

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented to installation and use of "pen registers" and "trap and trace devices." Each of Defendant's challenges to these claims are meritless.

**1. Plaintiffs properly allege a violation of CIPA Section 631(a).**

Plaintiffs allege that Defendant violated CIPA by aiding and abetting the Third Parties in violating Section 631(a), which prohibits, in relevant part, "any person . . . who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," as well as "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any [such] information." Cal. Pen. Code § 631(a). This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

Here, Plaintiffs have alleged that Defendant integrated the Website with Third Party code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." Compl. ¶ 45. The Complaint includes extensive allegations describing how the Third Parties' cookies transmit communications, including from Plaintiffs. *See, e.g., id.* ¶¶ 31, 41, 46–87. Specifically, Plaintiffs allege that "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 32. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 41, 49. As depicted, "despite the user's rejection of all cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like www.facebook.com, www.google.com, www.bing.com, and others. As further shown in the right-hand column of the

screenshots, the user's browser sent cookies along with those HTTP requests to the third parties." *Id.* ¶¶ 42.

In arguing for dismissal, Defendant relies on *Smith v. Yeti Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. Oct. 21, 2024) to support its interpretation of CIPA's intent requirement. First, *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. *Id.* at 938. The Court concluded that the plaintiff failed to allege that the defendant was "acting with the third party in order to have the third party perform acts that violate the statute." *Id.* at 942. In other words, the Court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Defendant integrated into its Website the Third Parties' software that placed and transmitted cookies in order to obtain user data for advertising and analytics functions. Compl. ¶¶ 33–35. Defendant did not disable this software or prevent the Third Parties from obtaining user data even after it solicited and obtained users' rejections of "All Cookies." *Id.* ¶¶ 1–3. Defendant cannot claim that it did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since it installed the Third Party code on its Website to do exactly that.

Second, Defendant's characterization of the holding in *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The Defendant in *Yeti*, like Defendant does here, argued that "Plaintiff must allege that Defendant acted with "'specific intent to commit the unlawful acts'" *Yeti,* 754 F. Supp. 3d at 942 . But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court drew a line down the middle, acknowledging that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting . . . [but] other language in [CIPA's] fourth clause does require some level of knowledge and intent." *Id.* (emphasis added). Here, Plaintiffs allege more than "some" level of knowledge; they pled that "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance

metrics by means of its accounts with the Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users'—including Plaintiff's — browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to "Reject All Cookies", which Defendant promised its users they could do." Compl. ¶ 176. Further, Plaintiffs allege it was "Defendant's deliberate and purposeful scheme that facilitated the interceptions." Compl. ¶ 150. And Plaintiff allege that Defendant enabled the third parties to track and collect Plaintiffs' private communications even after clicking "Reject All Cookies." Compl. ¶ 38–39. Plaintiffs have thus sufficiently pled Defendant's requisite intent under either standard.

Defendant's other arguments, that their conduct was a "good faith" mistake and that Plaintiffs have not pleaded the requisite intent of the third parties lack merit. First, Plaintiffs have addressed Defendant's "good faith mistake"/mere error argument in Section A(2), *supra*. In short, Defendant asks this Court to draw an inference in Defendant's favor which is completely divorced from the pleadings. The Court should decline to do so. Second, Defendant's argument that the Complaint fails to allege the requisite Third Party intent is wrong. The Complaint adequately pleads the Third Parties' intent to place the cookies, as described above, and there is no separate requirement of specific intent to do so unlawfully. Furthermore, one of the cases on which it relies, *Wilson v. Google*, No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025), rejected the defendant's intent arguments and denied the motion to dismiss. The other case it cites, *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953, at *7–8 (C.D. Cal. Aug. 22, 2024), does not control the outcome here. It failed to address the "intent" precedent described above and is inapposite because the Complaint here alleges that Plaintiffs communicated their lack of consent to use Third Party cookies, which those Third Parties presumably were aware of or willfully ignored, thus establishing their intent.

**2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information

transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code Defendant installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Website.

Courts in this District have repeatedly rejected Defendant's argument that internet technologies are not pen registers as contrary to the statute's plain language. *See, e.g., Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" as alleged here. *Greenley*, 684 F. Supp. 3d at 1050. Indeed, arguments to the contrary have "been considered and rejected multiple times." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *32; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 ("Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees."); *D'Antonio*, 2026 U.S. Dist. LEXIS 32257, at *13 ("Smith & Wesson first argues that California's pen register law applies to telephones and not to cookies that collect a web user's IP address. The text of the statute, however, contains no such limitation.").

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the third party cookies and the corresponding software code installed by Defendant on the Websites are each a

"device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with Compl. ¶ 166 (explaining how "cookies and the corresponding software code"—which are pen registers—were placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information). Thus, Defendant's argument that cookies and corresponding software are not pen registers fails.

Defendant also argues that because Plaintiffs allege that certain third party cookies also tracked contents of communications, they cannot also plead that the third party cookies operated as pen registers under § 638.50(b). *See* Mot. at 16. Not so. Again, this argument has been considered and rejected. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025).

Moreover, a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." And this is precisely what Plaintiffs have alleged. *See* Compl. ¶ 165, 168. Nothing that Defendant cites states that simply because a device can function both as a wiretap (a device that intercepts communications) and a pen register (a device that captures address and user-agent information but not communications) that the device is not a pen register. Indeed, it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to do both. Plaintiffs allege that the Third Parties' cookies and the corresponding software code Defendant installed on its Website are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs. Compl. ¶ 167–68. Moreover, the Complaint alleges that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which collected different data sets. *See, e.g.*, Compl. ¶¶ 46–87 (identifying and describing a variety of cookies, including ones that transmits a user's IP address and unique user identifiers).

Finally, Plaintiffs adequately plead that Defendant caused the collection of information that could fall under the pen register statute. They allege that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information. *See e.g.*, Compl. ¶¶ 57, 59, 63, 75–77, 8656 (describing cookies that transmits a user's IP address and user-agent information). Thus,

as alleged, some cookies transmit contents of communications while others transmit user information and IP addresses (i.e. not contents). This is sufficient. And Defendant's contrary argument ignores the pleadings.

**F. Plaintiffs' Have Adequately Pleaded Damages with Respect to Their Fraud Claims.**

Defendant's argument that Plaintiffs have failed to identify any loss of money, property, or value is misguided and ignores their allegations of an invasion of protected interests, misappropriation of their information, and that their information has value. *See*, *e.g.*, Compl. ¶¶ 88–93, 176. Invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit. *TransUnion*, 594 U.S. at 425. And Plaintiffs "have a stake in the value of their misappropriated data." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (summarizing viable damages model based on "[u]ser's willingness to pay to prevent data collection").

**G. Plaintiffs' Unjust Enrichment Claim is Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendant benefited from using their Private Communications. Compl. ¶¶ 31–3588–93, 189 (describing ways in which Defendant benefited from the use of cookies); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust

enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

Defendant argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), forecloses Plaintiffs' claims because they "have not pled that they lack an adequate remedy at law, and, like in *Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024), seek damages for alleged injuries they already suffered." Mot. at 21. But there are no adequate remedies at law for all the relief Plaintiffs request, such as injunctive relief to prevent further harm to Plaintiffs and the public (Prayer for Relief), and punitive damages (Compl. ¶¶ 131, 141, 184, Prayer for Relief). "Here, at the pleading stage, the Plaintiff can plead conflicting theories in the alternative under Fed. R. Civ. P. 8(a)(3)." *Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023); *see also Katz-Lacabe*, 668 F. Supp. 3d at 949 (collecting cases applying *Sonner*). *Sonner*, accordingly, does not preclude Plaintiffs' equitable claims.

### H. Plaintiffs Request Leave to Amend If Necessary.

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss must be denied.

Dated: May 29, 2026

**GUTRIDE SAFIER LLP**

/s/ Patrick J. Branson
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*