**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY ALBA AND ROBERT BLAZINA JR., as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 5:26-CV-01069-BLF

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRAION AND STAY CASE**

Hon. Beth Labson Freeman

Hearing Date: August 13, 2026
Hearing Time: 9:00 a.m.
Hearing Location: San Jose, Crtrm 1, 5th Fl.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL STANDARD ..... 2

IV. ARGUMENT ..... 2

A. California Law Applies. ..... 2

B. Plaintiff Alleges That the TOU Were Unenforceable Browsewrap. ..... 3

C. Defendant Does Not Establish that Plaintiff Alba Interacted with the TOU Banner in 2025. ..... 4

D. The TOU Banner Does Not Provide Sufficient Notice of the Terms of Use. ..... 5

V. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Cases**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 3, 6

*Chabolla v. Classpass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ........ 2, 6, 7, 8

*Echeverria-Corzan v. Michaels Stores, Inc.*,
No. 4:25-cv-05839 YGR, 2026 U.S. Dist. LEXIS 49621 (N.D. Cal. Feb. 6, 2026) ........ 5

*Ellis v. Wallet Buddha LLC*,
No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800 (C.D. Cal. Dec. 29, 2025) ........ 5

*First Options of Chic., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 2

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ........ 2, 4

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ........ 2

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) ........ 3

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 3, 4, 6

*Norcia v. Samsung Telecomms. Am., LLC*,
No. 14-cv00582-JD, 2014 U.S. Dist. LEXIS 131893 (N.D. Cal. Sept. 18, 2014),
*aff'd*, 845 F.3d 1279 (9th Cir. 2017) ........ 2

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 3

*Sanford v. MemberWorks, Inc.*,
483 F.3d 956 (9th Cir. 2007) ........ 5

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ........ 3, 4

*Sifuentes v. Dropbox, Inc.*,
No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) ........ 2

*Taylor v. Uber Techs. Inc.*,
No. 24-cv-02164-AGT, 2025 U.S. Dist. LEXIS 98178 (N.D. Cal. May 22, 2025) ........ 5

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) ........ 3

**Other Authorities**

*Edwards, Jeffrey*; GDPR Cookie Compliance 101: How to Manage EU Users' Consent, CHEQ (Jan. 18, 2023) https://cheq.ai/blog/gdpr-cookie-compliance101/ (last visited Feb. 20, 2026)........................................ 4

## I. INTRODUCTION

Plaintiff Larry Alba ("Plaintiff") alleges that Harbor Freight Tools USA, Inc. ("Defendant") enabled third parties to intercept and collect swaths of class members' data against their express instructions and contrary to Defendant's express promise not to do so. Defendant now seeks to compel Plaintiff to arbitrate his claims on an individual basis—without any evidence that Plaintiff actually agreed to do so. Defendant's motion is factually and legally deficient. It should be denied.

In the Complaint, Plaintiff includes a screenshot of the pop-up cookie consent banner that he saw when he visited Defendant's website. ECF No. 1 ("Compl.") ¶ 1. The cookie consent banner does not mention Defendant's Terms of Use ("TOU") or include any statement that Plaintiff would be bound by any arbitraiton terms by choosing to reject non-essential cookies and browsing the website. As Defendant knows from its arbitration with Plaintiff Blazina, this is insuffcent to form a contract to arbitratate. Compl. ¶ 20. Disregarding this history and Plaintiff Alba's allegations, Defendant speculates that, during visits after October 2024, Plaintiff may have seen a different version of the cookie banner that included—in small, inconspicuous font—a hyperlink to the TOU (the "TOU Banner") and that Plaintiff may have clicked "Reject All Cookies" on that later banner—purportedly manifesting assent to the TOU. These facts, of course, are nowhere in the Complaint and are unsupported by the flimsy evidence submitted in support of Defendant's motion. Defendant bears the burden to to prove formation of an agreemment to arbitraiton. It fails to do so.

Finally, even if Defendant could show that the TOU Banner appeared during one of Plaintiff's visits to the website (although websites typically do not display cookie banners to users who have previsouly set their cookie preferences) Defendant's motion still fails to establish that Plaintiff agreed to the TOU.

For these reasons, the Court should deny Defendant's motion in its entiretey.

## II. FACTUAL BACKGROUND

Plaintiff alleges that when consumers visited Defendant's website (www.harborfrieght.com, the "Website"), Defendant displayed to them the following popup cookie banner:



Compl. ¶ 1. The banner presented consumers with a choice to click two large buttons, "Reject All Cookies" and "Accept All Cookies" or a smaller "Cookie Settings" button. *Id*. Next to the buttons, in small text, the banner stated "This website uses cookies to enhance user experience and to analyze performance and traffic on our website. We also share information about your use of our site with our social media, advertising and analytics partners. Selecting "Reject All Cookies" would only permit cookies during your visit necessary for the functioning of the website." *Id*. This version of the cookie banner, the one Plaintiff alleges he saw, does not mention Defendant's TOU at all.

Plaintiff viewed Defendant's representations on the cookie banner. *Id*. ¶ 96. Consistent with his typical practice, Plaintiff clicked "Reject All Cookies," which caused the cookie banner to disappear, allowing Plaintiff to browse the Website. *Id*. ¶ 97.

## III. LEGAL STANDARD

"The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitration by a preponderance of evidence." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). "[T]he party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences." *Sifuentes v. Dropbox, Inc*., No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273, at *7 (N.D. Cal. June 29, 2022). "In making this threshold inquiry, there is no thumb on the scale in favor of finding an arbitration agreement to exist." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv00582-JD, 2014 U.S. Dist. LEXIS 131893, at *10 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) ("If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

## IV. ARGUMENT

### A. California Law Applies.

In determining whether a valid arbitration agreement exists, the Court must apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, because Plaintiff is a California citizen who visited Defendant's Website while in California, California law governs the question of whether Plaintiff agreed to the TOU. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (applying California law, while noting

that "no differences exist in the law of the different states as to internet contract formation"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 n.4 (2021) (applying California law to question of contract formation despite choice-of-law provision in the terms at issue).

**B. The TOU Prior to November 2024 Were Unenforceable Browsewrap.**

Under California law, "[a]n offeree, regardless of apparent manifestation of her consent, is not bound by inconspicuous contractual provisions of which she was unaware, contained in a document whose contractual nature is not obvious." *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 862 (2016) (internal quotation marks omitted). Website terms, such as the TOU, will be enforced against a consumer only if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023) ("[T]here must be actual or constructive notice of the agreement and the parties must manifest mutual assent.").

There are a variety of ways in which websites purport to impose terms on website users. On one end of the analytical spectrum are "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use;" and on the other end of the spectrum are "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014); *see also Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1085 (2024) (describing the same analytical framework). Courts do not enforce browsewrap terms but generally find clickwrap agreements to be enforceable. *See Berman*, 30 F.4th at 856, 868; *Weeks*, 100 Cal. App. 5th at 1085 (explaining "[c]lickwrap agreements have been held to manifest assent, even on consumers who did not read them," but "browsewrap does not require the user to take any unambiguous action to agree to the terms of use," so courts generally find "browsewrap agreements to be unenforceable"). Between these two extremes are hybrid cases (sometimes called "sign-in wrap") where a website purports to notify a user that taking some action, such as clicking a button, constitutes acceptance of certain linked terms. These

purported notices "do not require the consumer to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an 'I agree' button . . . . Thus, it is not apparent that the consumer is aware that they are agreeing to contractual terms simply clicking some other button." *Sellers*, 73 Cal. App. 5th at 471; *see also Godun*, 135 F.4th at 708–10 (applying the "inquiry-notice 'sign-in wrap' analytical framework").

In the Complaint, Plaintiff includes a screenshot of the cookie consent banner window that Plaintiff saw when he visited the Website. Compl. ¶ 36. This banner makes no mention of the TOU and includes no statement indicating that Plaintiff would be bound by any arbitration terms by choosing to "Reject All Cookies." Plaintiff's only conduct was visiting the Website, expressly rejecting "All Cookies," and browsing the Website. *Id.* ¶¶ 94–100. Based on these allegations and controlling Ninth Circuit authority, Plaintiff did not agree to Defendant's TOU. *See Nguyen*, 763 F.3d at 1178–79 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more— is insufficient to give rise to constructive notice.").

### C. Defendant Does Not Establish that Plaintiff Alba Interacted with the TOU Banner in 2025.

Defendant speculates that, if Plaintiff visited the Website after October 2024, he would have been presented with the TOU Banner shown in Defendant's motion. But websites typically do not display cookie banners to users who have previously set their cookie preferences. *See, e.g., Edwards, Jeffrey*; GDPR Cookie Compliance 101: How to Manage EU Users' Consent, CHEQ (Jan. 18, 2023) ("A user's decision to opt-out must be duly-recorded and enforced, and an opt-in may not be repeatedly solicited. Site owners may not resubmit a consent banner to users who denied it at each new access to the website."), https://cheq.ai/blog/gdpr-cookie-compliance101/ (last visited Feb. 20, 2026). Defendant's only evidentiary support to the contrary is a single line in the self-serving, conclusory Declaration of Michael Hall, which baldly states that a user who visited before October 31, 2024, and subsequently visited after, would have seen the TOU Banner. Mot. at 2 (citing Hall Decl. ¶ 12). This conclusory statement—which has not been subject to cross examination or indeed any inquiry at all—

completely lacks detail or support. Indeed, it is impossible to know from the statement whether Mr. Hall is speculating, has personal knowledge regarding the change in the banner, or whether, assuming Defendant intended for the updated banner to reappear for prior users, it did so. Indeed, nowhere in the Complaint does Plaintiff Alba allege that he saw the TOU banner. Defendant insists that this Court should infer that he did. But this is an inference to which it is not entitled. *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007) (on a motion to compel arbitration the court must "give to the opposing party the benefit of all reasonable doubts and inferences"). Thus, the Hall Declartion is not sufficient evidence that Plaintiff saw, much less interacted with, the TOU banner. In failing to adduce any actual evidence that Plaintiff saw the TOU banner, Defendant all but admits it does not exist. *Compare Taylor v. Uber Techs. Inc.*, No. 24-cv-02164-AGT, 2025 U.S. Dist. LEXIS 98178, at *3 (N.D. Cal. May 22, 2025) ("Uber automatically records when any Driver App user clicks "Yes, I agree" twice below the listed agreements. Uber logs the date and time when the second click happens, plus the user's Driver ID").

In sum, Defendant simply piles speculation on top of speculation; it does not present actual evidence of an agreement by Plaintiff to arbitrate his claims. Defendant has not come close to carrying its burden of proof that such an agreement was formed. *See Ellis v. Wallet Buddha LLC*, No. 25-cv-1533-MWF, 2025 U.S. Dist. LEXIS 266800, at *12 (C.D. Cal. Dec. 29, 2025) (defendant failed to present competent evidence that an arbitration agreement was ever formed); *Echeverria-Corzan v. Michaels Stores, Inc.*, No. 4:25-cv-05839 YGR, 2026 U.S. Dist. LEXIS 49621, at *10 (N.D. Cal. Feb. 6, 2026) (finding "defendant has not met its burden to show there is no dispute regarding [plaintiff's] assent to an arbitration agreement," where there was no specific evidence, aside from a conclusory statement in a declaration, that the plaintiff had signed up for a rewards account). Accordingly, Defendant's motion must be denied.

**D. The TOU Banner Does Not Provide Sufficient Notice of the Terms of Use.**

Assuming, *arguendo*, that Plaintiff Alba did view the TOU banner and click "Reject All Cookies," Defendant still has not established that Plaintiff agreed to the TOU. As the Ninth Circuit has explained: "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in

fine print. While terms may be disclosed through hyperlinks, the presence of a hyperlink must be readily apparent . . .” *Chabolla*, 129 F.4th at 1156 (internal quotation marks and citations omitted); *see also Berman*, 30 F.4th at 857 (emphasizing “the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers”) (quoting *Nguyen*, 763 F.3d at 1179). “To be conspicuous, the notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.” *Chabolla*, 129 F.4th at 1155 (cleaned up). “The context of the transaction, as well as the traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design, inform whether a website provides reasonably conspicuous notice of the terms of an agreement. *Id.* (cleaned up).

In *Chabolla*, the Ninth Circuit analyzed whether a defendant’s purported sign-in-wrap agreement gave a consumer reasonable notice where a blue hyperlink to the terms of use appeared on three separate screens that appeared while the consumer was signing up for a membership. *See Chabolla*, 129 F.4th at 1152–53. In the first screen, the user was presented with two prominent options: (1) to enter an email address and click the large “Continue” button or (2) to click the large “Sign up with Facebook” button. *Id.* “Below that, in the smallest font on the page, read ‘By clicking “Sign up with Facebook” or “Continue,” I agree to the Terms of Use and Privacy Policy.’ The words ‘Terms of Use’ and ‘Privacy Policy’ were in blue, while the rest of the text was in gray.” *Id*. The link to the Terms of Use appeared in two subsequent screens as well. *Id.*

Despite a hyperlink to the terms appearing three times near where a user would input information or click buttons to sign up for the defendant’s services, the Ninth Circuit held that the defendant failed to provide conspicuous, unambiguous notice that taking a specific action would constitute assent to the terms at issue. *Id*. at 1157 (concluding that the hyperlink to the Terms of Use on the first screen was “‘deemphasized by the overall design of the webpage’ and not ‘prominently displayed’”), 1158–59 (concluding the second and third screens were ambiguous as to whether clicking a button constituted assent to the linked terms). Here, Defendant’s TOU hyperlink is much less apparent to a reasonable user than the one found insufficient in *Chabolla*.

First, the context of the transaction (merely declining cookies while browsing a website) weighs against a finding that Plaintiff was adequately notified that rejecting cookies purportedly bound

him to the TOU. In *Chabolla*, the Ninth Circuit noted that users engaged in limited or one-off interactions, without the expectation of continued relationship, are unlikely to be on the lookout for fine print. *Id.* at 1155. Defendant argues Plaintiff was in a continuing relationship with Defendant because Plaintiff visited the Website more than once. Mot. at 7. This absurdly misconstrues both the Ninth Circuit's analysis and Plaintiff's interaction with the Website. In discussing a "continuing relationship," in *Chabolla*, the Ninth Circuit focused on instances such as a user downloading a mobile game with available in-app purchases or a user making an online account with a full registration process (indeed, signing up with an email was insufficient in *Chabolla*). *See Chabolla*, 129 F.4th at 1155–56 (finding "the 'context of the transaction' at issue here neither weighs in favor of nor against the notice requirement" where the user was signing up for a ClassPass membership but where ClassPass advised the user there were "no commitments" and the user could "cancel anytime"). Here, by contrast, Plaintiff did not download Defendant's app, create an account, or even make a purchase on the Website. Indeed, Plaintiff visiting the Website a handful of times simply to view products would not suggest that Defendant's extensive TOU applied any more than visiting a physical hardware store would suggest to a consumer that, by entering the store, they have agreed to a lengthy adhesion contract.

Second, the cookie banner here (like Screen 1 in *Chabolla*) also presents the user a choice of large buttons to click, and which are designed to be clicked without needing to read the *entire paragraph of fine print* that is separated from and to the left of the buttons, with the critical textual notice (that clicking a button purportedly binds the Website visitor to the TOU) buried *at the end* of the paragraph, well below the large buttons, and so small as to be barely legible. *Cf. Chabolla*, 129 F.4th at 1157 (finding that the notice "seems to fade into the irrelevancy of other aspects of the page"). Moreover, the hyperlink to the TOU in Defendant's updated cookie banner is the same color and font as the hyperlink to the Privacy Policy and the two hyperlinks are so closely mashed together that reasonable consumers cannot discern that there is a *separate* link for the TOU. Most importantly, the purpose of the banner is for users to select their cookie preferences, meaning that users' attention is drawn to the much larger buttons to accept or reject cookies, rather than the small, inconspicuous text that includes the TOU hyperlink. In sum, the textual notice and hyperlink presented by Defendant here

are certainly not designed to be prominent and conspicuous under the standards applied in *Chabolla*. And users who had previously interacted with the cookie banner depicted in the Complaint (and many similar cookie banners across the internet) would likely not notice the inconspicuous change in the banner language and would simply click their preference and move on. If the stand-alone notice and hyperlink in *Chabolla* were not sufficiently conspicuous to someone *signing up for a membership*, then certainly the textual notice and hyperlink here, which were made less noticeable by their small size and their conjunction with other text and another link, were not sufficiently conspicuous to users who clicked "Reject All Cookies" (as they had previously on both the Website and other websites) to dismiss the pop-up banner.

Defendant's attempt to bind Website users to the TOU in this way—when they simply sought to browse the Website without having their information shared—is deficient and should not be endorsed.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration of Plaintiff Alba's claims must be denied.

Dated: May 29, 2026

**GUTRIDE SAFIER LLP**

/s/ Patrick J. Branson
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*