ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFF DEGROOT (admitted *pro hac vice*)
jeff.degroot@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendant
HARBOR FREIGHT TOOLS USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY ALBA and ROBERT BLAZINA JR., individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 5:26-CV-01069-BLF

**REPLY IN SUPPORT OF DEFENDANT HARBOR FREIGHT'S MOTION TO COMPEL ARBITRATION AND STAY CASE PENDING ARBITRATION**

Date: August 13, 2026
Time: 9:00 a.m.
Judge: Hon. Beth Labson Freeman
Courtroom: Courtroom 1
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113

Complaint Filed: February 3, 2026

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1
II. ARGUMENT ............................................................................................................2
A. The Cookie Banner Provided Reasonably Conspicuous Notice of the Terms. .......2
1. ClassPass is Inapposite. ...................................................................4
2. The Context of Alba's Website Visits Supports Reasonably Conspicuous Notice. ...........................................................................................6
B. The Unrebutted Evidence Confirms Alba's Agreement to Arbitrate. .....................6
C. Alba Concedes Numerous Arguments. ...........................................................9
III. CONCLUSION ........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................10

*Chabolla v. ClassPass*,
129 F.4th 1147 (9th Cir. 2025) ....................4, 5

*Cooper v. Adobe Sys. Inc.*,
2019 WL 5102609 (N.D. Cal. Oct. 11, 2019)....................9

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ....................4

*Hartranft v. Encore Capital Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021)....................9

*Hueston v. Westlake Portfolio Mgmt., LLC*,
2024 WL 4472247 (C.D. Cal. June 27, 2024) ....................10

*Kakalia v. BMO Bank N.A.*,
2026 WL 1004952 (C.D. Cal. Mar. 17, 2026)....................7

*L.B. v. LinkedIn*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)....................5, 6

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025)....................2

*Norcia v. Samsung Telecoms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ....................7

*Penning v. NVIDIA Corp.*,
2026 WL 1433313 (N.D. Cal. May 21, 2026) .................... *passim*

*Perez v. Kohl's Inc.*,
2024 WL 5701892 (C.D. Cal. Feb. 26, 2024)....................10

*Porter v. McGrath*,
2006 WL 734944 (E.D. Cal. Mar. 23, 2006) ....................7

*Shulak v. Guaranteed Rate, Inc.*,
2024 WL 4404958 (C.D. Cal. Apr. 10, 2024) ....................9

*In re Stubhub Refund Litig.*,
2023 WL 5092759 (9th Cir. Aug. 9, 2023)....................2

**Other Authorities**

Jeffrey Edwards, GDPR Cookie Compliance 101: How to Manage EU Users' Consent, CHEQ (Jan. 18, 2023), https://cheq.ai/blog/gdpr-cookie-compliance-101........8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Alba ("Alba") must arbitrate his claims. By his own admission, Alba visited www.harborfreight.com (the "Website"), interacted with the cookie banner after October 31, 2024 (the "Cookie Banner"), and continued to browse the Website, accepting Harbor Freight's Tools USA Inc.'s ("Harbor Freight") Terms, including the arbitration provision. The Cookie Banner was conspicuous, contained a bright red hyperlink to the Terms, and advised that clicking "Reject All Cookies" or continuing to browse the Website constituted agreement to the Terms. In doing so, Alba was on actual notice of the Terms and unequivocally manifested his agreement to arbitrate his disputes with Harbor Freight.

This is not a close call: Magistrate Judge Van Keulen, in *Penning v. NVIDIA Corporation*—an identical "reject all cookies" case brought by Alba's counsel—just rejected the same arguments Alba makes here. *See Penning v. NVIDIA Corp.*, 2026 WL 1433313 (N.D. Cal. May 21, 2026). Like Alba, the plaintiff in *NVIDIA* failed to provide any actual evidence, resorting only to conjecture and unsupported arguments that could not overcome a valid agreement to arbitrate.

Nothing in Alba's Opposition alters the above analysis. Harbor Freight supported its Motion with unrebutted evidence—including the sworn declaration of Michael Hall (the "Hall Declaration")—establishing that the Website's Cookie Banner was in place with a conspicuous link to the Terms since October 31, 2024, and that any visitor who returned to the Website after that date encountered it, regardless of prior interactions. Alba submitted no evidence of his own, such as a declaration, to rebut these facts, thereby conceding them.

Alba also fails to address Harbor Freight's arguments regarding the Terms' delegation clause, class action waiver, arbitral scope, or that this action should be stayed pending arbitration. He has therefore also conceded these points.

The Court should compel Alba's claims to individual binding arbitration, dismiss the class

claims,[1] and stay this action pending arbitration.

## II. ARGUMENT

### A. The Cookie Banner Provided Reasonably Conspicuous Notice of the Terms

Alba's claim that the link to the Terms in the Cookie Banner was not sufficiently conspicuous ignores the setup of the Cookie Banner and case law confirming that he was reasonably on notice of the Terms. "[T]he conspicuousness requirement applies only to the issue of whether there is inquiry notice, *i.e.*, where there is no evidence of actual notice." *NVIDIA*, 2026 WL 1433313, at *8 (N.D. Cal. May 21, 2026). "To examine whether textual notice is sufficiently conspicuous to put an individual on notice under California law, courts evaluate factors including: (1) the size of the text; (2) the color of the text compared to the background; (3) the location of the text and its proximity to where the user clicks to consent; (4) the obviousness of an associated hyperlink; and (5) other elements on the screen which clutter or obscure the textual notice." *In re Stubhub Refund Litig.*, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023). "A reasonably prudent user would have inquiry notice of terms "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025).

The Website's Cookie Banner satisfies these factors.




The Opposition does not contest that the hyperlink to the Terms is: (1) bolded, (2) underlined, (3) in bright red text that contrasts with the rest of the text and the white background,

[1] Because the correct forum for Alba's claims is individual arbitration (where he cannot bring class claims), and Blazina cannot bring his time-barred CIPA claims or state a claim for any other claim (*see* ECF No. 23), neither Plaintiff can pursue a class action.

or (4) at the end of the text immediately next to language stating that anyone who clicks "Reject All Cookies" or "continu[es] to browse [the Website]" "acknowledge[s] and agree[s] to [the Terms]," and (5) adjacent to the "Reject All Cookies" button. Mot. at 2, 6; Hall Decl. ¶¶ 5, 8. Instead, the Opposition offers only speculative and unsupported assertions that do not undercut Alba's agreement to arbitrate.

First, Alba argues the Cookie Banner buttons "are designed to be clicked without needing to read the entire paragraph of fine print that is separated from and to the left of the button." Opp'n at 7. But Alba ignores the Cookie Banner's text stating that "by clicking . . . Reject All Cookies . . . you acknowledge and agree to our **Terms and Conditions of Use**," with the Terms hyperlink in bolded, red, underlined letters. Hall Decl. ¶ 5; *see also NVIDIA*, 2026 WL 1433313, at *10 ("Plaintiff admits he actually saw not only the cookie banner but the cookie advisal within the banner . . . There is no reason why a reasonable consumer like Plaintiff should have noticed one advisal but not the other.").

Second, Alba claims the Terms link is "so small as to be barely legible." Opp'n at 7. Not so. The Terms link is the same size as the rest of the Cookie Banner's text, in bolded and bright red, underlined font, and as legible as the rest of the Cookie Banner, which Alba admits he saw and interacted with as the basis for his lawsuit. Alba provides no evidence or authority supporting the argument that same sized and bolded text in a bright color is "barely legible."

Third, Alba critiques the Terms hyperlink because it "is the same color and font as the hyperlink to the Privacy Policy and the two hyperlinks are so closely mashed together that reasonable consumers cannot discern that there is a separate link for the [Terms]." Opp'n at 7. Again, this is not how the Cookie Banner actually appears—the two links are separate. Regardless, Alba does not contend that he thought he was agreeing to the Privacy Policy, and not the Terms, or explain how he considered part but not all of the Cookie Banner's text. *See NVIDIA*, 2026 WL 1433313, at *10 (finding no justification for allegedly noticing only part of the cookie banner).

Fourth, Alba suggests that no reasonable consumer would believe they could consent to the Terms through the Cookie Banner because "the purpose of the banner is for users to select their

cookie preferences." Opp'n at 7. But under this flawed logic, website visitors could never be bound by terms linked through cookie banners—a position *NVIDIA* rejected. *See NVIDIA*, 2026 WL 1433313, at *12 (finding manifestation of assent because of "[plaintiff's] allegation that he declined or turned off cookies on the Website" through cookie banner that "explicitly advise[d] users that by clicking any button on the banner, they agree to NVIDIA's Terms of Service"). At bottom, the "reasonably conspicuous notice" inquiry "is informed by the 'totality of the circumstances.'" *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (citation omitted). By overlooking the critical elements of the Cookie Banner and thereby failing to consider the totality of the circumstances, the Opposition essentially concedes that the Terms were conspicuous and Alba agreed to them, including the arbitration provision.

**1. *ClassPass* is Inapposite**

*Chabolla v. ClassPass*, Alba's lone authority, is not on point. 129 F.4th 1147, 1174 (9th Cir. 2025). In *Chabolla*, the Ninth Circuit analyzed whether any of three sign-up screens provided sufficient notice of hyperlinked terms. Here, Alba compares the Cookie Banner to "Screen 1" in *Chabolla*, shown below. *See id.* at 1174.



In *Chabolla*, the court found that the ClassPass Terms were "deemphasized by the overall design of the webpage" and "not 'prominently displayed'" because the Terms' "distance from relevant action items" was "outside of the user's natural flow," and the font was "timid in both size and color." *Id.* at 1157.

The Cookie Banner here differs materially: Rather than small, grey lettering below the continue button, the link to the Terms on the Cookie Banner is bolded, in red, underlined, and appears in the same sized text as the surrounding language. Moreover, unlike in *Chabolla*, where "[a] reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook" (*id.*), the Cookie Banner's reference to the Terms is next to the action buttons. Accordingly, *Chabolla* does not help Alba.

Alba also fails to address Harbor Freight's on-point authorities which upheld agreements to arbitrate through agreement to terms in cookie banners. For example, in *L.B. v. LinkedIn*, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025), the website had a cookie banner that "clearly inform[ed] users in plain language that continued use of the website constitutes acceptance" of the Cookies Policy. *Id.* As depicted below, the Cookies Policy appeared as a hyperlink that was "underlined and capitalize[d] the first letter of each word." *Id.* (discussing defendant Spring Fertility Holdings' cookie banner).



Here, the Cookie Banner provides even stronger notice of the Terms. Like in *LinkedIn*, the Cookie Banner links to the Terms, "underline[s] and capitalizes the first letter of each word," and appears in a color that is different than the background. *Id.* at *10. But Harbor Freight's Cookie Banner goes further by using a bolded link that is set off in bright red.

**2. The Context of Alba's Website Visits Supports Reasonably Conspicuous Notice**

According to the Opposition, "the context of the transaction (merely declining cookies while browsing a website) weighs against a finding that Plaintiff was adequately notified that rejecting cookies purportedly bound [Alba] to the [Terms]." Opp'n at 6-7. But Alba ignores that the entire predicate for his case—alleging he selected "Reject All Cookies" but cookies continued to fire—is premised on his repeated review of the Cookie Banner. *See, e.g.*, Compl. ¶ 96 ("Plaintiff Alba viewed Defendant's representation on the popup cookie consent banner . . . ."); ¶ 101 ("Plaintiff Alba reviewed the popup cookie consent banner prior to using the Website."); *see also* Ord Decl., Ex. A, at 1 ("Plaintiff Alba visited the website at least once per year between 2020 and 2025" and "believes his most recent visit was in October of 2025.")

Judge Van Keulen rejected this same argument in NVIDIA: "[T]he Court must also take into account [p]laintiff's admissions that he made repeat visits to the Website and that he 'viewed [d]efendant's representation on the popup cookie banner.'" *NVIDIA*, 2026 WL 1433313, at *11 (N.D. Cal. May 21, 2026). Because the plaintiff "admit[ted] he actually saw not only the cookie banner but the cookie advisal within the banner," "[t]here is no reason why a reasonable consumer like [p]laintiff should have noticed one advisal but not the other." *Id.* at *10. So too here. Alba visited the Website repeatedly and makes his interactions with the Cookie Banner the centerpiece of his lawsuit. *See generally* Compl. Alba cannot selectively be on notice of some—but not all—of the Cookie Banner's language. *See NVIDIA*, 2026 WL 1433313, at *11. The context of these transactions demonstrates that a reasonable user would expect to consent to the Terms, and Alba did so here.

**B. The Unrebutted Evidence Confirms Alba's Agreement to Arbitrate**

As "[t]he party seeking to compel arbitration," Harbor Freight "bears 'the burden of proving

the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Kakalia v. BMO Bank N.A.*, 2026 WL 1004952, at *1 (C.D. Cal. Mar. 17, 2026) (quoting *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017)); *Porter v. McGrath*, 2006 WL 734944, at *20 (E.D. Cal. Mar. 23, 2006) ("Preponderance of the evidence means evidence that has more convincing force than that opposed to it.") Harbor Freight satisfied its burden through the Hall Declaration detailing how, and when, the Cookie Banner appeared on the Website, which the Opposition does not even attempt to rebut through actual evidence.

Alba admits he visited the Website on or after October 31, 2024: he alleges that he "visited the Website at least once per year between 2020 and 2025" and "believes his most recent visit was in October of 2025." Ord Decl. ¶ 6, Ex. A. Based on the unrebutted Hall Declaration, the Cookie Banner was in place—and conspicuously linked to the Terms—since October 31, 2024.

This same argument failed in *NVIDIA*. There "NVIDIA ha[d] presented evidence that since December 2024, the cookie banner on the Website"—which the plaintiff admitted they encountered— "ha[d] been different than the cookie banner depicted in the [c]omplaint." *NVIDIA Corp.*, 2026 WL 1433313, at *2. Like Harbor Freight, NVIDIA submitted a sworn declaration from its Senior Director who "is familiar with the content and functionality of [NVIDIA's website] and the [w]ebsite banners." *Id.* at *5. Critically, like here, the plaintiff "did not submit a declaration or other evidence addressing the date(s) he visited the Website or denying that the Website displayed a cookie banner." *Id.* Weighing this identical, unrebutted evidence, Magistrate Judge Van Keulen rejected the exact same actual notice arguments, noting that "[w]here plaintiffs do not offer any testimony or evidence to rebut a defendant's evidence, [ ] courts generally reject such challenges to the sufficiency of a defendant's evidence." *Id.* at *6 (collecting cases) (citation omitted).

Alba also fails to overcome the fact that "[i]f an individual visited the Website before October 31, 2024 and subsequently returned to the Website after October 31, 2024, they would have encountered the [C]ookie [B]anner . . . regardless of prior interactions with the Website and the prior cookie banner." Hall Decl. ¶ 12. Alba admits that during his Website visits over "the last four years," he was "presented . . . with [the Cookie Banner]" and "***reviewed the popup cookie***

***consent banner*** prior to using the Website." *Id.* ¶ 101 (emphasis added). Analyzing the exact same allegation in *NVIDIA*, the court found "this critical admission is not a mere oversight nor is it irrelevant to the Complaint. Plaintiff's claim that he reviewed the contents of the cookie banner forms part of the basis of his claims in this litigation" and therefore "admit[ted] that he was presented with and reviewed the cookie banner." *Id.* at *7-8.

The Opposition's response is unavailing. To start, the Opposition discusses at length the Website's Terms link "[p]rior to November 2024," characterizing them as "[u]nenforceable [b]rowsewrap." Opp'n at 3-4. But this version of the Cookie Banner is not at issue; Alba admits he later visited the Website in 2025, and the Hall Declaration confirms that he was presented with the Cookie Banner and agreed to the Terms in 2025. Any arguments about a prior version of the Cookie Banner are irrelevant. *See NVIDIA*, 2026 WL 1433313, at *5 (noting "NVIDIA's motion to compel arbitration relies ***not on the cookie banner and cookie settings window depicted in the Complaint*** but instead on later versions of the cookie banner. NVIDIA has presented evidence that from December 2024 onward, visitors based in California saw one of two different versions of the cookie banner." (emphasis added)).

Next, instead of providing evidence to rebut the Hall Declaration, the Opposition speculates that "websites typically do not display cookie banners to users who have previously set their cookie preferences," which according to Plaintiffs means "the Hall Declartion [sic] is not sufficient evidence that Plaintiff saw, much less interacted with, the [Cookie Banner]." Opp'n at 4-5. Alba's lone support for this contention is a blog page about the European Union's General Data Protection Regulation ("GDPR") authored by a self-described "marketing expert," that was also rejected in *NVIDIA*. *See* Opp'n at 4 (citing Jeffrey Edwards, GDPR Cookie Compliance 101: How to Manage EU Users' Consent, CHEQ (Jan. 18, 2023), https://cheq.ai/blog/gdpr-cookie-compliance-101). Discussing the same GDPR article, the *NVIDIA* court noted that "[the plaintiff's] 2023 article about designing a website to meet EU requirements does not create a genuine dispute of fact regarding how NVIDIA's cookie banners operated for visitors from California in 2025." *Id.* As in *NVIDIA*, this blog has nothing to do with Harbor Freight's Cookie Banner and does not conflict with Mr. Hall's sworn statement that, if an individual visited the

Website before October 31, 2024, and subsequently returned to the Website after October 31, 2024, they would have encountered the Cookie Banner regardless of prior interactions with the Website. Hall Decl. ¶ 12. Indeed, it is telling that Alba himself does not contest visiting the Website in 2025—or seeing the Cookie Banner during that 2025 visit.

In the face of Harbor Freight's evidence and Alba's silence, Harbor Freight has more than carried its burden of showing that Alba visited the Website in 2025, encountered the Cookie Banner, reviewed its language, clicked "Reject All Cookies," and browsed the Website. Alba "did not submit a declaration or other evidence addressing the date(s) he visited the Website or denying that the Website displayed a cookie banner." *Id.* at *5. Thus, Alba had actual notice of the Terms and agreed to arbitrate. *See Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609, at *5 (N.D. Cal. Oct. 11, 2019) (Freeman, J.) (finding "undisputed [] declaration [] sufficient to show, by a preponderance of evidence, that an agreement to arbitrate was formed by way of [] clickwrap agreement").

### C. Alba Concedes Numerous Arguments

"[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived." *Hartranft v. Encore Capital Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) (compelling arbitration). Because Alba fails to respond to multiple arguments in the Motion, he has waived them.

First, Alba does not dispute that his claims fall within the Terms' arbitral scope, including its retroactive application. *See generally* Opp'n; *see also* Mot. at 8-10. He therefore concedes that the Terms' arbitration clause covers his claims. *See, e.g., Shulak v. Guaranteed Rate, Inc.*, 2024 WL 4404958, at *4 (C.D. Cal. Apr. 10, 2024) ("Because Shulak does not dispute GRI's contention that the 2021 Arbitration Agreement covers Shulak's claims, Shulak effectively concedes that point.").

Second, Alba does not contest the enforceability of the class action waiver, which requires that "[a]ny arbitration, claim or other proceedings by or between you and us shall be conducted on an individual basis and not through any class action, mass action, or on a consolidated or

representative basis." Hall Decl., Ex. A, at 11. Because Alba "does not substantively oppose [Harbor Freight's] request to enforce this waiver," he must proceed on an individual basis if the Court finds that he agreed to the Terms. *See Perez v. Kohl's Inc.*, 2024 WL 5701892, at *5 (C.D. Cal. Feb. 26, 2024) (enforcing arbitration and dismissing class claims). Accordingly, Alba may not represent any alleged class, and (subject to Harbor Freight's companion dismissal motion showing that neither Alba nor Plaintiff Blazina state any claims against Harbor Freight) the class claims must be dismissed.

Third, Alba does not dispute Harbor Freight's position regarding the Terms' delegation clause, thereby conceding it. *See* Mot. at 8-10. "Because [the plaintiff] failed to specifically challenge the delegation clause, the Court must . . . conclude that the delegation clause is valid and enforceable, and any arguments concerning the arbitrability of the agreement . . . must be determined by the arbitrator." *Hueston v. Westlake Portfolio Mgmt., LLC*, 2024 WL 4472247, at *6 (C.D. Cal. June 27, 2024) (compelling arbitration) (citing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023)).

Finally, Alba does not respond to Harbor Freight's argument that this case should be stayed pending arbitration. *See* Mot. at 10-11. The Court should thus stay this action pending arbitration of Alba's claims.

## III. CONCLUSION

For the foregoing reasons, Harbor Freight respectfully requests that the Court compel Alba's claims to individual binding arbitration, dismiss the class claims, and stay this action pending the outcome of the arbitration.

Dated: June 26, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*