ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFF DEGROOT (admitted *pro hac vice*)
jeff.degroot@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendant
HARBOR FREIGHT TOOLS USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LARRY ALBA and ROBERT BLAZINA JR., individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HARBOR FREIGHT TOOLS USA, INC.,

Defendant.

Case No. 5:26-CV-01069-BLF

**DEFENDANT HARBOR FREIGHT TOOLS USA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Hon. Beth Labson Freeman
Courtroom: Courtroom 1
San Jose Courthouse
280 South First Street, 5th Fl.
San Jose, CA 95113
Date: August 13, 2026
Time: 9:00 a.m.

Complaint Filed: February 3, 2026

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. PLAINTIFFS FAIL TO SHOW A CONCRETE HARM TO ESTABLISH ARTICLE III STANDING ..... 1

- A. There is No Alleged Collection or Disclosure of Plaintiffs' Own Information ..... 1
- B. There is No Legally Protectable Interest ..... 3
- C. Plaintiffs Concede Their Diminution in Value Theory ..... 5

III. THE COMPLAINT SOUNDS IN FRAUD AND FAILS UNDER RULE 9(B) ..... 5

IV. BLAZINA'S CIPA CLAIMS ARE TIME-BARRED ..... 6

V. PLAINTIFFS FAIL TO PLEAD INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS ..... 8

VI. PLAINTIFFS' CIPA CLAIMS FAIL ..... 10

- A. Plaintiffs' Section 631(a) Claim Fails to Allege "Contents" or Intent ..... 10
  - 1. Plaintiffs Concede Harbor Freight is not Directly Liable ..... 10
  - 2. Plaintiffs Fail to Allege a Third Party's Underlying Violation ..... 10
  - 3. Plaintiffs Independently Fail to Allege Intent ..... 11
- B. Plaintiffs Fail to Allege a Pen Register Claim ..... 12

VII. PLAINTIFFS' FRAUD CLAIM FAILS FOR LACK OF DAMAGES ..... 13

VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AND EQUITABLE REMEDIES ARE BARRED ..... 14

IX. PLAINTIFFS WAIVED THEIR REQUEST FOR PUBLIC INJUNCTIVE RELIEF ..... 15

X. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan, Inc. v. Ferrum Ferro Cap., LLC*,
2015 WL 12670417 (C.D. Cal. Dec. 28, 2015) ........................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................4

*Blaker v. NetScout Systems, Inc.*,
2026 WL 1709143 (Cal. Super. May 27, 2026) .........................................................15

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023), *aff'd in part, rev'd in part and remanded sub nom. In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423 (3d Cir. 2026)..........................................................................................................15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................................15

*City of Salinas v. Workers' Comp. Appeals Bd.*,
335 Cal. Rptr. 3d 862 (Cal. Ct. App. 2025), *reh'g denied* (Sept. 17, 2025).............................7

*Crano v. Sojern, Inc.*,
2026 WL 1670136 (N.D. Cal. June 9, 2026) ...............................................................4

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)...............................................................5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........................................................................15

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ................................................................15

*Evans v. Sleep No. Corp.*,
2025 WL 1093332 (E.D. Cal. Apr. 11, 2025)...............................................................15

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........................................................................4, 9, 15

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ..........................................................................4

*Gabrielli v. Motorola*,
2025 WL 1939957 (N.D. Cal. July 14, 2025).................................................................5

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................4, 9

*Gold Crest, LLC v. Project Light, LLC*,
2019 WL 9607648 (C.D. Cal. Dec. 18, 2019) ....................5, 15

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................15

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................9, 15

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................9

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................15

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) ....................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................7

*Herzman v. Smile Brands Inc.*,
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)....................1

*Hodes v. Van's Int'l Foods*,
2009 WL 10674101 (C.D. Cal. June 23, 2009) ....................6

*James v. Walt Disney Company*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................2, 3

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................2

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................15

*McZeal v. Blue Castle (Cayman) Ltd.*,
2025 WL 3899249 (C.D. Cal. Oct. 28, 2025)....................15

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ....................15

*Obillo v. i-Health Inc.*,
2025 WL 844389 (N.D. Cal. Mar. 18, 2025)....................15

*Ortiz v. Deckers Outdoor Corp.*,
2026 WL 1243675 (N.D. Cal. May 6, 2026) .......... 5, 15

*Ortiz v. Foris Dax*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 9

*Pemberton v. Rest. Brands Int'l, Inc.*,
2026 WL 1283383 (N.D. Cal. May 11, 2026) .......... 8

*Pirtle v. FCA US, LLC*,
2025 WL 4058236 (C.D. Cal. Dec. 8, 2025) .......... 6, 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 3, 4

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 9, 15

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 15

*Rodriguez v. IMDB*,
2026 WL 886927 (Cal. Super. Mar. 24, 2026) .......... 15

*Schallert v. Laird Superfood, Inc.*,
2026 WL 1707585 (C.D. Cal. June 5, 2026) .......... 4

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*,
700 F. Supp. 3d 928 (S.D. Cal. 2023) .......... 15

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 4, 6, 9, 15

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 3, 8

*Smith v. United Seating & Mobility L.L.C.*,
2024 WL 4441082 (C.D. Cal. Sept. 11, 2024) .......... 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 4

*United States v. Flores-Garcia*,
198 F.3d 1119 (9th Cir. 2000) .......... 15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................................................................................5

**Statutes**

Cal. Penal Code § 631(a) .........................................................................................15

Cal. Penal Code § 638.50(b) .....................................................................................15

Cal. Penal Code § 638.51 ..........................................................................................15

**Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................................5, 6

## I. INTRODUCTION

This is a formulaic cookie-tracking lawsuit devoid of the individualized factual allegations necessary to survive a motion to dismiss. Plaintiffs do not allege that Harbor Freight—or any third party—actually collected any of their own "Private Communications." They do not allege when they visited the Website, what they did there, what specific data was captured, or any harm they allegedly suffered as a result. Instead, Plaintiffs resort to the same generalized, boilerplate assertions about theoretical tracking capabilities that courts in this District have repeatedly rejected. The Opposition underscores these deficiencies. Further, Plaintiff Blazina's CIPA claims are time barred because he failed to prosecute this lawsuit for months after becoming aware of his claims and following his individual arbitration with Harbor Freight.[1] For all of the reasons set forth below, and in Harbor Freight's Motion to Dismiss, the Complaint should be dismissed.

## II. PLAINTIFFS FAIL TO SHOW A CONCRETE HARM TO ESTABLISH ARTICLE III STANDING

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). Plaintiffs' generalized allegations do not establish Article III standing, requiring dismissal.

### A. There is No Alleged Collection or Disclosure of Plaintiffs' Own Information

Standing is an individualized inquiry. "[T]o survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (dismissing because "complaint [was] devoid of specific factual allegations explaining what was actually disclosed to [d]efendant and what [d]efendant then allegedly disclosed to Google").

The Complaint lacks any allegation that Harbor Freight (or any third party) collected any

---

[1] Harbor Freight separately moved to compel arbitration as to Alba, ECF No. 22, and respectfully requests the Court first consider that motion because it establishes the proper forum for Alba's claims, reserving all rights. Then, if the Court compels Alba to arbitration, and finds Blazina's claims are barred, this case cannot proceed as a putative class action.

of Plaintiffs' own "Private Communications." *See, e.g.*, Compl. ¶ 30. Although the Opposition claims that the Website "transmitted an extensive array of information and Private Communications to the Third Parties," there are no specific allegations in the Complaint. Opp'n at 5. Rather, the Complaint relies on generic allegations of tracking. *See, e.g.*, Compl. ¶ 4 ("These cookies permitted the Third Parties to track and collect data in real time regarding ***Website visitors'*** behaviors and communications." (emphasis added)); *id.* ¶ 30 ("[T]he third-party cookies stored on and/or loaded from ***users'*** devices when they interact with the Website are transmitted to those third parties"). At most, Plaintiffs allege that "Plaintiffs' and other Website users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, were surreptitiously obtained by the Third Parties via these cookies." *Id.* ¶ 43. These allegations, which do not identify what specific information was allegedly collected as to each Plaintiff, are insufficient. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (merely the disclosure of "data" and "information," without greater specificity, is not enough to allege injury in fact).

The Opposition's discussion of Harbor Freight's Privacy Policy does not change the result. Plaintiffs claim that the Privacy Policy "outlines the data captured and transmitted by the cookies [Harbor Freight] permitted the Third Parties to place on Plaintiffs' and Class members' browsers and devices." Opp'n at 7. But reference to the Privacy Policy is not a substitute for adequately alleging Plaintiffs' own data elements were intercepted on the Website, especially because the Privacy Policy notes that "we ***may*** obtain certain information by automated means" and "***may*** use these automated technologies on the Services to collect information about your device, browsing actions, and usage patterns." Compl. ¶ 34 (emphasis added).

Plaintiffs' reliance on *James v. Walt Disney Company*, 701 F. Supp. 3d 942, 952 (N.D. Cal. 2023) is also misplaced. The Opposition does not cite *James*' standing discussion but rather its 12(b)(6) inquiry regarding wiretapping claims, where the court found the plaintiffs sufficiently alleged the "contents" of their communications and did not mention anything about a privacy

policy. *Id.* at 957. Regardless, *James* found the plaintiffs there adequately alleged standing because, in part, they alleged what data elements of their own were actually intercepted. *See* 701 F. Supp. 3d 942, 952 (N.D. Cal. 2023) (noting "[d]uring the [website] visit, Mr. James's keystrokes, mouse clicks, and other communications – such as the specific web pages he viewed – were intercepted in real time by Oracle" and similar for other plaintiff). Plaintiffs failed to make similar allegations here.

Reliance on *Shah v. Politico* is also misplaced. Harbor Freight respectfully disagrees with the weight the court placed on generalized allegations where the plaintiff merely alleged the defendants "***allowed***" and "***permitted***" the "Third Parties to track and collect [his] Private Communications." 2026 WL 323269, at *1, 4 (N.D. Cal. Feb. 6, 2026) (emphasis added). Pleading that a website operator "allowed" or "permitted" the possible collection and disclosure of "Private Communications," 2026 WL 323269, at *1, 4 (N.D. Cal. Feb. 6, 2026)—allegations *Politico* found sufficient to support standing —is not the same as pleading that an individual's own "Private Communications" were collected or disclosed, or that the website operator caused this to occur. All that Plaintiffs generically alleged here is that Harbor Freight permitted collection—not that their information was actually collected. *See, e.g.*, Compl. ¶ 100 ("Defendant ***permitted*** the Third Parties to track and collect Plaintiff Alba's Private Communications as Plaintiff Alba browsed the Website." (emphasis added)).

**B. There is No Legally Protectable Interest**

Even if Plaintiffs' "Private Communications" were sent to "Third Parties," Plaintiffs failed to plead that they suffered a concrete harm because none of the alleged categories of "Private Communications" are actionable. *See generally* Mot. at 5-8. As the Ninth Circuit held in *Popa v. Microsoft Corp.*, the relevant inquiry turns on the type of information at issue and whether its disclosure would be "highly offensive to a reasonable person." 153 F.4th 784, 791 (9th Cir. 2025).

The Opposition argues that Plaintiffs' generalized "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers" were collected and disclosed. Opp'n at 6. But this argument does not address the well-settled

proposition that Article III standing must implicate "embarrassing, invasive, or otherwise private information" that would give rise to an actual harm. *Popa*, 153 F.4th at 791; *Crano v. Sojern, Inc.*, 2026 WL 1670136, at *3 (N.D. Cal. June 9, 2026) (dismissing claims because "[c]ritically, the SAC does not allege the tracking pixel actually collected [p]laintiff's personal information"); *Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (same); *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) (same in similar case involving alleged cookie misrepresentation in cookie banner). For example, Plaintiffs do not allege the disclosure of any health information, financial information, or any other types of sensitive information—let alone any personal information. Labeling their alleged website interactions as "Private Communications" does not alter this result, as a plaintiff must allege "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Opposition's authorities do not save Plaintiffs' Complaint. First, the Opposition cites to *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020) ("*In re Facebook*") for the proposition that "the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing." Opp'n at 6. Not so. The Ninth Circuit, in *Popa*, held that *In re Facebook*'s "analysis finds no support in *TransUnion*" due to its reliance on pre-*TransUnion* authority. *Popa*, 153 F.4th at 794. Regardless, *In re Facebook* is distinguishable because the Ninth Circuit found plaintiffs sufficiently analogized "the historically recognized right to privacy" where Facebook captured the plaintiffs' cross-site browsing histories "no matter how sensitive" and correlated that history with social media profiles. *Id.* at 598-99. Here, Plaintiffs merely allege they visited the Website and interacted with a cookie banner. *See* Compl. ¶¶ 94-100, 103-09.

*Shah v. MyFitnessPal*, *Gabrielli v. Motorola Mobility*, and *Gabrielli v. Haleon* (cases prosecuted by Plaintiffs' counsel) also do not save Plaintiffs' Complaint. The websites in *MyFitnessPal* and *Haleon* involved alleged sensitive data collection—*MyFitnessPal* concerned "nutrition and fitness tracking" and the websites in *Haleon* "involve[d] healthcare." *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025). By contrast, this action concerns "information

about [Harbor Freight's] tool and hardware products," which is not particularly sensitive. Compl. ¶ 32. Moreover, *Gabrielli v. Motorola* predates *Popa*, which emphasized the inquiry must be on the specific information allegedly disclosed. *See generally* 2025 WL 1939957 (N.D. Cal. July 14, 2025). Thus, the cases Plaintiffs cite for their standing arguments are outdated and inapposite.

### C. Plaintiffs Concede Their Diminution in Value Theory

As set forth in Harbor Freight's Motion (Mot. at 8-9), Plaintiffs fail to plausibly allege that their own information has value. The Opposition does not address this point and therefore concedes it. *See Gold Crest, LLC v. Project Light, LLC*, 2019 WL 9607648, at *1 (C.D. Cal. Dec. 18, 2019) ("Arguments not addressed by the opposing party are normally deemed conceded.").

## III. THE COMPLAINT SOUNDS IN FRAUD AND FAILS UNDER RULE 9(B)

Plaintiffs' assertion that "invasion of privacy, intrusion upon seclusion, and CIPA claims do not sound in fraud" contradicts Plaintiffs' framing of their claims. Opp'n at 9. Indeed, the Opposition states "the privacy that Defendant Harbor Freight Tools, USA, Inc. . . . promised to visitors of its website was an outright lie." Opp'n at 1. Rule 9(b) applies even "where fraud is not a necessary element of a claim," when claims are premised on "a unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). For example, the court in *de Ayora v. Inspire Brands, Inc.*, which the Opposition fails to address, found these same claims sound in fraud. *See* 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025).

Plaintiffs rely on *Ortiz v. Deckers* to contend Plaintiffs "focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them." Opp'n at 9 (quoting *Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675, at *1 (N.D. Cal. May 6, 2026)). Yet, the Opposition offers no further explanation about why Plaintiffs' alleged harms are divorced from fraud, and instead suggests the opposite. For example, "Plaintiffs have alleged an invasion of privacy that, considering the context of the intrusion—***a false promise of privacy***—is highly offensive." Opp'n at 17 (emphasis added). Plaintiffs also allege that they acted "[i]n reliance on [the Cookie Banner's] representations and promises" when they browsed the Website and incurred their alleged harm. Compl. ¶¶ 98, 107. Plaintiffs accordingly reinforce that their claims sound in fraud

and require specific allegations sufficient to satisfy Rule 9(b).

Yet, as set forth in Harbor Freight's Motion, the Complaint omits key details regarding Plaintiffs' Website visits, including what specific actions Plaintiffs took on the Website after encountering the Cookie Banner, the information Plaintiffs entered, or any specific communications. Without such allegations, the Court cannot determine what—if anything—was actually collected from Plaintiffs, as distinct from what cookies are generically *capable* of collecting about any user. *See MyFitnessPal*, 2026 WL 216334, at *9 ("MFP cannot, for example, determine what specific representations regarding cookies were made on MFP's website on the specific dates that Shah and Wiley visited those websites or how the websites were using any cookies placed on users' devices on those specific dates.").

The Opposition also does not explain Plaintiffs' failure to plead facts suggesting Harbor Freight knew its alleged statements were false. Plaintiffs instead claim that summarily alleging Harbor Freight "acted intentionally and with knowledge . . . is sufficient." Opp'n at 10. While knowledge may be pled generally, "merely conclusory" statements about "scienter and intent to defraud" "do not plead the required elements of fraud with sufficient specificity." *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009).

## IV. BLAZINA'S CIPA CLAIMS ARE TIME-BARRED

Blazina unreasonably delayed in filing this lawsuit and nothing in the Opposition justifies the delay or revives his stale CIPA claims. The Opposition first discusses "fraudulent concealment tolling," which Blazina appears to apply to the November 2023 through April 17, 2024 period where he allegedly did not know of the alleged tracking. Opp'n at 11-12. Where, like here, "fraudulent concealment is presented as a justification for the delayed filing of an action, the applicable statute of limitations is tolled 'only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.'" *Pirtle v. FCA US, LLC*, 2025 WL 4058236, at *8 (C.D. Cal. Dec. 8, 2025) (citation omitted). But Blazina admits the alleged fraudulent concealment ended when he became aware of the alleged tracking on April 17, 2024. *See id.* Thus, even accepting this tolling theory, the limitations period for his CIPA claims was tolled only until April 17, 2024. *See Pirtle*,

2025 WL 4058236, at *8. That Blazina claims he "acted diligently in bringing this action after learning of Defendant's privacy violations on the Website" is therefore immaterial. *Id.* at 11.

Blazina also fails to satisfy the high bar necessary to equitably toll his claims during his November 2024-July 2025 arbitration. Blazina dismisses Harbor Freight's claim of prejudice but ignores the realities of the arbitration. "The 'core focus of [the] prejudice analysis' is 'whether application of equitable tolling would prevent the defendant from defending a claim on the merits.'" *City of Salinas v. Workers' Comp. Appeals Bd.*, 335 Cal. Rptr. 3d 862, 883 (Cal. Ct. App. 2025), *reh'g denied* (Sept. 17, 2025). During Blazina's entire eight-month arbitration, the only issue litigated was jurisdiction, which Blazina contested despite bringing the arbitration. Blazina specifically argued that only claims as to arbitrability had been submitted to the arbitrator, and not the merits of his underlying disputes. *See* Compl., Ex. B, at 2. Ultimately, the arbitrator dismissed the arbitration because there was no clear delegation to the arbitrator of even the preliminary issue of jurisdiction to decide arbitrability. *Id.* at 9-10. Thus, Harbor Freight had no opportunity to challenge Blazina's claims, including his CIPA claims, in the arbitration.

Further, the Opposition confirms that Blazina's conduct was objectively unreasonable. Blazina claims that "Plaintiff's conduct saved the parties time and resources, which is hardly a reason to deny equitable tolling." Opp'n at 14-15. But the arbitrator found that "Claimant Blazina did not agree with Respondent's TOU and a contract was not formed. Therefore, the Arbitrator does not have jurisdiction to decide the Parties' 'cookies' dispute under the arbitration clause in the TOU." Compl. ¶ 20; Ex. B ¶ 24. Accordingly, arbitrability was never ruled on, and Harbor Freight reserves all rights. *See* Compl., Ex. B, at 9-10 (finding no true meeting of the minds to delegate the preliminary question of jurisdiction and dismissing). Rather, Blazina chose to force a wasteful eight-month arbitration that ultimately failed at the threshold when he could have simply commenced this lawsuit in court. *Id.* at 4 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019), and noting that it is ordinarily for a court to decide jurisdiction unless expressly delegated to the arbitrator).

Regardless, even applying all of Plaintiffs' suggested tolling methods, Blazina's CIPA claims ***are still time-barred.*** The Opposition ignores the date calculations in Harbor Freight's

Motion and instead posits an incorrect alternative statutory period. Blazina contends that he "filed his arbitration with 167 days remaining on the statute of limitations for his CIPA claims. He filed this action 158 days after JAMS closed the arbitration on August 29, 2025. Thus, so long as the arbitration proceeding meets the three elements required for tolling, Plaintiff Blazina's CIPA claims are timely." Opp'n at 12. ***But Blazina overlooks the six-month and fifteen-day period between "discovery" of his CIPA claims on April 17, 2024, and initiating arbitration on November 1, 2024.*** Before the arbitration, Blazina sat on his CIPA claims for 198 days. Then, he waited another 201 days (over six months) after the arbitrator's July 17, 2025 order dismissing the arbitration to file this lawsuit on February 3, 2026. Thus, Blazina's claim that he had "167 days remaining" (*id.*) to bring his CIPA claims is wrong. Blazina offers no explanation for this delay, and there is none. *See Shah v. Politico LLC*, 2026 WL 323269, at *7 (N.D. Cal. Feb. 6, 2026) (dismissing CIPA claims when "[m]ore than six months" had passed).

Blazina's attempt to alter the statutory period until the August 29, 2025 closure of the arbitration—rather than the arbitrator's July 17, 2025 dismissal order—is wrong. In an identical case, Judge Corley found the plaintiff's CIPA claims time-barred when the plaintiff waited over nine months after "the arbitrator ruled a court needed to determine whether an arbitration agreement existed." *Pemberton v. Rest. Brands Int'l, Inc.*, 2026 WL 1283383, at *4 (N.D. Cal. May 11, 2026). Judge Corley noted that "[o]nce the arbitrator informed Plaintiff his case would be placed on hold until a court determined whether an arbitration agreement existed, Plaintiff knew his claims could not proceed without his filing a complaint in court." *Id.* at *4. So too here. Once the arbitrator ruled that the arbitration "is dismissed for lack of jurisdiction," Compl., Ex. B. at 10, "[Blazina] knew his claims could not proceed without his filing a complaint in court." *Pemberton*, 2026 WL 1283383, at *4. The July 17, 2025 dismissal date is controlling. Blazina's CIPA claims, which are now nearly three years old, are time-barred.

## V. PLAINTIFFS FAIL TO PLEAD INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS

Plaintiffs fail to allege intrusion upon seclusion or invasion of privacy because the Complaint does not allege that Harbor Freight intentionally configured the "Reject All Cookies"

button to malfunction or engaged in any "highly offensive" conduct. *See* Mot. at 12-14. First, Plaintiffs failed to plead a reasonable expectation of privacy in the information allegedly tracked because they do not even allege what specific information they shared with the Website. *See* Mot. at 10-12. Second, Plaintiffs fail to allege that Harbor Freight engaged in any "highly offensive" conduct that constitutes the required "egregious breach of the social norms." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020). The Opposition claims that "Plaintiffs have alleged an invasion of privacy that, considering the context of the intrusion—a false promise of privacy—is highly offensive." Opp'n at 17. Recently, *Garcia v. Blackhawk Network* rejected this argument. Analyzing a "highly offensive" intrusion in the standing context, the court noted that plaintiffs' argument "goes only to the first element" and rejected the notion reached by courts (including *Shah v. MyFitnessPal*, one of Plaintiffs' authorities) that "the misrepresentation alone is enough to meet the highly offensive bar." *Garcia*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026). Further, the court in *Ortiz v. Foris Dax* (another case brought by Plaintiffs' counsel) followed *Garcia* in finding no "highly offensive" conduct because of the same pleading deficiencies. 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026). The court reasoned that "it is difficult to see how the information collected about Plaintiffs – that they visited a cryptocurrency website on one occasion – constitutes an 'egregious breach of the social norms'" because "[t]he complaint [did] not make any allegations a[s] to the actions plaintiffs actually took on the website – the complaint alleges only that they 'browsed.'" *Id.* Plaintiffs' hypothetical allegations are similarly fatal because they fail to allege any specific information about Plaintiffs' Website visits, and there is no indication that Plaintiffs could improve on those allegations here.

The Opposition's other authorities do not alter this result. First, *In re Facebook* involved the capture of cross-site browsing histories containing sensitive information, which is not alleged here. *See* 956 F.3d at 598; *see also Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (cross-website tracking). Second, *Hammerling v. Google* found the alleged data collection and disclosure was ***not*** "highly offensive" because the plaintiffs failed to allege "[t]he data allegedly collected by Google"—which included "information about a user's menstrual cycle"—"[was] sufficiently specific or personal, and its collection sufficiently harmful,

to be highly offensive." 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). Here, Plaintiffs do not allege the collection or cross-site tracking of ***their*** information.

Lastly, the Opposition's claim that the Cookie Banner should act as a "plus factor" because of "binding precedent" also fails. Opp'n at 17. "[C]ourts in this district have found that the intrusion does not meet the 'high bar' to be highly offensive" when "a company tracks limited information on its own website and discloses it to third parties." *Ortiz*, 2026 WL 1430720, at *4. Plaintiffs do not allege that ***Harbor Freight*** tracked Plaintiffs across other websites. *See, e.g.*, Compl. ¶¶ 91, 193. As such, Plaintiffs fail to allege that the Cookie Banner may operate as a "plus factor" here. For similar reasons, Plaintiffs' reliance on *In re Facebook* is misplaced. As *Ortiz* noted, *In re Facebook* "distinguished several district court cases that found no highly offensive conduct despite surreptitious tracking, where there were no allegations that the tracking continued after the plaintiffs stopped using the defendant's services." *Id.* (citing *In re Facebook*, 956 F.3d n.8). The same result follows here, and the claims should be dismissed.

## VI. <u>PLAINTIFFS' CIPA CLAIMS FAIL</u>

### A. Plaintiffs' Section 631(a) Claim Fails to Allege "Contents" or Intent

#### 1. Plaintiffs Concede Harbor Freight is not Directly Liable

The Opposition concedes Harbor Freight is not directly liable for violating clauses one through three of Section 631(a) because "Plaintiffs allege a wiretapping claim under the ***fourth*** prong of Section 631(a)." Opp'n at 18 (emphasis added). Thus, Plaintiffs must allege Harbor Freight aided and abetted the "Third Parties'" alleged predicate violation of clauses one through three of Section 631(a). *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).

#### 2. Plaintiffs Fail to Allege a Third Party's Underlying Violation

Section 631(a) clause four requires Plaintiffs to plead the third party software providers "engaged in conduct prohibited by the first, second, or third clause," ***and*** that Harbor Freight had "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940, 942 (N.D. Cal. 2024) (emphasis added). The Complaint fails on both counts.

***Clause 1*:** The "overwhelming weight of authority" limits the first clause of Section 631(a)

to its plain text—i.e., communications over "telegraph[s] or telephone wire[s]," which are not alleged here. Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135.

***Clause 2*:** Section 631(a) clause two requires Plaintiffs to allege the "contents" of their communications are intercepted. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023). Plaintiffs fail to allege any "contents" of ***their*** communications here. As set forth in Harbor Freight's Motion (*see* Mot. at 11-12), Plaintiffs fail to allege the "contents" of their communications were intercepted because they do not allege they inputted data on the Website. Plaintiffs' own authorities confirm this pleading deficiency warrants dismissal of the claim. *See MyFitnessPal*, 2026 WL 216334, at *6 (dismissing claim for failure to plead what "contents" were purportedly intercepted). This claim independently fails because Plaintiffs did not address this argument in their Opposition and waived it. *See Gold Crest*, 2019 WL 9607648, at *1.

***Clause 3*:** Section 631(a) clause three is derivative of the first two. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses."). And because Plaintiffs fail to allege an underlying violation of the first three clauses, their clause four claim necessarily fails.

#### 3. Plaintiffs Independently Fail to Allege Intent

Plaintiffs fail to allege Harbor Freight or any Third Party intended to violate clause four. "CIPA liability only extends to willful or intentional conduct." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024). Data inadvertently sent without consent does not support a Section 631(a) violation. *See id.*

Plaintiffs contend that Harbor Freight "cannot claim that it did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since it installed the Third Party code on its Website to do exactly that." Opp'n at 20. But this argument sidesteps the requirement to adequately plead how Harbor Freight intended the "Third Parties'" wiretapping to occur. Further, Plaintiffs contend *YETI* "is contrary to the prevailing standard in this Circuit" (*id.* at 20) but do not actually explain what that standard is. The Opposition cites no authorities

in support of its intent argument and merely recites the Complaint's conclusory allegations. In any event, a relaxed intent standard is inconsistent with Section 631(a) as a criminal statute. A standard of "using cookies on a website denotes intent" would require this Court to infer any business using standard cookie-management tools for legitimate purposes ***intended*** those tools to malfunction and thereby facilitate unlawful surveillance. *See Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (rejecting inference and intent standard).

**B. Plaintiffs Fail to Allege a Pen Register Claim**

First, the Opposition offers no response to the California trial court authorities in Harbor Freight's Motion expressly rejecting Plaintiffs' interpretation of the pen register statute. *See* Mot. 19-20. Not surprisingly, the Opposition also points to no binding Ninth Circuit or California Court of Appeals decisions holding that the pen register statute applies to internet tracking technology. Indeed, no such decision exists. On the other hand, California trial courts continue to express disapproval for interpreting the pen register statute beyond its plain text and legislative history. For example, the court in *Blaker v. NetScout Systems, Inc.* recently dismissed a similar pen register claim ***with prejudice*** because "applying the ordinary rules of statutory construction and considering both the structural context of Penal Code section 638.51 and the legislative history . . . this statute applies to telephonic communications and not to software on a commercial website." 2026 WL 1709143, at *4 (Cal. Super. May 27, 2026). In the absence of controlling law, Harbor Freight respectfully requests this Court follow the better-reasoned California court decisions. *See Allergan, Inc. v. Ferrum Ferro Cap., LLC*, 2015 WL 12670417, at *8 (C.D. Cal. Dec. 28, 2015) ("California trial and appellate courts have the authority and expertise to interpret and apply [their own] statutes.").

Second, Plaintiffs' pen register claim also fails because Plaintiffs rely on a logically inconsistent interpretation of the statute. Plaintiffs claim that "it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to [capture both the contents and non-contents of a communication]." Opp'n at 23. But by definition, a "pen register" concerns merely "dialing, routing, addressing, or signaling information . . . ***but not the contents of a communication***." Cal. Penal Code § 638.50(b)

(emphasis added). Alleging the Website's third-party tools capture the "contents" of Plaintiffs' communications ignores the statute's limiting exclusionary language and Section 631(a) and its "contents" element.

The Opposition's lone authority, *In re Meta Pixel Tax Filing Cases*, a non-binding district court decision, is unavailing. There, the court observed that "[t]he relevant statutory language is ambiguous." 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025). But this conclusion is directly at odds with the statute's plain text, and the court read the word "only" into the statute when that word does not appear (i.e., "but not the contents of a communication"). *Id.* The ability to construe a statute broadly or narrowly does not foreclose a narrower reading of the statute. *See United States v. Flores-Garcia*, 198 F.3d 1119, 1123 n.5 (9th Cir. 2000) ("A statute is not ambiguous simply because it is possible to construe a statute narrowly.") (internal citation omitted). The Opposition also fails to respond to the better-reasoned decision in *Rodriguez v. IMDB*, where the court did not insert ambiguity into the statute. This Court should follow *Rodriguez* in concluding that "[a] device that captures the contents of a communication is, by definition, not a [pen register]." 2026 WL 886927, at *3 (Cal. Super. Mar. 24, 2026).

Lastly, the Opposition suggests that Plaintiffs adequately plead their pen register claim because "some cookies transmit contents of communications while others transmit user information and IP addresses (i.e. not contents)." Opp'n at 24. However, the Opposition does not distinguish between these alleged cookies. For example, the Complaint alleges that "all network calls to Facebook contain the user's 'user-agent' and IP address" (Compl. ¶ 59) but then alleges that "[t]he facebook.com cookies allow Meta to obtain and store" the same exact data elements that Plaintiffs allege elsewhere are the "contents" of their communications. *See* Compl. ¶¶ 60, 155. Plaintiffs may not use their Opposition to seek to re-plead a deficient claim. *See McZeal v. Blue Castle (Cayman) Ltd.*, 2025 WL 3899249, at *4 (C.D. Cal. Oct. 28, 2025) ("[A] plaintiff may not amend the complaint through statements raised in opposition to a motion to dismiss[.]").

## VII. PLAINTIFFS' FRAUD CLAIM FAILS FOR LACK OF DAMAGES

Plaintiffs' fraud claim independently fails because Plaintiffs do not allege damage resulting from the allegedly fraudulent conduct. *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057,

1079 (N.D. Cal. 2009); *Evans v. Sleep No. Corp.*, 2025 WL 1093332, at *9 (E.D. Cal. Apr. 11, 2025) ("[D]eception without resulting loss is not actionable fraud.") (citation omitted). The Opposition claims that "[i]nvasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit" and that Plaintiffs "have a stake in the value of their misappropriated data." Opp'n at 24. Yet, Plaintiffs fail to plead any facts about how ***they*** suffered any damages. Plaintiffs cite to *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) for their alleged diminution in value theory, but in *Brown* (which did not involve a common law fraud claim), the plaintiffs "[had] evidence that there is a market for their data" because the defendant "piloted a program where it pays users $3.00 a day for their browsing history." *Id.* Such a program is not alleged here. *Rodriguez v. Google* fares no better. *Rodriguez* (which similarly did not involve a common law fraud claim) concerned an expert's damages calculations at class certification, rather than the sufficiency of allegations at the pleading stage. *Rodriguez v. Google LLC*, 2024 WL 38302, at *11 (N.D. Cal. Jan. 3, 2024). *Rodriguez* is similarly inapposite. Plaintiffs' fraud claim should be dismissed.

## VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM AND EQUITABLE REMEDIES ARE BARRED

Plaintiffs' assertion that they may plead equitable claims and remedies "in the alternative," (*see* Opp'n at 25), "has been explicitly rejected by numerous courts post-*Sonner*." *Smith v. United Seating & Mobility L.L.C.*, 2024 WL 4441082, at *6 (C.D. Cal. Sept. 11, 2024) (citations omitted). Plaintiffs' own authority confirms it. *See Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 936 (S.D. Cal. 2023) ("[E]quitable relief is not appropriate where an adequate remedy exists at law."). Regardless, "that does not relieve Plaintiff[s] of the obligation to satisfy the minimum pleading requirements for each claim for relief, including any alternative forms of relief." *Obillo v. i-Health Inc.*, 2025 WL 844389, at *4 (N.D. Cal. Mar. 18, 2025).

Here, the Complaint pleads entitlement to money damages and makes no allegation that legal remedies are inadequate. *See* Compl. ¶¶ 160, 172; Prayer B. Plaintiffs offer only a single conclusory allegation that they *could* lack an adequate remedy at law if their other claims were dismissed. *See id.* ¶ 194. But courts have dismissed equitable claims and remedies regardless of

whether plaintiffs could potentially lack legal remedies should those claims fail. *See Obillo*, 2025 WL 844389, at *4-5. Nor can Plaintiffs save their equitable claims by asking for "an injunction that prohibits [Harbor Freight] from making misrepresentations on the Website." Compl. ¶¶ 102, 111; *see also* Mot. at 23-24. Plaintiffs are now aware of the alleged issue and no injury will result from future visits. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 366 (E.D. Pa. 2023), *aff'd in part, rev'd in part and remanded sub nom. In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423 (3d Cir. 2026) ("Website Users brought this lawsuit and are presumably now aware of the alleged risks associated with browsing [the] websites.") (footnote omitted).

Finally, the Opposition does not meaningfully address Plaintiffs' failure to allege what benefit Harbor Freight purportedly unjustly retained. *See* Mot. at 12. While the Opposition claims "Defendant benefited from using their Private Communications" (Opp'n at 24), Plaintiffs merely cite to generalized allegations about the alleged value of their "Private Communications." Accordingly, the claim also fails for this independent reason. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020).

## IX. PLAINTIFFS WAIVED THEIR REQUEST FOR PUBLIC INJUNCTIVE RELIEF

Plaintiffs improperly purport to seek relief on behalf of "the general public" without pleading such a claim or praying for such relief. *See* Compl. pp. 1 (caption page), 1:1-28 (beginning of allegations), Prayer. Plaintiffs only mention "the general public" in passing. The Opposition does not address Harbor Freight's argument (*see* Mot. at 23-24), thereby conceding it, and the references to "the general public" should be stricken. *See Gold Crest*, 2019 WL 9607648, at *1.

## X. CONCLUSION

For each and all of these reasons, Harbor Freight requests that the Court grant its Motion to Dismiss the Complaint.

Dated: June 26, 2026

DLA PIPER LLP (US)

By: /s/ *Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HARBOR FREIGHT TOOLS USA, INC.*