# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| LARRY ALBA, et al., | Case No. 26-cv-01069-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| HARBOR FREIGHT TOOLS USA, INC., | [Re:  ECF Nos. 22, 23] |
| Defendant. | |

Plaintiffs Larry Alba and Robert Blazina Jr. filed a putative class action complaint asserting state privacy claims against Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight").  Compl., ECF No. 1.  Harbor Freight filed a motion to compel arbitration.  ECF No. 22 ("Mot.").  Plaintiffs filed an opposition brief, and Harbor Freight filed a reply.  ECF Nos. 33 ("Opp."), 34 ("Reply").  The parties also separately briefed a motion to dismiss.  *See* ECF Nos. 23, 32, 35.  The Court finds this motion suitable for resolution without oral argument and VACATES the hearing set for August 13, 2026.  *See* Civ. L.R. 7-1(b).

The Court GRANTS the motion to compel arbitration and STAYS the action pending completion of the arbitration.

## I.    BACKGROUND

Harbor Freight operates www.harborfreight.com ("Website"), where customers can shop for tools and related products.  Compl. ¶¶ 1, 32.  When users "visited the Website, the Website immediately displayed to them a popup cookie consent banner."  *Id.* ¶ 36.  Prior to October 31, 2024, the cookie banner informed users that the Website used cookies and provided the option to select "Reject All Cookies," "Accept All Cookies," or "Cookie Settings."  *Id.*  It did not reference Harbor Freight's Terms and Conditions or otherwise indicate that selecting a button would affect

United States District Court
Northern District of California

the user's legal rights.  *Id.*

On or around October 31, 2024, Harbor Freight updated the cookie banner ("2024 Cookie Banner"):

Hall Decl. ¶¶ 4–5.  Like the prior banner, the 2024 Cookie Banner included text on the left and the same three buttons on the right that are level with one another.  *Id.*  The revised banner informs users that by clicking any of the buttons the user "acknowledge[s] and agree[s] to [Habor Freight's] Terms and Conditions of Use."  *Id.* ¶ 5.  The banner then includes hyperlinks to Harbor Freight's Privacy Policy and Terms and Conditions of Use ("Terms and Conditions"), each of which are bolded, underlined, and in red text against a white background.  *Id.*  Following the update, the 2024 Cookie Banner was displayed on each page on the Website until the user interacted with it, even if the user had previously visited the Website and interacted with the prior cookie banner.  *Id.* ¶¶ 9, 12.

Harbor Freight updated its Terms and Conditions on July 28, 2025.  *See* Hall Decl., Ex. A at 13.  The Terms and Conditions include an arbitration agreement and class action waiver.  *Id.* at 9–11.

The basis for this lawsuit is Alba and Blazina's use of the Website and interaction with the cookie banner.  *See generally* Compl.  Alba visited the Website "at least once per year between 2020 and 2025" and he "believes his most recent visit was in October of 2025."  Ord Decl. ¶ 6 & Ex. A at 1; *see also* Compl. ¶ 94 (alleging that Alba "visited the Website . . . on one or more occasions during the last four years.").  In comparison, Blazina last visited the Website in November 2023, before the 2024 Cookie Banner was implemented.  Compl. ¶ 103 & Ex. B ¶ 20.  On November 1, 2024, Blazina filed a demand for arbitration and sought a declaration that his claims were not subject to arbitration.  Compl. ¶ 18.  The arbitrator ruled that Blazina did not agree to the Terms and Conditions and dismissed based on lack of jurisdiction.  Compl., Ex. B

2

¶¶ 24, 35.

## II.    LEGAL STANDARD

Enforceability of an arbitration clause, and the determination of the scope of that clause, is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  Under the FAA, arbitration agreements are a matter of contract and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.  A party seeking to invoke an arbitration agreement may petition the district court "which, save for such agreement, would have jurisdiction [to hear the case] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4; *see also Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012).  A district court does not consider challenges to the contract as a whole but rather specific challenges to the validity of the arbitration clause itself.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).  When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  "The FAA . . . requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *see also* 9 U.S.C. § 3.

A court typically determines two gateway issues on a motion to compel arbitration: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  There is an exception, however, where "the parties clearly and unmistakably provide otherwise." *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  In such a case, the court is limited to deciding the first issue. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019).  If an arbitration agreement exists, the court examines it to determine whether the parties agreed to commit questions of enforceability or arbitrability to the arbitrator. *Rent-A-Center*, 561 U.S. at 70.

### III.   DISCUSSION

Habor Freight moves to compel Alba to arbitrate his claims and stay the case or, in the alternative, to dismiss the complaint. *See* ECF Nos. 22–23.  It contends that: (1) Alba is required to arbitrate his claims because he agreed to the Terms and Conditions, including the arbitration provision, by selecting the "Reject All Cookies" button on the 2024 Cookie Banner, *see* Mot. at 5–8; (2) the issue of arbitrability is delegated to the arbitrator, *see id.* at 8–10; (3) the class action waiver is enforceable, *see id.* at 10; and (4) the entire action should be stayed pending Alba's individual arbitration, *see id.* at 10–11.  In response, Plaintiffs argue that Harbor Freight has not shown that Alba saw the 2024 Cookie Banner and that, in any event, the parties never entered into a valid contract because the Terms and Conditions were not displayed conspicuously.  *See* Opp. at 4–8.  Plaintiffs make no argument regarding, and therefore concede, the remaining issues raised by Habor Freight.  *See Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").  The Court addresses each issue in turn.

#### A.   Valid Agreement to Arbitrate

In determining whether an arbitration agreement exists, a district court applies "ordinary state-law principles that govern the formation of contracts." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (internal quotation marks and citation omitted).  "In California, internet contracts are classified 'by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.'" *Keebaugh v. Warner Bros. Ent. Co.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (Cal. Ct. App. 2021)).  This case involves a sign-in wrap agreement: "[T]he website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).  Absent proof that a consumer has actual knowledge of the agreement, a sign-in wrap agreement will be enforced only if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes

United States District Court
Northern District of California

some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."). "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 236. "[I]f there is a genuine dispute of material fact as to any of these queries, a [d]istrict [c]ourt should apply a 'standard similar to the summary judgment standard of Fed. R. Civ. P. 56.'" *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012) (citation omitted).

Habor Freight contends that it has met its burden by submitting a declaration stating that all users were shown the 2024 Cookie Banner and argues that the Terms and Conditions were conspicuously displayed. *See* Mot. at 5–8; Reply at 6–9. Plaintiffs dispute both points. *See* Opp. at 4–8. The Court begins by addressing whether Harbor Freight has met its burden of proof by showing that Alba saw the 2024 Cookie Banner, before turning to whether the terms were reasonably conspicuous and Alba manifested assent to the agreement.

### i. Contents of the Agreement

As a threshold matter, the Court must determine which version of the cookie banner Alba saw on the Website. Harbor Freight's motion relies on the 2024 Cookie Banner, which included the Terms and Conditions. *See* Mot. at 5–8. Harbor Freight argues Alba must have seen and interacted with this version of the banner when he visited the Website after October 31, 2024. *See id.*; Reply at 6–9. In support of these arguments, Harbor Freight has presented evidence in the form of a declaration from the Executive Director of Digital Marketing at Harbor Freight, who has been in the position since August 2024 and is familiar with the cookie banners the Website displayed during the relevant time period. *See* Hall Decl. ¶¶ 2–3.

Plaintiffs argue that Harbor Freight "simply piles speculation on top of speculation" rather than "present[ing] actual evidence of an agreement" and has therefore not met its burden of proof to show that Alba viewed the 2024 Cookie Banner and agreed to the Terms and Conditions. Opp.

United States District Court
Northern District of California

at 5. Instead, Plaintiffs focus on the pre-October 2024 cookie banner, as set out in the complaint, which they contend is unenforceable browsewrap. *See id.* at 3–4.

The Court finds that Harbor Freight has satisfied its burden of proof and demonstrated that Alba was shown the 2024 Cookie Banner. It is undisputed that Alba visited the Website as recently as October 2025. *See* Ord Decl. ¶ 6 & Ex. A at 1; Compl. ¶ 94. Harbor Freight's unrebutted evidence that the 2024 Cookie Banner was shown to all users following October 31, 2024, is therefore sufficient to demonstrate that Alba must have been shown the revised banner during his recent visits to the Website. *See* Hall Decl. ¶¶ 4–5, 8–10, 12. This conclusion accords with a recent decision from this District where, on materially similar facts, the court held that defendant had satisfied its burden. *See Penning v. NVIDIA Corp.*, No. 25-cv-09160-SVK, 2026 WL 1433313, at *6 (N.D. Cal. May 21, 2026).

Plaintiffs challenge the sufficiency of Harbor Freight's evidence, arguing that the Court should not credit "a single line in [a] self-serving, conclusory" declaration. Opp. at 4. However, "[w]here plaintiffs do not offer any testimony or evidence to rebut a defendant's evidence, . . . courts generally reject such challenges to the sufficiency of a defendant's evidence." *White v. PayPal Holdings Inc.*, 821 F. Supp. 3d 1058, 1068 (N.D. Cal. 2026). Alba did not submit a declaration or any other evidence denying that the Website displayed the 2024 Cookie Banner when he visited it in 2025. Instead, it is Plaintiffs who are speculating that the declarant may lack personal knowledge—despite expressly declaring otherwise, *see* Hall Decl. ¶ 1—or that the revised banner may not have been shown to return users. *See* Opp. at 5. Nor does the fact that the declaration "has not been subject to cross examination or . . . any inquiry at all" affect the Court's analysis because declarations are routinely considered at summary judgment, which is the standard employed on a motion to compel arbitration. Opp. at 4. Thus, Plaintiffs' "failure to provide competent evidence directly rebutting [Harbor Freight's] evidence . . . 'fails to create a genuine issue' as to whether the [2024] Cookie Banner[] [was] presented to [Alba] when he visited the Website." *Penning*, 2026 WL 1433313, at *6 (quoting *White*, 821 F. Supp. 3d at 1068).

Plaintiffs' remaining arguments are equally unconvincing. First, Plaintiffs argue that "websites typically do not display cookie banners to users who have previously set their cookie

preferences." Opp. at 4 (citing Jeffrey Edwards, *GDPR Cookie Compliance 101: How to Manage EU Users' Consent*, CHEQ (Jan. 18, 2023), https://cheq.ai/blog/gdpr-cookie-compliance101/ (last visited Feb. 20, 2026)). This exact argument has already been rejected in this District, and for good reason. *See Penning*, 2026 WL 1433313, at *6. An article about what typically occurs in the European Union under the General Data Protection Regulation has no bearing on how Harbor Freight's Website functioned in California after Harbor Freight updated its cookie banner. Second, Plaintiffs argue that because the Court must "give to the opposing party the benefit of all reasonable doubts and inferences" when resolving a motion to compel arbitration, it cannot find that Alba saw the 2024 Cookie Banner given that the complaint "does [not] . . . allege that he saw the . . . banner." Opp. at 5 (quoting *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 n.9 (9th Cir. 2007)). However, it would be an unreasonable inference for the Court to find that Alba was not shown the 2024 Cookie Banner when the unrebutted evidence before it is that the revised banner was shown to all Website users after October 31, 2024.

In conclusion, Harbor Freight has carried its burden to establish that Alba saw the 2024 Cookie Banner when he visited the Website. On the evidence before the Court, there is no genuine dispute otherwise. Accordingly, the Court analyzes whether that version of the banner established an enforceable agreement.

### ii.    Reasonably Conspicuous Notice

"To be conspicuous, notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Keebaugh*, 100 F.4th at 1014 (citation and internal quotation marks omitted). The "context of the transaction," as well as the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design," inform whether a website provides reasonably conspicuous notice of the terms of an agreement. *Id.* at 1019 (citation omitted).

In its motion, Harbor Freight argues that Alba had inquiry notice of the Terms and Conditions because the terms are hyperlinked in bolded, underlined red font against a white background. *See* Mot. at 6–7. In response, Plaintiffs argue that the terms were not reasonably conspicuous because the large "Reject All Cookies" button was designed to be clicked "without

*United States District Court*
*Northern District of California*

needing to read the entire paragraph of fine print," and because the hyperlink to the Terms and Conditions looked the same as the hyperlink to the Privacy Policy, which "are so closely mashed together that reasonable consumers cannot discern that there is a separate link for the TOU."  Opp. at 5–8 (emphasis omitted).  In reply, Harbor Freight also argues that Alba had actual notice of the Terms and Conditions.  Reply at 6–9.

### a.   Context of the Transaction

"[T]he context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous."  *Keebaugh*, 100 F.4th at 1019. Courts recognize that the nature of an agreement may anticipate "some sort of continuing relationship . . . that would require some terms and conditions."  *Sellers*, 73 Cal. App. 5th at 477 (emphasis omitted); *see Keebaugh*, 100 F.4th at 1019.  For example, "[t]he nature of downloading a mobile game to one's phone is different than simply accessing a website."  *Keebaugh*, 100 F.4th at 1020.

Here, the sole allegation is that Alba visited the Website approximately once per year from 2020 to 2025.  Harbor Freight argues that the repeated visits mean that Alba has conceded a continuing relationship.  *See* Mot. at 7.  Plaintiffs argue that browsing a website is not a continuing relationship, even if repeated, unlike downloading a mobile game with in-app purchases or making an online account.  Opp. at 6–7 (citing *Chabolla*, 129 F.4th at 1155–56).  The Court agrees with Plaintiffs because decisions in this Circuit consistently explain that simply browsing a website is insufficient to put the user on heightened notice to anticipate terms of service.  *See Keebaugh*, 100 F.4th at 1020.  Accordingly, the Court finds that the context of the transaction did not alert Alba to look for additional terms.  *See Chabolla*, 129 F.4th at 1156.

### b.   Visual Design

To determine whether a website provides reasonably conspicuous notice of an agreement, courts "look[] to the conspicuousness and placement of the Terms of Use hyperlink, other notices given to users of the terms of use, and the website's general design in determining whether a reasonably prudent user would have inquiry notice of a[n] [online] agreement."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (citation and quotation marks omitted).

United States District Court
Northern District of California

Relevant "factors include[e]: (1) the size of the text; (2) the color of the text compared to the background; (3) the location of the text and its proximity to where the user clicks to consent; (4) the obviousness of an associated hyperlink; and (5) other elements on the screen which clutter or obscure the textual notice." *In re Stubhub Refund Litig.*, No. 22-15879, 2023 WL 5092759, at *2 (9th Cir. Aug. 9, 2023).

The 2024 Cookie Banner satisfies each of these indicia of conspicuousness. First, the font size used for the advisory paragraph, hyperlinked Terms and Conditions, and buttons was the same. *See* Hall Decl. ¶ 5. Second, the advisory paragraph displayed in black text against a white background, whereas the Terms and Conditions and Privacy Policy were each bolded, underlined, and in red font. *Id.* Thus, the Terms and Conditions "stood out from the surrounding text to indicate it was clickable." *See Morrison v. Yippee Ent., Inc.*, No. 24-7235, 2025 WL 2389424, at *1 (9th Cir. 2025) (holding that blue font against a white background was reasonably conspicuous). Third, the hyperlink to the Terms and Conditions was directly to the left of the three buttons and contained within the pop-up banner, meaning that a Website user could not click on any of the buttons without also seeing the Terms and Conditions displayed on their screen. *See* Hall Decl. ¶ 5. Finally, there was nothing else cluttering the cookie banner, and the advisory paragraph expressly notified users that "[b]y clicking 'Accept All Cookies,' 'Reject All Cookies,' 'Cookie Settings,' or continuing to browse our website, you acknowledge and agree to our Terms and Conditions of Use." Hall Decl. ¶ 5; *see also L.B. LinkedIn Corp.*, No. 5:24-cv-06832-EJD, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025) (recognizing that the "message clearly inform[ed] users in plain language" what actions constituted acceptance). Because the Court "can fairly assume that a reasonably prudent Internet user would have seen [the hyperlink]" based on these features, there was reasonable notice. *Oberstein*, 60 F.4th at 515 (citation omitted).

These facts are unlike *Chabolla*, the case Plaintiffs principally rely on, where the Terms of Use were presented in smaller font below the "Continue" button such that the "natural next step" for users was to click "Continue" without scrolling far enough to ever see the hyperlinked terms. 129 F.4th at 1157. Plaintiffs' remaining arguments are also unpersuasive. First, Plaintiffs' argument that the "Reject All Cookies" button was "designed to be clicked without needing to

read the entire paragraph of fine print" is unavailing precisely because the Terms and Conditions were bolded, underlined, and in red font, meaning they stood out even without reading the entire paragraph. Opp. at 7 (emphasis omitted). Second, the Court disagrees with Plaintiffs' contention that the Terms and Conditions and Privacy Policy were "so closely mashed together that reasonable consumers cannot discern that there is a separate link for the TOU." *Id.* Instead, a reasonably prudent user would read "**Privacy Policy** **Terms and Conditions of Use**" and understand that the space—which is not underlined—means that there are two separate policies. Hall Decl. ¶ 5. In any event, even if the user did not recognize the space, they would still have read "Terms and Conditions of Use" and therefore been on actual notice that such a policy was hyperlinked.

*    *    *

Accordingly, the Court finds that the visual design of the 2024 Cookie Banner provided reasonably conspicuous notice of the Terms and Conditions such that Alba was on inquiry notice. Because the Court finds that Alba had inquiry notice, it need not reach the argument—raised for the first time in Habor Freight's reply brief—that Alba also had actual notice. *See* Reply at 6–7 (citing *Penning*, 2026 WL 1433313, at *6).

### iii.    Manifestation of Assent

Harbor Freight argues that Alba manifested assent by clicking the "Reject All Cookies" button on the 2024 Cookie Banner. *See* Mot. at 7–8. As discussed above, Plaintiffs argue that Harbor Freight has not carried its burden of proof to show that Alba viewed the 2024 Cookie Banner. *See* Opp. at 4–5. However, Plaintiffs do not otherwise dispute that selecting "Reject All Cookies" on the 2024 Cookie Banner would satisfy this element. *See generally* Opp. Because the Court has already found that Harbor Freight has satisfied its burden of proof and therefore shown that Alba saw the 2024 Cookie Banner, Plaintiffs' argument is unavailing. Plaintiffs have conceded any other argument. Accordingly, the Court finds that this element is satisfied.

### B.    Scope of Arbitration Agreement

Harbor Freight argues that the Terms and Conditions delegate arbitrability questions to the arbitrator. *See* Mot. at 8–10. Plaintiffs do not contest and thereby waive the issue. *See generally*

10

United States District Court
Northern District of California

United States District Court
Northern District of California

Opp. In any event, the Court agrees that the delegation of this issue to the arbitrator is clear and unmistakable under JAMS rules, which are incorporated into the Terms and Conditions. *See* Hall Decl., Ex. A at 9–11. Accordingly, the Court finds that the question of arbitrability is delegated to the arbitrator.

### C.  Individual Arbitration

Next, Harbor Freight argues that the class action waiver in the Terms and Conditions is enforceable. *See* Mot. at 10. Again, Plaintiffs do not respond to this argument, thereby waiving the issue. *See generally* Opp. Additionally, the Court finds that the Terms and Conditions contain a valid class action waiver. *See* Hall Decl., Ex. A at 11.

### D.  Stay of Proceedings

Finally, Harbor Freight argues that if the Court orders arbitration as to Alba, it should stay all proceedings in this litigation pending arbitration. *See* Mot. at 10–11. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). "This Court and other courts have stayed all claims in an action even if only some of the claims will be arbitrated." *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (collecting cases). "A stay of all claims is particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate." *Id.* In the instant case, Plaintiffs do not dispute that the Court should stay all proceedings if it orders arbitration as to Alba, thereby waiving the issue. *See generally* Opp. In any event, the Court agrees with Harbor Freight that a stay is appropriate to avoid parallel proceedings and the potential for inconsistent results. Accordingly, the Court STAYS this action pending the completion of arbitration.

### E.  Motion to Dismiss

Because the Court grants Harbor Freight's motion to compel arbitration and stay the case, it declines the invitation in Harbor Freight's reply brief to also decide the motion to dismiss as to Blazina's claims to potentially dismiss the class claims. *See* Reply at 2 n.1. Accordingly, Harbor Freight's Motion to Dismiss, ECF No. 23, is DENIED without prejudice to refiling once the stay

is lifted.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion to compel arbitration is GRANTED.

(2) The arbitration proceedings SHALL be commenced within, and Defendant SHALL submit a status report on commencement of arbitration no later than, 60 days of the date of this Order.

(3) All court proceedings are STAYED pending a final disposition of arbitration. The parties shall notify the Court within 10 days of the conclusion of arbitration proceedings that the arbitration has concluded, supply a copy of the arbitrator's decision, and request lifting the stay.

(4) The motion to dismiss is DENIED as moot without prejudice to refiling once the stay is lifted.

Dated:  July 27, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12